**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

LATINOJUSTICE PRLDEF and AMERICAN
IMMIGRATION COUNCIL,

        Plaintiffs,

        v.                             Civil Action No. 25-8516

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, U.S. DEPARTMENT OF
HOMELAND SECURITY, EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW, and
U.S. DEPARTMENT OF JUSTICE,

        Defendants.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      This action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*,

seeks to compel Defendants U.S. Immigration and Customs Enforcement ("ICE"), U.S.

Department of Homeland Security ("DHS"), Executive Office for Immigration Review

("EOIR"), and U.S. Department of Justice ("DOJ") to disclose guidance for, and correspondence

about, arresting noncitizens in immigration court in connection with dismissing their

immigration cases— a new agency tactic that has triggered widespread public controversy and

debate and resulted in courts finding numerous administration acts unlawful.

2.      After President Trump took office, the EOIR and ICE rescinded policies barring

ICE from making civil immigration arrests in or near immigration courts to advance the new

administration's agenda of mass deportations.

3.      Since around May 20, 2025, ICE has been detaining noncitizens appearing for

hearings in removal proceedings in immigration courts nationwide in substantial numbers.

4.     Attorneys from ICE's Office of Principal Legal Advisor ("OPLA") have also been orally moving to dismiss these proceedings to funnel noncitizens into expedited removal, a process with fewer due process protections and no pathway to permanent residence.

5.     The EOIR, in turn, has directed immigration judges to grant ICE's motions to dismiss immediately in violation of several agency policies.

6.     Federal courts across the country, from Oregon to New York, have deemed specific immigration court arrests unlawful, ordered ICE and DHS to release the arrested noncitizens, and decried these arrests and dismissals for violating due process. *See, e.g., Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588, at *15 (S.D.N.Y. Aug. 13, 2025) ("[T]reating attendance in immigration court as a game of detention roulette is not consistent with the constitutional guarantee of due process."); *Mata Velasquez v. Kurzdorfer*, No. 25-cv-493, 2025 WL 1953796, at *13 (W.D.N.Y. July 16, 2025) (chastising DHS for "pull[ing] the rug out from under [petitioner]"); Maxine Bernstein, *Federal Judge in Oregon: Homeland Security 'Tricked' Asylum Seeker Before Arrest at Immigration Court*, The Oregonian (July 15, 2025, 10:47 AM), https://tinyurl.com/mw3w9xdj (reporting that a federal judge "blasted" the DHS for its "series of procedural errors," "'oscillating legal positions' and clear violation of [a noncitizen]'s due process rights").

7.     A court in this district has also preliminarily stayed the EOIR's direction to immigration judges to grant dismissals regardingremoval proceedings conducted in Manhattan and the Bronx pending further litigation. Op. & Order at 46, *African Cmtys. Together v. Lyons*, 25-cv-6366 (S.D.N.Y. A Sept. 12, 2025), ECF No. 51. And similar challenges to the lawfulness of arrests and dismissals in other immigration courts are pending elsewhere. *See, e.g.*, Compl., *A.M. v. U.S. Dep't of Homeland Sec.*, 25-cv-2308 (S.D. Cal. Sept. 4, 2025), ECF No. 1

(addressing these arrests and dismissals at the San Diego Immigration Court); Am. Compl., *Pablo Sequen v. Albarran*, No. 25-cv-6487 (N.D. Cal. Sept. 18, 2025), ECF No. 32 (same for the Concord, Sacramento, and San Francisco Immigration Courts).

8.    Beyond the courts, outrage at immigration court arrests, dismissals, and their contested legality has prompted public pushback: protestors are demonstrating outside immigration courts in New York City, San Francisco, and other cities against these new enforcement tactics and attempting to stop ICE from transporting arrested noncitizens to detention centers; clergy, military veterans, political leaders, and other members of the public are accompanying noncitizens to their removal hearings to document, and try to prevent, arrests (and at times are facing arrest themselves for doing so); and editorial boards are calling for Defendants to cease immigration court arrests and dismissals.

9.    Immigration court arrests and dismissals have also generated widespread and exceptional media interest. National, state, and local media outlets have published over two hundred articles about these enforcement tactics since May 20, 2025, dozens of which express doubt about their integrity and legality.

10.    Amidst this widespread media attention and public outrage, Plaintiffs filed two FOIA requests with the EOIR and five FOIA requests with ICE on July 28, 2025, and July 29, 2025, respectively. The EOIR requests seek agency guidance for courthouse arrests and certain communications with ICE about such arrests and dismissals. The ICE requests seek agency guidance on these topics as well as intra-agency and interagency communications about them.

11.    Plaintiffs seek expedited processing of each request to educate the public about guidance for arrests and dismissals, any coordination between the EOIR and ICE, and whether

OPLA prosecutors retain discretion to consider dismissal on a case-by-case basis before public

debate about this controversial enforcement tactic dissipates and courts rule on its legality.

12.    Now, over two months later, having received neither expedited processing nor all

records responsive to their requests, Plaintiffs bring this FOIA action for injunctive and other

appropriate relief.

**JURISDICTION AND VENUE**

13.    This court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C § 1331

since this action arises under FOIA against agencies of the United States.

14.    Venue lies in this district under 5 U.S.C § 552(a)(4)(B) and the doctrine of

pendent venue: LatinoJustice PRLDEF maintains its principal place of business in this district

and the American Immigration Council's claims arise from the same FOIA requests as

LatinoJustice's claims.

**PARTIES**

15.    Plaintiff LatinoJustice PRLDEF ("LatinoJustice") is a nonprofit civil rights legal

organization headquartered at 475 Riverside Dr., Ste 1901, New York, NY 10115. It advocates

for, and protects, the civil rights of the Latinx community in the United States and Puerto Rico;

represents the interests of the public; and seeks government transparency and accountability

through litigation and policy reform. LatinoJustice also publishes newsletters, blogs, reports,

opinion, editorials, and video interviews about the constitutional rights and equal protection of

Latinos, immigrants, and other marginalized communities and circulates these publications

through its social media accounts.

16.    Plaintiff American Immigration Council ("the Council") is a nonprofit educational

and charitable organization. The Council strives to strengthen the United States by shaping

4

immigration policies and practices through innovative programs, cutting-edge research, and strategic legal and advocacy efforts grounded in evidence, compassion, justice, and fairness. For FOIA purposes, the Council is a "news media requester," and primarily engaged in disseminating information on immigration issues. It authors factsheets, special reports, and blog posts on proposed and actual immigration policies, some of which shape media coverage in outlets across the nation. It also analyzes immigration data and other government records—including those obtained through FOIA requests like the ones at issue in this litigation—in interactive web reports and blog posts. And it circulates these publications to hundreds of thousands of readers through its website, blog, email newsletters, and an X (formerly known as Twitter) account with 64,900 followers.

17.    Defendant ICE is a subcomponent of the DHS and an agency within the meaning of 5 U.S.C § 552(f)(1), 5 U.S.C. § 552(f), and 5 U.S.C. § 702. It is responsible for enforcement of the immigration laws in the interior of the United States, the implementation of enforcement policies, and the apprehension and detention of noncitizens. It also oversees OPLA lawyers who appear before the immigration courts on behalf of the agency. ICE has possession, custody, and control of records responsive to the Plaintiffs' FOIA requests.

18.    Defendant DHS is an agency within the meaning of 5 U.S.C § 552(f)(1), 5 U.S.C. § 552(f), and 5 U.S.C. § 702. It is the parent agency of ICE. It "has a decentralized system for responding to FOIA requests" where requests for DHS records are directed to and processed by FOIA offices in ICE and each of its other individual components. 6 C.F.R. § 5.3(a)(1)-(2). DHS rules, policies, and procedures govern ICE's processing of FOIA requests. *Id.* § 5.1(a)-(c). As such, the DHS has possession, custody, and control of the records that Plaintiffs seek. *Sanchez Mora v. U.S. Customs & Border Protection*, Civil Action No. 24-3136, 2025 WL 1713252, at *5

(D.D.C. June 18, 2025) (FOIA "requests submitted to a DHS component, such as [ICE], must also be understood as submitted to DHS, the parent agency.").

19.    Defendant EOIR is a subcomponent of the DOJ and an agency within the meaning of 5 U.S.C § 552(f)(1), 5 U.S.C. § 552(f), and 5 U.S.C. § 702. It administers the immigration court system via "the supervision, direction, and scheduling of the immigration judges in the conduct of the hearings and duties assigned to them." 8 C.F.R. § 1003.9(b). It "issue[s] operational instructions and policy" and otherwise "manage[s] the docket of matters to be decided by the immigration judges." *Id.* § 1003.9(b)(1), (3). The EOIR has possession, custody, and control of records responsive to Plaintiffs' FOIA requests.

20.    Defendant DOJ is an agency within the meaning of 5 U.S.C § 552(f)(1), 5 U.S.C. § 552(f), and 5 U.S.C. § 702. It is the parent agency of the EOIR. It "has a decentralized system for responding to FOIA requests" where requests for DOJ records are directed to and processed by FOIA offices in the EOIR and each of its other individual components. 28 C.F.R. § 16.3(a)(1)-(2). DOJ rules, policies, and procedures govern the EOIR's processing of FOIA requests. *Id.* § 16.1(a)-(c). As such, the DOJ has possession, custody, and control of the records that Plaintiffs seek. *Sanchez Mora*, 2025 WL 1713252, at *5.

## STATEMENT OF FACTS

### I. ICE ARRESTS & DISMISSALS AT IMMIGRATION COURTS

#### A. Courthouse Arrest Policies & Practices Before the Second Trump Administration

21.    For decades, ICE officers largely refrained from civil immigration enforcement actions—including civil immigration arrests—in immigration courts, lest such arrests deter noncitizens from attending removal proceedings, impede the proper functioning of courts, and undermine the fair administration of justice.

22.     ICE formalized this longstanding practice in an April 2021 memo that prohibited "civil immigration enforcement action … in or near a courthouse" (including immigration courts) absent a national security threat; imminent risk of death, violence, physical harm to any person, or destruction of evidence material to a criminal case; or hot pursuit of an individual posing a threat to public safety. U.S. Dep't of Homeland Sec., Memorandum re: Civil Immigration Enforcement Actions in or near Courthouses (Apr. 27, 2021), https://tinyurl.com/yw6ucd49.

23.     Approximately two and half years later, the EOIR prohibited the DHS from making civil immigration arrests and taking other civil immigration enforcement actions "in or near an immigration court" except in the limited circumstances described above or where "a safe alternative location for the enforcement action d[id] not exist." U.S. Dep't of Just., Exec. Off. for Immigr. Review, Off. of the Chief. Immigr. Judge, PM 23-01, Operating Policies & Procedures Memorandum 23-01: Enforcement Actions in or Near OCIJ Space (Dec. 11, 2023), https://tinyurl.com/ycyr2hsy.

**B.  Trump Administration's Growing Frustration with Existing Processes Preventing It from Hitting Immigration Arrest and Deportation Targets**

24.     Before returning to office, Tom Homan and Stephen Miller, surrogates of then-president-elect Trump who now serve as Border Czar and White House Deputy Chief of Staff respectively in the Trump Administration, promised to "take the handcuffs off ICE" and "launch a 'light speed' mass deportation campaign."[1]

---

[1] *See* Fox News, *Tom Homan: 'We're Going to Take the Handcuffs off ICE'*, YouTube (Jan. 19, 2025), https://www.youtube.com/watch?v=cimNzNpNhuk; Nick Miroff et al., *Deportation at 'Light Speed': How Trump's Crackdown Could Unfold*, The Washington Post (Jan. 16, 2025), https://www.washingtonpost.com/immigration/interactive/2025/trump-immigrants-mass-deportations/.

25.    Upon taking office, the Administration ordered ICE to arrest at least 1,200 to 1,500 noncitizens daily and threatened to hold agency officials accountable for missing these targets.[2]

26.    Through February, ICE struggled to meet these arrest targets, prompting the Trump Administration to remove the agency's acting director and other top officials.[3]

27.    By March, the Trump Administration had grown increasingly frustrated with ICE's failure to meet these targets with Tom Homan telling President Trump that ICE "need[s] to increase the arrests," as their numbers were "not high enough."[4]

28.    In May, Stephen Miller, the leading architect of President Trump's immigration policy, "laid into top immigration officials" for not hitting their arrest and deportation targets.[5]

29.    The Trump Administration then announced an increase of ICE's arrest target to 3,000 arrests for per day and replaced the acting director of its Enforcement and Removal Operations ("ERO") Directorate.[6]

---

[2] Nick Miroff & Maria Sacchetti, *Trump Officials Issue Quotas to ICE Officers to Ramp Up Arrests*, The Washington Post (Jan. 26, 2025), https://www.washingtonpost.com/immigration/2025/01/26/ice-arrests-raids-trump-quota/.
[3] Marianne LeVine & Nick Miroff, *Acting ICE Director Removed Amid White House Pressure to Boost Arrests*, The Washington Post (Feb. 21, 2025), https://www.washingtonpost.com/immigration/2025/02/21/ice-director-removed-caleb-vitello/; Nick Miroff & Marianne LeVine, *ICE Struggles to Boost Arrest Numbers Despite Infusion of Resources*, The Washington Post (Feb. 15, 2025), https://www.washingtonpost.com/immigration/2025/02/15/ice-arrests-immigration-deportations/; Nick Miroff, *Top ICE Officials Reassigned Amid Strain to Meet Trump Deportation Goals*, The Washington Post (Feb. 11, 2025), https://www.washingtonpost.com/immigration/2025/02/11/ice-enforcement-officials-reassigned/.
[4] Hamed Aleaziz & Zolan Kanno-Youngs, *Frustration Grows Inside the White House Over Pace of Deportations*, The New York Times (Mar. 5, 2025), https://www.nytimes.com/2025/03/05/us/politics/trump-immigration-deportations-arrests.html?searchResultPosition=1.
[5] Brittany Gibson & Stef. W. Kight, *Scoop: Stephen Miller, Noem Tell ICE to Supercharge Immigrant Arrests*, Axios (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.
[6] Fox News, *Stephen Miller Reveals Trump Admin's 'Daily Goal' for Illegal migrant Arrests*, YouTube (May 29, 2025), https://www.youtube.com/watch?v=MJNXsOqFSZs; Marianne LeVine & Maria Sacchetti, *Trump Administration Shakes Up ICE Leadership As It Struggles to Ramp Up Deportations*, The Washington Post (May 29, 2025), https://www.washingtonpost.com/immigration/2025/05/29/trump-ice-deportations-leadership-dhs/.

## C.  Immigration Court Arrests, Dismissals, & Policy Changes

30.     Meanwhile, the Administration authorized ICE to conduct civil immigration arrests in and around immigration courts to help it meet its daily arrest quota.

   a.  On January 21, 2025, ICE rescinded the April 2021 memo. On an interim basis, it also authorized agency officers or agents to "conduct civil immigration actions in or near courthouses when they have credible information that leads them to believe the targeted [noncitizen(s)] is or will be present at a specific location, and where such action is not precluded by the jurisdiction in which the enforcement action will take place." U.S. Immigr. & Customs Enf't, Policy No. 11072.3, Interim Guidance: Civil Immigration Enforcement Actions in or near Courthouses (Jan. 21, 2025).

   b.  Seven days later, the EOIR "rescinded and cancelled" its prohibition of "civil immigration actions by the Department of Homeland Security (DHS) in or near EOIR space." U.S. Dep't of Just., PM 25-06, Cancellation of Operating Policies & Procedures Memorandum 23-01 (Jan. 28, 2025).

31.     Around May 20, 2025, as the number of arrests and deportations remained below target, ICE began to arrest noncitizens in immigration courts—where they are easy to locate— and seek their removal through expedited removal[7]—a faster process with fewer due process protections and no pathway to permanent residence.

32.     ICE also instructed OPLA prosecutors to identify any noncitizen with upcoming immigration court hearings who would be susceptible to expedited removal if their immigration

---

[7] Expedited removal allows immigration officers to remove a noncitizen, who has "not been admitted or paroled in the United States" and "not affirmatively shown, to the satisfaction of an immigration officer" continuous physical presence for at least two years, from the United States "without further hearing or review" unless the noncitizens "indicates either an attention to apply for asylum … or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A).

court cases were dismissed and move to dismiss these cases. It further directed OPLA prosecutors to tell ERO officers about such a noncitizen at least 48 hours in advance of the upcoming hearing and provide "the exact location of the courtroom at which the … hearing is being held and an estimate of the time frame for the hearing." It also ordered OPLA prosecutors to give the immigration court "a 24-hour warning" of the planned enforcement operation.[8]

33.     On May 27, 2025, ICE published its final guidance for courthouse arrests, wherein it authorized agency officers and agents to "conduct civil immigration enforcement actions in or near courthouses when they have credible information that leads them to believe the targeted [noncitizen(s)] is or will be present at a specific location," even in jurisdictions whose laws preclude courthouse arrests. U.S. Immigr. & Customs Enf't, Policy No. 11072.4, Civil Immigration Enforcement Actions in or near Courthouses (May 27, 2025).

34.     Around the same time, the EOIR emailed Assistant Chief Immigration Judges (ACIJs)[9] new guidance for ICE motions to dismiss and courthouse arrests. Notwithstanding agency regulations and policy requiring parties to make pre-trial motions "in writing and … state, with particularly the grounds therefor," 8 C.F.R. 1003.23(a), the guidance allows "DHS Motions to Dismiss [to] be made orally and decided from the bench" without "additional documentation or briefing," Am. Immigr. Lawyers Ass'n, AILA Doc. 25061204, Practice Alert: EOIR Guidance to Immigration Judges on Dismissals and Other Adjudications (June 12, 2025), https://tinyurl.com/mr22255e (hereinafter, "AILA Doc. 25061204").

35.     The guidance also advises that "[t]he motion to dismiss is regulatory" based upon Immigration and Nationality Act (INA) 239.2(a)(6) (Notice to Appear "improvidently issued") or

---

[8] Hamed Aleaziz et al., *How ICE is Seeking to Ramp Up Deportations Through Courthouse Arrests*, N.Y. Times (May 30, 2025), https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html
[9]  ACIJs "oversee the operations of specific immigration courts and adjudication centers." U.S. Dep't of Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual § 1.3(a)(4) (2023).

INA 239.2(a)(7) ("[C]ircumstances have changed to such an extent that continuation is no longer in the best interest of the government"), *id.*, misstating the standard for dismissal for changed circumstances, *cf.* 8 C.F.R. 239.2(a)(7), (c) ("Circumstances *of the case* have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government" (emphasis added)).

36.     The guidance further provides that "[g]enerally, if DHS has met the regulatory burden, the oral motion to dismiss may be granted" without "[a] 10-day response period," AILA Doc. 25061204, despite agency policy giving noncitizens ten days to respond to such motions, U.S. Dep't of Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual 3.1(b)(1)(A) (2023).

37.     Finally, the guidance directs ACIJs to ensure the immigration judges and administrative staff under their supervision "are familiar with Policy Memo 25-06"—which rescinded past guidance barring ICE arrests at immigration courts—and to reach out to the Regional Deputy Chief Immigration Judge supervising them if they "encounter any unusual circumstances with an enforcement action." AILA Doc. 25061204.

38.     Pursuant to this guidance, ACIJs have directed and pressured immigration judges they supervise to grant ICE motions to dismiss unless they are defective.

39.     ICE has arrested thousands of noncitizens in immigration courts around the country since May.

40.     ICE also filed 6,221 motions to dismiss noncitizens' removal proceedings between May 20, 2025, and July 28, 2025, almost 81 percent of which were oral.

41.     Immigration judges adjudicated 86 percent of these motions on the day filed, granted 86 percent of those motions, and dismissed 4,558 noncitizens' removal proceedings, allowing ICE to put them into expedited removal.

42.     ICE is continuing to arrest noncitizens in immigration courts around the country and move to dismiss their removal proceedings.

### D.  Public Pushback Against Immigration Court Arrests and Dismissals and Court Findings of Illegality

43.     Immigration court arrests and dismissals have outraged the American public and prompted them to push back.

44.     Protestors are demonstrating against these arrests and dismissals outside immigration courts in New York City, San Francisco, and other cities around the country and attempting to prevent ICE from transferring arrested noncitizens to detention centers.

45.     Clergy, military veterans, political leaders, and other members of the public are accompanying noncitizens to immigration courts to document, and try to stop, courthouse arrests; comfort the families that ICE is separating; and inform immigration attorneys of arrests so they can file habeas petitions before ICE transfers arrested noncitizens out of the jurisdiction.

46.     U.S. Senators and other members of Congress have written to Defendants to express "grave concern over the disturbing pattern of [agency] operations taking place at immigration court across the country— including recent incidents … where masked, plainclothes ICE officers detained non-violent, non-criminal immigrants immediately following the dismissal of their existing deportation cases by DHS attorneys."[10]

---

[10] *See, e.g.*, Letter from Members of Congress to Kristi Noem, Sec'y, Dep't of Homeland Sec., and Todd Lyons, Acting Dir., U.S. Immigr. & Customs Enf't (June 5, 2025), https://www.aila.org/86-representatives-urge-dhs-to-end-arrests-at-immigration-courts; Letter from U.S. Senators to Kristi Noem, Sec'y, U.S. Dep't of Homeland Sec., Todd Lyons, Acting Dir., U.S. Immigr. & Customs Enf't, and Pam Bondi, Att'y Gen., U.S. Dep't of Just. (July 11, 2025), https://tinyurl.com/52yrx4p3.

47.     Numerous editorials have decried immigration court arrests and dismissals as "a set-up,"[11] "a farce,"[12] "shameful,"[13] and "seriously disturbing."[14]

48.     Lawyers have challenged dozens of immigration court arrests in habeas petitions.

49.     Courts considering these petitions have found that the arrests are likely unlawful and ordered ICE to release the arrested noncitizens. *See, e.g.*, *Lopez-Arevelo v. Ripa,* No. EP-25-cv-337, 2025 WL 2691828, at *1, *12 (W.D. Tex. Sept. 21, 2025); *Pablo Sequen v. Kaiser*, No. 25-cv-06487, 2025 WL 2691143, at *1-4 (N.D. Cal. Sept. 19, 2025); *Lopez Benitez*, 2025 WL 2371588, at *1-2, *14-15; *Valesquez*, 2025 WL 1953796, at *1, *3, *18.

50.     Advocates have also sued ICE to stop it from arresting noncitizens at immigration courthouses and the EOIR to prevent it from dismissing noncitizens' removal proceedings without proper process. *See, e.g.*, Compl., *African Cmtys. Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Aug. 1, 2025), ECF No. 1; Compl., *A.M. v. U.S. Dep't of Homeland Sec.*, 25-cv-2308 (S.D. Cal. Sept. 4, 2025), ECF No. 1; Am. Compl., *Pablo Sequen v. Albarran*, No. 25-cv-6487 (N.D. Cal. Sept. 18, 2025), ECF No. 32.

51.     The City and State of New York filed amicus briefs in support of enjoining these actions in *African Communities Together v. Lyons*, 25-cv-6366 (S.D.N.Y.), due to their concern that immigration court arrests and dismissals are damaging trust in the justice system as a whole and chilling participation in their state and local court proceedings. *See* Order, *African Cmtys.*

---

[11] *Masked ICE Arrests Raise Urgent Questions About U.S. Immigration Practices*, The Riverdale Press (June 26, 2025), https://www.riverdalepress.com/stories/masked-ice-arrests-raise-urgent-questions-about-us-immigration-practices,187060.
[12] Brian Strassburger, S.J. & William Critchley-Menor, S.J., What We Saw During An ICE Arrest & Immigration Court Hearing: The Breakdown of Justice in America, America: The Jesuit Review (July 11, 2025), https://www.americamagazine.org/politics-society/2025/07/11/ice-immigration-court-deportation-injustice-251119.
[13] *Id.*
[14] Veronica Cardenas, *I Was Once an ICE Prosecutor. What I See Now in Immigration Courts Is Disturbing*, The Hill (July 17, 2025, 8:00AM), https://thehill.com/opinion/immigration/5404863-i-was-once-an-ice-prosecutor-what-i-see-now-in-immigration-courts-is-disturbing/

*Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Aug. 26, 2025), ECF No. 47; Letter Mot. at 10-11,

*African Cmtys. Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Aug. 25, 2025), ECF No. 44; Brief for

Amicus Curiae City of New York in Supp. of Pls.' Mot. for a Stay at 9-10, *African Cmtys.*

*Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Aug. 18, 2025), ECF No. 32-1.

52.     On September 12, 2025, the U.S. District Court for the Southern District of New

York preliminarily stayed the EOIR's dismissal guidance as to removal proceedings conducted in

Manhattan and the Bronx pending a full review of its merits. Op. & Order at. 46, *African Cmtys.*

*Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Sept. 12, 2025), ECF No. 51.

### E.  Extensive Media Coverage & Lack of Transparency

53.     Immigration court arrests and dismissals and public opposition to this new

enforcement tactic are the subject of widespread and exceptional media coverage.

54.     Since May 20, 2025, national, state, and local media outlets have published over

two hundred articles about arrests and dismissals, many of which have expressed doubts about

this new enforcement tactic's legality.

55.     Media coverage has discussed Defendants changing policies and guidance to

facilitate this enforcement tactic.[15]

56.     Media coverage has also suggested that immigration judges and OPLA

prosecutors no longer retain the discretion to dismiss cases on a case-by-case basis.[16]

57.     Media coverage has also alluded to the EOIR collaborating and coordinating with

ICE to further immigration court arrests and dismissals.[17]

---

[15] *See, e.g.*, Aleaziz et al, *supra* n.8.

[16] *See, e.g.*, Jose Pagliery, *Ex-Immigration Judge Reveals Tactics Used to Arrest Migrants Who Show Up for Court*, NOTUS (Aug. 14, 2025, 5:18 AM), https://www.notus.org/courts/former-immigration-judge-court-hearings-ice-arrest; Aleaziz et al, *supra* n.8.

[17] *See, e.g.*, Pagliery, *supra* n.10; Natalie Yahr, *Wisconsin Asylum Seeker Miguel Robles Detained in Unprecedented Wave of Courthouse Arrests*, Racine County Eye (June 30, 2025), https://racinecountyeye.com/2025/06/30/miguel-robles-immigration-asylum/; Audrey Conklin & Bill Melugin, *Trump's ICE Launches Bold Courthouse Migrant*

58.     Media coverage has also referenced OPLA collaborating and coordinating with ERO to facilitate immigration court arrests.[18]

59.     Defendants have not disclosed their new policies and guidance for immigration court arrests and dismissals, notwithstanding a statutory duty to do so. *See* 5 U.S.C. 552(a)(2)(B) (obligating Defendants to make their "statements of policy" available for public inspection).

60.     Nor have Defendants clarified the extent that OPLA prosecutors retrain discretion to consider dismissal on case-by-case basis or the extent that the EOIR and ICE and OPLA and ERO are coordinating arrests of noncitizens in immigration courts.

## II.  EOIR FOIA Requests

61.     Amidst the significant, public controversy over immigration court arrests and dismissals, Plaintiffs filed two FOIA requests with the EOIR on July 28, 2025, for its guidance for immigration court arrests and communications with ICE leadership and the ERO about immigration court arrests and dismissals (hereinafter "EOIR Requests").

62.     Plaintiffs seek expedited processing of each EOIR Request so they can educate the public about agency guidance for arrests and any coordination between the EOIR and ICE before debate about the legality of these arrests and dismissals ends and courts address the matter.

---

*Arrest Strategy to Fast-Track Deportations Biden Avoided*, Fox News (June 9, 2025, 4:00 AM), https://www.foxnews.com/us/trumps-ice-launches-bold-courthouse-migrant-arrest-strategy-fast-track-deportations-biden-avoided; Angélica Franganillo Díaz & Priscilla Alvarez, *ICE Targets Migrants for Arrest at Courthouses as Trump Administration Intensifies Deportation Push*, CNN (June 2, 2025 5:00 AM), https://www.cnn.com/2025/06/02/politics/ice-arrests-migrants-courthouse; Aleaziz et al, *supra* n.8

[18] *See, e.g.*, Luis Ferré-Sadurní, Immigrants File Class-Action Lawsuit to Stop ICE Courthouse Arrests, NY Times (July 16, 2025), https://www.nytimes.com/2025/07/16/nyregion/trump-ice-arrests-lawsuit-immigrants.html; Nisa Khan, *When ICE Is Waiting at Immigration Court What Can Advocates Do?*, KQED (July 7, 2025), https://www.kqed.org/news/12047018/how-legal-experts-advocates-are-responding-to-the-detention-of-asylum-seekers; Hamed Aleaziz, Under Pressure From the White House, ICE Seeks New Ways to Ramp Up Arrests, NY Times (June 11, 2025), https://www.nytimes.com/2025/06/11/us/politics/ice-la-protest-arrests.html; Melissa Gomez & Rachel Uranga, *Father Ripped From Family As Agents Target Immigration Courts, Arresting People After Cases Dismissed*, Los Angeles Times (May 24, 2025, 3:00 AM), https://www.latimes.com/california/story/2025-05-24/ice-agents-swarm-immigration-courts-arresting-people-after-cases-dismissed.

63.    This case challenges the EOIR's and the DOJ's handling of the EOIR Requests

and requests therein for expedited processing, as summarized in the table below.

|  | Request No. | Request Name | Status of Merits | Status of Expedite Request |
|---|---|---|---|---|
| A. | 2025-84742 | EOIR EOIR-ERO Comms. | No determination issued – two requests for clarification sent by EOIR and addressed by Plaintiffs | Denied, reversed on appeal, and no decision on remand |
| B. | 2025-84733 | EOIR Arrest Guidance | Granted and denied in part, appealed, and no decision on appeal (other than denying expedited processing of the appeal) | Denied, appealed, and no decision on appeal (other than denying expedited processing of the appeal) |

**A. EOIR EOIR-ERO Comms. Request (2025-84742)**

64.    The EOIR received FOIA Request No. 2025-84742 from Plaintiffs on July 28,

2025 (hereinafter "EOIR EOIR-ERO Comms. Request").

65.    As filed, the EOIR EOIR-ERO Comms. Request sought the following records and

a fee waiver:

> [A]ll emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records.

| A | B | C |
|---|---|---|
| The Chief Immigration Judge | ICE Director | Expedited Removal |
| A Regional Deputy Chief Immigration Judge ("RDC[I]J") | ICE Deputy Director | An ICE enforcement operation in or near an immigration court |
| An Assistant Chief Immigration Judge ("ACIJ") | ICE Chief of Staff | An ICE arrest in or near an immigration court |
| A Court Administrator | ICE Associate Director of Enforcement and Removal Operations ("ERO") | Dismissal or termination of immigration cases or proceedings in immigration court |

| | The Director of ERO Field Operations | |
| --- | --- | --- |
| | An Assistant Director of ERO Field Operations | |
| | An ERO Field Office Director | |
| | An ERO Field Office Deputy Director | |

Ex. A at 1-2 (footnotes omitted).[19]

66.     The EOIR EOIR-ERO Comms. Request also seeks expedited processing under 28 C.F.R. § 16.5(e)(1)(ii), (iv), *id.* at 2-14 & ns. 4-19, so Plaintiffs can educate the public about any coordination between the EOIR and ICE before debate about the legality of immigration court arrests and dismissals ends and courts address the issue.

67.     The EOIR denied expedited processing on July 30, 2025. Ex. B.

68.     On August 5, 2025, the EOIR informed Plaintiffs of purported defects in the EOIR EOIR-ERO Comms. Request's description of responsive records and advised that it would close the request if Plaintiffs did not provide a response. Ex. C at 1.

69.     On August 18, 2025, Plaintiffs responded to the EOIR. Ex. D at 1, 3-4.

70.     In their response, Plaintiffs also made two modifications to the EOIR EOIR-ERO Comms. Request to ease any burdens on the EOIR and help the agency process it.

   a.   Plaintiffs excluded Signal messages, WhatsApp messages, text messages, and other phone records from the types of responsive records; and

   b.   Plaintiffs held the search for, and the processing of, responsive correspondence and other similar communication records in abeyance until the EOIR has

---

[19] All pin cites reference the page number of the exhibit itself exclusive of the cover page.

processed responsive emails, calendar entries, meeting notes, and Microsoft
Teams messages.

*Id.* at 4.

71.     In their response, Plaintiffs also renewed their request for expedited processing:
They incorporated their previous request and cited additional media coverage about immigration
court arrests and dismissals between July 28, 2025, and August 18, 2025. *Id.* at 4-6 & ns. 5-8.

72.     On August 27, 2025, Plaintiffs appealed the EOIR's expedited processing denial
to the DOJ and sought expedited processing of their appeal under 28 C.F.R. § 16.5(e)(1)(ii), (iv).
Ex. E.

73.     On September 4, 2025, the DOJ remanded Plaintiffs' request for expedited
processing to the EOIR "for further processing." Ex. F.

74.     In the interim, on August 28, 2025, the EOIR expressed concern about the
burdens of searching for records responsive to the EOIR EOIR-ERO Comms. Request and asked
Plaintiffs to "provide search terms." Ex. G.

75.     On September 8, 2025, Plaintiffs responded to the EOIR's concern and provided a
non-exhaustive list of search terms. Ex. H at 4-5.

76.     Plaintiffs also supplemented the record for, and reiterated, their request for
expedited processing. *Id.* at 5-9 & ns. 5-8.

77.     On October 13, 2025, Plaintiffs followed up on the status of their request for
expedited processing and provided additional evidence that expedition is warranted. Ex. I.

78.     The EOIR has not issued a determination on the EOIR EOIR-ERO Comms.
Request, the fee waiver application therein, or the request for expedited processing on remand.

**B. EOIR Arrest Guidance Request (2025-84733)**

79.     The EOIR received FOIA Request No. 2025-84733 from Plaintiffs on July 28,

2025 (hereinafter "EOIR Arrest Guidance Request").

80.     The EOIR Arrest Guidance Request seeks the following records and a fee waiver:

> [A]ll guidance, instructions, policies, and other similar records
> created by, provided to, or otherwise in the possession of EOIR for
> ICE enforcement operations or arrests at or near an immigration
> court issued since January 20, 2025.

Ex. J at 1 (footnote omitted).

81.     The EOIR Arrest Guidance Request directs the EOIR to a responsive record: the

email guidance discussed in ¶ 37. *Id.* at 1-2 n.1.

82.     The EOIR Arrest Guidance Request also asks for expedited processing under 28

C.F.R. § 16.5(e)(1)(ii), (iv), *id.* at 2-12 & ns. 2-13, which the EOIR denied on July 30, 2025, Ex.

K.

83.     The EOIR searched for records responsive to the EOIR Arrest Guidance Request,

Ex. L, and located only a two page-email chain denying an attorney's request for an "emergency

liaison meeting to discuss the recent arrests happening in court" in Louisiana, Ex. M.

84.     The EOIR's search did not locate PM 25-06, the guidance email referenced in the

EOIR Arrest Guidance Request, and other responsive records.

85.     The EOIR issued its final determination on August 11, 2025, wherein it produced

the email chain in part, recognized the Council as a "news media requester," and declined to

charge any processing fees. Ex. L.

86.     By email on August 13, 2025, Plaintiffs sought clarification from the EOIR about

whether the August 11, 2025, production was its final determination on, and production for, the

EOIR Arrest Guidance Request. Plaintiffs also asked the EOIR to provide a short description of

its search for responsive records and directed the EOIR to responsive records that its search did

not locate. Ex. N at 3-4.

87.    The EOIR confirmed the following day that the August 11, 2025, determination

was its final response and that it "do[es] not have additional records" because the "EOIR does

not deal with ICE enforcement." *Id*. at 2. The EOIR did not provide the requested description of

its search.

88.    On August 15, 2025, Plaintiffs appealed the EOIR's final determination to the

DOJ on the grounds that the underlying search was unreasonable. Ex. O at 2-3. Plaintiffs also

emailed the EOIR a courtesy copy of the appeal and asked the agency to reconsider the adequacy

of its search. Ex. N at 1.

89.    That day, Plaintiffs also appealed the EOIR's expedited processing denial to the

DOJ and sought expedited processing of their appeal under 28 C.F.R. § 16.5(e)(1)(ii), (iv). Ex. O

at 3-8 & ns. 3-10.

90.    The DOJ received Plaintiffs' appeal on August 15, 2025, and designated it as A-

2025-02424. Ex. P.

91.    On August 26, 2025, the DOJ refused to expedite processing of A-2025-02424

under 28 C.F.R. § 16.5(e)(1)(ii), (iv). Ex. Q at 2.

92.    On September 8, 2025, Plaintiffs asked the DOJ to reconsider its decision to deny

expedited processing of A-2025-02424 for lacking consistency with its decision to reverse the

EOIR's expedited processing denial in the EOIR EOIR-ERO Comms. Request and remand that

expedite request to the EOIR for further processing. *Id.* at 1.

93.    Neither the DOJ nor the EOIR has taken subsequent action on the EOIR Arrest

Guidance Request or A-2025-02424.

### III. ICE FOIA Requests

94.     Plaintiffs also filed five FOIA requests with ICE on July 29, 2025, for its guidance for dismissals and immigration court arrests, certain OPLA-ERO communications, and correspondence between the EOIR and either OPLA or ERO (hereinafter "ICE Requests").

95.     Plaintiffs seek expedited processing of each ICE Request so they can educate the public about agency guidance for arrests and dismissals, any coordination between the EOIR and either the ERO or OPLA, and the extent to which OPLA prosecutors retain discretion to consider dismissal on a case-by-case basis before debate about the legality of immigration court arrests and dismissals dissipates and courts address the issue.

96.     This case challenges ICE's and the DHS's handling of the ICE Requests and requests therein for expedited processing, as summarized in the table below.

|    | Request No. | Request Name | Status of Merits | Status of Expedite Request(s) |
|----|-------------|--------------|------------------|-------------------------------|
| A. | 2025-ICFO-51684 | ICE ERO-EOIR Comms. | No determination issued – request for clarification sent by ICE and addressed by Plaintiffs | No determination issued on expedite request |
| B. | 2025-ICFO-51687 | Intra-ICE Comms. | No determination issued – request for clarification sent by ICE and addressed by Plaintiffs | No determination issued on expedite request |
| C. | 2025-ICFO-51690 | ICE OPLA-EOIR Comms. | No determination issued – request for clarification sent by ICE and addressed by Plaintiffs | No determination issued on expedite request |
| D. | 2025-ICFO-51692 | OPLA Arrest Guidance | No determination issued | No response to expedited appeal of expedite denial |
| E. | 2025-ICFO-51693 | OPLA Dismissal Guidance | No determination issued | No response to expedited appeal of expedite denial |

### A.  ICE ERO-EOIR Comms. Request (2025-ICFO-51684)

97.     ICE received FOIA Request No. 2025-ICFO-51684 from Plaintiffs on July 29, 2025 (hereinafter "ICE ERO-EOIR Comms. Request").

98.     As filed, the ICE ERO-EOIR Comms. Request sought the following records and a

fee waiver:

> [A]ll emails, correspondence, calendar entries, meeting notes, text
> messages, Signal messages, WhatsApp messages, Microsoft Teams
> messages, and other similar communication records between one or more
> individuals listed in Column A of the table below and one or more
> individuals listed in Column B about a topic listed in Column C from April
> 1, 2025, to the date of a reasonable search for responsive records.

| A | B | C |
|---|---|---|
| ICE Director | The Chief Immigration Judge | Expedited Removal |
| ICE Deputy Director | A Regional Deputy Chief Immigration Judge ("RDC[I]J") | An ICE enforcement operation in or near an immigration court |
| ICE Chief of Staff | An Assistant Chief Immigration Judge ("ACIJ") | An ICE arrest in or near an immigration court |
| ICE Associate Director of Enforcement and Removal Operations ("ERO") | A Court Administrator | Dismissal or termination of immigration cases or proceedings in immigration court |
| The Director of ERO Field Operations | | |
| An Assistant Director of ERO Field Operations | | |
| An ERO Field Office Director | | |
| An ERO Field Office Deputy Director | | |

Ex. R at 1-2 (footnotes omitted).

99.     The ICE ERO-EOIR Comms. Request also asks for expedited processing under 6

C.F.R. § 5.5(e)(1)(ii), (iv). *Id.* at 2-14 & ns. 3-16.

100.     On July 30, 2025, ICE expressed concern that the ICE ERO-EOIR Comms.

Request did not reasonably describe responsive records due to being "too broad in scope" and

"not specifically identify[ing] the records which [Plaintiffs] are seeking." Ex. S at 2.

101.    ICE also requested that Plaintiffs provide email addresses, keywords, and other additional information to avoid further delay in processing 2025-ICFO-51684. *Id.* at 2-3.

102.    On August 4, 2025, Plaintiffs gave ICE initial keywords and some of its requested information, noted that other requested information was not needed to process their request, and explained that the ICE ERO-EOIR Comms. Request's description was reasonable under applicable case law. Ex. T at 4-7.

103.    Plaintiffs also supplemented the record for their expedite request. *Id.* at 7-8 & ns. 6-7.

104.    On September 26, 2025, ICE reiterated its concern that the ICE ERO-EOIR Comms. Request "is too broad" and asked Plaintiffs to provide "the names of all the Officials sought in [their] request." Ex. U at 2.

105.    On October 13, 2025, Plaintiffs responded to ICE, Ex. V, including by providing a list of possible names, *id.* at 36-40.

106.    In their response, Plaintiffs also made four modifications to the ICE ERO-EOIR Comms. Request to ease any burdens on ICE and help the agency process it.

    a.    Plaintiffs excluded from the list of individuals in Column A any ERO Field Office Director and any ERO Field Office Deputy Director in whose jurisdiction there is not an immigration court with a non-detained docket;

    b.    Plaintiffs excluded from the list of individuals in Column B the EOIR RCDIJs, ACIJs, and court administrators who do not oversee or work at an immigration court with a non-detained docket;

    c.    Plaintiffs excluded Signal messages, WhatsApp messages, text messages, and other phone records from the types of responsive records; and

      d.   Plaintiffs held the search for, and the processing of, responsive correspondence and other similar communication records in abeyance until ICE has processed responsive emails, calendar entries, meeting notes, and Microsoft Teams messages.

*Id.* at 4.

107.    On October 13, 2025, Plaintiffs also followed upon their expedite request and provided additional evidence for why expedition is warranted. Ex. W.

108.    ICE has yet to make a determination on the ICE ERO-EOIR Comms. Request or Plaintiffs' requests therein for expedited processing and a fee waiver.

## B.  Intra-ICE Comms. Request (2025-ICFO-51687)

109.    ICE received FOIA Request No. 2025-ICFO-51687 from Plaintiffs on July 29, 2025 (hereinafter "Intra-ICE Comms. Request").

110.    As filed, the Intra-ICE Comms. Request sought the following records and a fee waiver:

> [A]ll emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records.

| A | B | C |
|---|---|---|
| ICE Associate Director of Enforcement and Removal Operations ("ERO") | ICE Principal Legal Advisor | An ICE enforcement operation in or near an immigration court |
| The Director of ERO Field Operations | ICE Executive Deputy Principal Legal Advisor | An ICE arrest in or near an immigration court |
| An Assistant Director of ERO Field Operations | ICE Deputy Principal Legal Advisor for Field Legal Operations | Dismissal or termination of immigration cases or |

| | | proceedings in immigration court |
|---|---|---|
| An ERO Field Office Director | An ICE Office of the Principal Legal Advisor ("OPLA") Field Location's Chief Counsel | |
| An ERO Field Office Deputy Director | | |

Ex. X at 1-2 (footnote omitted).

111.    The Intra-ICE Comms. Request also asks for expedited processing under 6 C.F.R. § 5.5(e)(1)(ii), (iv). *Id.* at 2-13 & ns. 2-15.

112.    On July 30, 2025, ICE expressed concern that the Intra-ICE Comms. Request did not reasonably describe responsive records due to being "too broad in scope" and "not specifically identify[ing] the records which [Plaintiffs] are seeking." Ex. Y at 2.

113.    ICE also requested that Plaintiffs provide email addresses, keywords, and other additional information to avoid further delay in processing Intra-ICE Comms. *Id.* at 2-3.

114.    On August 4, 2025, Plaintiffs gave ICE initial keywords and some of its requested information, noted that other requested information was not needed to process their request, and explained that the Intra-ICE Comms. Request's description was reasonable under applicable case law. Ex. Z at 4-7.

115.    Plaintiffs also supplemented the record for their expedite request. *Id.* at 7-8 & ns. 7-8.

116.    On September 26, 2025, ICE reiterated its concern that the Intra-ICE Comms. Request "is too broad" and asked Plaintiffs to provide "the names of all the Officials sought in [their] request." Ex. AA at 2.

117.    On October 13, 2025, Plaintiffs responded to ICE, Ex. AB, including by providing a list of possible names, *id.* at 35-36.

118.    In their response, Plaintiffs also made four modifications to the Intra-ICE Comms. Request to ease any burdens on ICE and help the agency process it.

    a.    Plaintiffs excluded from the list of individuals in Column A any ERO Field Office Director and any ERO Field Office Deputy Director in whose jurisdiction there is not an immigration court with a non-detained docket;

    b.    Plaintiffs excluded from the list of individuals in Column B any OPLA Chief Counsel for a Field Location in whose jurisdiction there is not an immigration court with a non-detained docket;

    c.    Plaintiffs excluded Signal messages, WhatsApp messages, text messages, and other phone records from the types of responsive records; and

    d.    Plaintiffs held the search for, and the processing of, responsive correspondence and other similar communication records in abeyance until ICE has processed responsive emails, calendar entries, meeting notes, and Microsoft Teams messages.

*Id.* at 4.

119.    On October 13, 2025, Plaintiffs also followed upon their expedite request and provided additional evidence for why expedition is warranted. Ex. W.

120.    ICE has yet to make a determination on the Intra-ICE Comms. Request or Plaintiffs' requests therein for expedited processing and a fee waiver.

### C. ICE OPLA-EOIR Comms. Request (2025-ICFO-51690)

121.    ICE received FOIA Request No. 2025-ICFO-51690 from Plaintiffs on July 29, 2025 (hereinafter "ICE OPLA-EOIR Comms.").

122.    As filed, the ICE OPLA-EOIR Comms. Request sought the following records and a fee waiver:

> [A]ll emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records.

| A | B | C |
|---|---|---|
| ICE Principal Legal Advisor | The Chief Immigration Judge | Expedited Removal |
| ICE Executive Deputy Principal Legal Advisor | A Regional Deputy Chief Immigration Judge ("RDC[I]J") | An ICE enforcement operation in or near an immigration court |
| ICE Deputy Principal Legal Advisor for Field Legal Operations | An Assistant Chief Immigration Judge ("ACIJ") | An ICE arrest in or near an immigration court |
| An ICE Office of the Principal Legal Advisor ("OPLA") Field Location's Chief Counsel | A court administrator | Dismissal or termination of immigration cases or proceedings in immigration court |
| An ICE OPLA Field Location's Deputy Chief Counsel | | |

Ex. AC at 1-2 (footnotes omitted).

123.    The ICE OPLA-EOIR Comms. Request also asks for expedited processing under 6 C.F.R. § 5.5(e)(1)(ii), (iv). *Id.* at 2-14 & ns. 3-15.

124.    On July 30, 2025, ICE expressed concern that the ICE OPLA-EOIR Comms. Request did not reasonably describe responsive records due to being "too broad in scope" and "not specifically identify[ing] the records which [Plaintiffs] are seeking." Ex. AD at 2.

125.    ICE also requested that Plaintiffs provide email addresses, keywords, and other additional information to avoid further delay in processing the ICE OPLA-EOIR Comms. Request *Id.* at 2-3.

126.    On August 4, 2025, Plaintiffs gave ICE initial keywords and some of its requested information, noted that other requested information was not needed to process their request, and explained that the ICE OPLA-EOIR Comms. Request's description was reasonable under applicable case law. Ex. AE at 4-7.

127.    Plaintiffs also supplemented the record for their expedite request. *Id.* at 7-8 & ns. 6-7.

128.    On September 26, 2025, ICE reiterated its concern that the ICE OPLA-EOIR Comms. Request "is too broad" and ask Plaintiffs to provide "the names of all the Officials sought in [their] request." Ex. AF at 2.

129.    On October 13, 2025, Plaintiffs responded to ICE, Ex. AG, including by providing a list of possible names, *id.* at 35-38.

130.    In their response, Plaintiffs also made four modifications to the ICE OPLA-EOIR Comms. Request to ease any burdens on ICE and help the agency process it.

a.    Plaintiffs excluded from the list of individuals in Column A any OPLA Chief Counsel for a Field Location in whose jurisdiction there is not an immigration court with a non-detained docket;

b.    Plaintiffs excluded from the list of individuals in Column B the EOIR RCDIJs, ACIJs, and court administrators who do not oversee or work at an immigration court with a non-detained docket;

c.  Plaintiffs excluded Signal messages, WhatsApp messages, text messages, and other phone records from the types of responsive records; and

d.  Plaintiffs held the search for, and the processing of, responsive correspondence and other similar communication records in abeyance until the ICE has processed responsive emails, calendar entries, meeting notes, and Microsoft Teams messages.

*Id.* at 4.

131.    On October 13, 2025, Plaintiffs also followed up on their expedite request and provided additional evidence for why expedition is warranted. Ex. W.

132.    ICE has yet to make a determination on the ICE OPLA-EOIR Comms. Request or Plaintiffs' requests therein for expedited processing and a fee waiver.

**D.  OPLA Arrest Guidance (2025-ICFO-51692)**

133.    ICE received FOIA Request No. 2025-ICFO-51692 from Plaintiffs on July 29, 2025 (hereinafter "OPLA Arrest Guidance Request").

134.    OPLA Arrest Guidance Request seeks the following records and a fee waiver:

[A]ll guidance, instructions, policies, and other similar records circulated to Office of the Principal Legal Advisor Assistant Chief Counsel, Deputy Chief Counsel, or Chief Counsel since January 20, 2025, about ICE Enforcement and Removal Operations arresting noncitizens at immigration courts.

Ex. AH at 1 (footnote omitted).

135.    OPLA Arrest Guidance Request also asks for expedited processing under 6 C.F.R. § 5.5(e)(1)(ii), (iv), *id.* at 2-12 & n. 2-13, which ICE denied on July 29, 2025, Ex. AI, and again on July 30, 2025, Ex. AJ.

136.    On August 26, 2025, Plaintiffs appealed the expedited processing denial to the DHS and ICE OPLA and sought expedited processing of their appeal. Ex. AK at 2-18 & ns. 2-14.

137.    ICE OPLA received Plaintiffs' appeal that day and designated it as 2025-ICAP-00415. Ex. AL.

138.    The DHS received Plaintiffs' appeal on September 3, 2025.

139.    Neither ICE nor DHS has adjudicated Plaintiffs' appeal or the request therein for expedited processing of the appeal.

140.    Nor has ICE made a determination on the OPLA Arrest Guidance Request or Plaintiffs' request therein for a fee waiver.

### E.  OPLA Dismissal Guidance (2025-ICFO-51693)

141.    ICE received FOIA Request No. 2025-ICFO-51963 from Plaintiffs on July 29, 2025 (hereinafter "OPLA Dismissal Guidance").

142.    OPLA Dismissal Guidance Request seeks the following records and a fee waiver:

> [A]ll guidance, instructions, policies, templates, and other similar records provided to an Office of the Principal Legal Advisor ("OPLA") Chief Counsel, OPLA Deputy Chief Counsel, or OPLA Assistant Chief Counsel since January 20, 2025, for dismissing an immigration court case.

Ex. AM at 1 (footnote omitted).

143.    OPLA Dismissal Guidance Request also asks for expedited processing under 6 C.F.R. § 5.5(e)(1)(ii), (iv), *id.* at 2-10 & ns. 2-9, which ICE denied on July 30, 2025, Ex. AN.

144.    On August 26, 2025, Plaintiffs appealed the expedited processing denial to the DHS and ICE OPLA and sought expedited processing of their appeal.

145.    ICE OPLA received Plaintiffs' appeal that day and designated it as 2025-ICAP-00416.

146.    On October 14, 2025, Plaintiffs withdrew 2025-ICAP-00416. *See* Ex. AO at 1 n.1.

147.    On October 14, 2025, Plaintiffs also re-appealed the expedited processing denial to ICE OPLA and DOJ, *id.* at 1-5, and sought expedited processing of their appeal, *id.* at 22-174.

148.     ICE OPLA received Plaintiffs' appeal that day and designated it as 2026-ICAP-00012. Ex. AP.

149.     Neither ICE nor the DHS has adjudicated Plaintiffs' appeal or the request therein for expedited processing of their appeal.

150.     Nor has ICE made a determination the OPLA Dismissal Guidance Request or Plaintiffs' request therein for a fee waiver.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF: FAILURES TO GRANT EXPEDITED PROCESSING

151.     Plaintiffs incorporate by reference ¶¶1-150.

152.     Plaintiffs have a legal right to expedited processing of the EOIR and ICE Requests under FOIA and the agencies' implementing regulations. *See* 5 U.S.C. § 552(a)(6)(E)(i), (v)(II); 6 C.F.R. § 5.5(e)(1)(ii), (iv); 28 C.F.R. § 16.5(e)(1)(ii), (iv).

153.     Plaintiffs also have a legal right to receive "a determination" from ICE and the DHS "of whether to provide expedited processing" of the ICE Requests within ten days of requesting it. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 6 C.F.R. § 5.5(e)(4).

154.     Plaintiffs also have a legal right to receive "a determination" on remand from the EOIR and the DOJ "of whether to provide expedited processing" of the EOIR EOIR-ERO Comms. Request within ten days of the DOJ remanding this Request's expedite request for furthering processing. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 28 C.F.R. § 16.5(e)(4).

155.     Defendants ICE and DHS's decisions to deny Plaintiffs expedited processing of the OPLA Arrest Guidance and OPLA Dismissal Guidance Requests violate FOIA and DHS implementing regulations.

156.    Defendants ICE and DHS's failures to make any determination to date on Plaintiffs' requests to expedite the processing of the ICE ERO-EOIR Comms. Request, the Intra-ICE Comms. Request, and the ICE OPLA-EOIR Comms. Request to date—let alone grant these expedite requests—violate FOIA and DHS implementing regulations.

157.    Defendants EOIR and DOJ's decisions to deny Plaintiffs expedited processing of the EOIR Requests violate FOIA and DOJ implementing regulations.

158.    Defendants EOIR and DOJ's failure to make a subsequent determination to date on the remanded request for expedited processing in the EOIR EOIR-ERO Comms. Request—let alone grant this expedite request—violates FOIA and DOJ implementing regulations.

## SECOND CLAIM FOR RELIEF: FAILURES TO CONDUCT A REASONABLE SEARCH

159.    Plaintiffs incorporate by reference ¶¶1-150.

160.    Plaintiffs have a legal right under FOIA for Defendants to conduct reasonable searches for records responsive to the EOIR and ICE Requests. 5 U.S.C. § 552(a)(3).

161.    Defendants have not conducted reasonable searches for records responsive to these Requests.

162.    Defendants' failures to conduct reasonable searches for these records violate FOIA. *Id.*

## THIRD CLAIM FOR RELIEF: FAILURES TO MAKE RESPONSIVE RECORDS PROMPTLY AVAILABLE

163.    Plaintiffs incorporate by reference ¶¶1-150.

164.    Plaintiffs have a legal right under FOIA to obtain prompt production of all reasonably segregable non-exempt portions of all records sought in the EOIR and ICE Requests. *Id.* § 552(a)(3)(A).

165.    Defendants have yet to make all non-exempt portions of records responsive to these Requests available to Plaintiffs.

166.    Defendants' failures to make these records available to Plaintiffs violate FOIA. *Id.*

**FOURTH CLAIM FOR RELIEF: FAILURES TO AWARD A FEE WAIVER**

167.    Plaintiffs incorporate by reference ¶¶1-150.

168.    Plaintiffs have a legal right to fee waivers on the EOIR and ICE Requests under FOIA and Defendants' implementing regulations. *See* 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k)(1); 28 C.F.R. § 16.10(k)(1).

169.    Defendant ICE and DHS's failures to grant Plaintiffs fee waivers on the ICE Requests violate FOIA and the agencies' implementing regulations.

170.    Defendant EOIR and DOJ's failure to grant Plaintiffs a fee waiver on the EOIR EOIR-ERO Comms. Request violates FOIA and the agencies' implementing regulations.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, the Plaintiffs respectfully request that this Court grant the following relief:

a.    Assume jurisdiction over the matter;

b.    Expedite consideration of this case pursuant to 28 U.S.C. § 1657(a);

c.    Grant Plaintiffs expedited processing of the EOIR and ICE Requests;

d.    Order Defendants to process the EOIR and ICE Requests as soon as practicable;

e.    Order Defendants to conduct reasonable searches for all records responsive to the EOIR and ICE Requests in accordance with 5 U.S.C. § 552(a)(3);

f.    Order Defendants to disclose promptly responsive non-exempt records in their entirety and all reasonably segregable, non-exempt parts of other responsive records;

g.    Review any and all of Defendants' decisions to redact or withhold information in responsive records as exempt from disclosure;

h.  Grant Plaintiffs fee waivers on the EOIR EOIR-ERO Comms. Request and the ICE

Requests;

i.  Award Plaintiffs costs and reasonable attorneys' fees in this action as provided by 5

U.S.C. § 552(a)(4)(E); and

j.  Grant other such relief as the Court may deem just and proper.

Date: October 15, 2025                          Respectfully submitted,

                                                /s/   Chris Opila

Daniel A. McGrath                               Christopher ("Chris") Opila
Anisha Hindocha*                                Raul A. Pinto
Robin Thurston*                                 AMERICAN IMMIGRATION COUNCIL
DEMOCRACY FORWARD FOUNDATION                     PMB2026
P.O Box. 34553                                  2001 L Street N.W., Suite 500
Washington, D.C. 20043                          Washington, DC 20036
(202) 448-9090                                  (202) 507-7699
dmcgrath@democracyforward.org                   copila@immcouncil.org
ahindocha@democracyforward.org                  rpinto@immcouncil.org
rthurston@democracyforward.org

                                                Rex Chen
*Pro Hac Vice Motion forthcoming                LATINOJUSTICE PRLDEF
                                                475 Riverside Dr., Suite 1901
                                                New York, NY 10115
                                                (212) 219-3360
                                                rchen@latinojustice.org