Exhibit H

 

September 8, 2025

**Filed Via Email**

U.S. Department of Justice
Executive Office for Immigration Review
Office of General Counsel – FOIA Service Center
5107 Leesburg Pike, Suite 1903
Falls Church, VA 22041

Re:    2025-84742— Response to Burdensomeness Concerns & Supplementation of the Record for Expedited Processing Request

Dear FOIA Officer:

The American Immigration Council and LatinoJustice PRLDEF (collectively, "Requesters") filed FOIA Request No. 2025-84742 (the "Request") with the Executive Office for Immigration Review ("EOIR") for various communications between specific agency officials and certain U.S. Immigration and Customs Enforcement ("ICE") officials about arrests and dismissals in immigration courts. Ex. A. Requesters sought expedited processing of this Request.

On July 30, 2025, EOIR denied expedited processing. Ex. B. Requesters appealed this denial on August 27, 2025, and the U.S. Department of Justice subsequently remanded their expedite request to EOIR "for further processing." Ex. C.

On August 5, 2025, the agency also expressed concern about the Request's description of responsive records. Ex. D. Requesters addressed this concern on August 18, 2025. Ex. D. They also narrowed their request to exclude phone records and hold "correspondence" and "other similar communications records" in abeyance. *Id.* at 4. Requesters renewed their request for expedited processing and supplemented the record with additional evidence that such processing was appropriate. *Id.* at 4-6.

On August 28, 2025, EOIR identified additional concerns with this Request, namely that the "request as-filed would require the [agency] to conduct an unreasonably burdensome search." Ex. E. The agency also denied Requesters' renewed request for expedited processing.

This letter constitutes Requesters' response to the agency's concerns and supplements the record for their remanded expedite request.



I.   THE REQUEST'S MODIFIED SCOPE

As narrowed,[1] the Request seeks all emails, correspondence, calendar entries, meeting notes, Microsoft Teams messages, and other similar communications records between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records.

| A | B | C |
|---|---|---|
| The Chief Immigration Judge | ICE Director | Expedited removal |
| A Regional Deputy Chief Immigration Judge ("RDCJ") | ICE Deputy Director | An ICE enforcement operation in or near an immigration court |
| An Assistant Chief Immigration Judge ("ACIJ") | ICE Chief of Staff | An ICE arrest in or near an immigration court |
| A Court Administrator | ICE Associate Director of Enforcement and Removal Operations ("ERO") | Dismissal or termination of immigration cases or proceedings in immigration court[2] |
| | The Director of ERO Field Operations | |
| | An Assistant Director of ERO Field Operations | |
| | An ERO Field Office Director | |
| | An ERO Field Office Deputy Director | |

The agency may hold "the search for, and processing of, responsive correspondence and other similar communication records in abeyance until [it] has processed responsive emails, calendar

---

[1] EOIR's expression of concerns with the "request as-filed" suggests that the agency may have overlooked Requesters' narrowing of their request and decision to fold certain responsive records in abeyance. Requesters redirect the agency to their response to its initial concerns for the details of their narrowing and decision to hold records in abeyance. *See* Ex. D at 4.

[2] Responsive records should be construed as exclusive of records that are part of a noncitizen's record of proceedings (e.g., a motion to dismiss).



entries, meeting notes, and Microsoft Teams messages." Ex. E at 4. Should media coverage and produced records not identify additional modalities of correspondence and communication between the individuals listed in Columns A and B, Requesters will drop "correspondence" and "other similar records" from the scope of their Request.

## II.   EOIR'S SEARCH CONCERNS

On August 28, 2025, EOIR sent the notice below:

> Your request as-filed would require the Executive Office for Immigration Review to conduct an unreasonably burdensome search. DOJ regulations state that, "[t]o the extent possible, requesters should include specific information that may assist a component in identifying the requested records, such as the date, title or name, author, recipient, subject matter of the record, case number, file designation, or reference number" and also that "requesters should include as much detail as possible about the specific records or the types of records that they are seeking." 28 C.F.R. § 16.3(b).  For this Office to respond to your request, EOIR would have to:

> 1.  You are seeking "all emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records".  In this case, you have not defined the specific records or the types of records that you are seeking that's why we suggested to limit the scope to emails and calendar entries taking into consideration EOIR's capabilities for searching.  Also, you can provide search terms based on your topic.
> 2.  In addition, you provided a list of the following custodian to be searches:
>     a.  The Chief Immigration Judge
>     b.  Regional Deputy Chief Immigration Judge ("RDCJ");
>     c.  An Assistant Chief Immigration Judge ("ACIJ");
>     d.  or a Court Administrator.

> EOIR currently has 72 courts.  Each court has a CA and could have several ACIJs, there are several RDCJs and one CIJ.  This search will include over 150 email accounts for a period over 4 months.

Ex. F (emphasis removed).



### III.  SEARCHING FOR RESPONSIVE RECORDS IS NOT UNREASONABLY BURDENSOME

EOIR's fresh concerns with the Request are misplaced. Requesters addressed the agency's first concern previously by offering to hold "correspondence" and "other similar communication records" in abeyance. Ex. E at 4. As for the agency's second concern, the Request does not require the agency to perform an unreasonably burdensome search given its electronic search capabilities and the scant information in the record about the specific burdens that electronic searches would entail. Should EOIR provide the concrete and specific information about these burdens—or the related burdens of processing any records identified in its searches—that case law requires, Requesters are willing to work with the agency to reduce the burdens of processing their request.

As Requesters previously informed the agency,

> EOIR must "provide sufficient explanation' for any unreasonable burden it claims." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995). Such explanation entails "a detailed explanation … regarding the time and expense of a proposed search." *Prop. of the People, Inc. v. U.S. Dep't of Just.*, 530 F. Supp. 3d 57, 63 (D.D.C. 2021) (quoting *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008)).

*Id*. at 7. EOIR's concerns lack this explanation. Consequentially, the record lacks sufficient information to deem searches arising from the Request unreasonable. *See, e.g., Prop. of the People,* 530 F.3d at 63 ("[M]erely claiming that a search would be costly and take many hours to complete is insufficient." (quoting *Anderson v. U.S. Dep't of State*, 661 F. Supp. 2d 6, 12 n.3 (D.D.C. 2009)). Nor does the record allow Requesters to identify any aspects of their Request that pose significant temporal or financial burdens and work with the agency to reduce them.

The only concern EOIR notes is searching "over 150 email accounts for a period over 4 months." Ex. F. But EOIR's Office of Information Technology ("OIT") can search all these accounts for responsive records in a single electronic search. *See* Ex. G ¶¶ 25-28 (describing a simultaneous search of three email accounts). And even if that were not so, courts routinely require agencies to search tens of thousands of repositories for responsive records. *See, e.g., People for Am. Way Found. v. U.S. Dep't of Just.*, 451 F. Supp. 2d 6, 15 (D.D.C. 2006) (44,000 digital files); *Pub. Citizen v. U.S. Dep't of Education*, 292 F. Supp. 2d 1, 6 (D.D.C. 2003) (25,000 paper files).



## IV. POSSIBLE KEYWORDS & OTHER SEARCH SUGGESTIONS

Requesters believe that reasonable keywords for electronic searches include not only the terms "expedited removal," "enforcement operation," "arrest*" "dismiss*" and "terminat*"[3] that are the roots of topics listed in Column C but also "obvious alternative[s] to these terms." *Am. Oversight v. U.S. Dep't of Health & Human Servs.*, 101 F.4th 909, 923 (D.C. Cir. 2024). Such alternatives include not only the terms "detain" and "apprehen*"[4] but also any abbreviations, name(s) for any enforcement operation(s) at or near an immigration court since April 1, 2025, and other agency jargon identified after contacting and consulting with staff with knowledge of the arrests, dismissals, enforcement operations, and terminations occurring at or near immigration courts since April 1, 2025, and reviewing responsive records. *See also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 328-29 (D.C. Cir. 1999) (requiring an agency to contact, and consult with, staff that are "likely source[s] for information" that would aid its search).

Requesters recommend that EOIR limit its electronic email search to emails "sent to, received [from], or copied to" the ICE officials listed in Column B. *Cf.* Ex. G ¶¶ 26, 28 (describing an OIT email search with an analogous limitation). Should the agency not know these officials' email addresses and not be able to obtain them from ICE or agency employees, Requesters advise the agency to limit the email searches to emails "sent to, received from, or copied" to email addresses with the ice.dhs.gov domain.

In addition to the 150 plus email accounts EOIR has identified, Requesters also believe that responsive repositories include any calendar and Microsoft Teams account associated with these accounts as well as EOIR shared drives and other locations likely to store meeting minutes. *See* Ex. H at 14 (ordering the agency to search these drives). Requesters advise the agency to search calendars and Microsoft Teams messages using the same methodology and terms as its email search.

## V. EXPEDITED PROCESSING SUPPLEMENTATION

Requesters supplement the record of their request for expedited processing, which the Department of Justice remand to EOIR for "further processing" on September 4, 2025. Ex. C. Requesters certify that the supplemental statements herein are "true and correct" pursuant to 28

---

[3] The use of an asterisk designates fuzzy matching, i.e. a search technique that finds matches between strings of characters that are not exactly identical (e.g., returning "dismissal," "dismissing," "dismisses," "dismissed" and "dismiss" for the search term "dismiss" or "termination," "terminating," "terminates," "terminated," and "terminate" for the search term "terminate").

[4] The use of an asterisk designates fuzzy matching, i.e. a search technique that returns "apprehend" and "apprehension."



C.F.R. § 16.5(e)(3) and incorporate herein the record for their renewed expedite request, *see* Ex. E at 4-6.

Arrests by U.S. Immigration and Customs Enforcement ("ICE") at and near immigration courts and dismissals of immigration cases remain matters of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence. Similarly, urgency continues to exist to inform the public about the coordination of ICE and ERO with EOIR to facilitate these arrests and dismissals.

National, state, and local media outlets published one hundred and twenty-one articles about ICE arrests at or near immigration courts between May 20, 2025, and July 28, 2025, when Requesters filed the Request. Ex. A. at 3 & n. 4. They published another thirty articles about these arrests between July 29, 2025, and August 18, 2025, when Requesters filed their response to the agency's initial concern with the Request. Ex. D at 4-6 & ns. 5-7. Since August 18, 2025, national, state, and local media have published at least an additional thirty articles about ICE arresting noncitizens in immigration court or attempting to dismiss their immigration cases.[5] Eighteen of

---

[5] Cassandra Stephenson, *Memphis Legal Nonprofit, Clergy Look to Create Immigration Court Watch Program*, Tennessee Lookout (Sept. 8, 2025, 5:00AM), https://tennesseelookout.com/2025/09/08/memphis-legal-nonprofit-clergy-look-to-create-immigration-court-watch-program/; Neil G. Ballard, *Illustrating A Day Inside San Francisco's Immigration Court*, Mission Local (Sept. 7, 2025, 12:30pm), https://missionlocal.org/2025/09/illustrating-a-day-inside-san-franciscos-immigration-court/; Mariana Garcia, *ICE Arrests Three at S.F. Immigration Court, Including Man Trying to Self-Deport*, Mission Local (Sept. 5, 2025, 2:11 PM), https://missionlocal.org/2025/09/ice-arrests-three-at-immigration-court/; Margaret Kadifa, *ICE Arrests Five Asylum-Seekers in S.F., Despite Judge Blocking Trump Deportation Policy*, Mission Local (Sept. 4, 2025, 6:02 PM), https://missionlocal.org/2025/09/ice-arrest-federal-ruling/ (hereinafter "Kadifa re: Five Asylum Seekers"); Dean Moses, *ICE Arrests Ramp Up in NYC Immigration Court as AG Letitia James Fights to Stop Indefinite Detentions*, AMNY (Sept. 3, 2025), https://www.amny.com/news/ice-arrests-increase-nyc-immigration-court-09042025/ (hereinafter, "Moses re: ICE Arrests Ramp Up"); Dean Moses, *The Intimidation Game: NYC Immigration Lawyers Say Their Clients Can't Get a Fair Hearing With ICE Agents Stalking the Courthouses*, AMNY (Sept. 3, 2025), https://www.amny.com/news/nyc-immigraiton-lawyers-ice-agents-arrests-courts/ (hereinafter, "Moses re: Unfair Hearings"); Jacob Soboroff & Kay Guerrero, *The Disappearance of Nory Santay Ramos*, MSNBC (Sept. 2, 2025, 10:43 AM), https://www.msnbc.com/msnbc/news/nory-ramos-disappearance-deportation-trump-guatemala-rcna228133; Sam Lane, *Photojournalist Documents Arrests Outside Immigration Hearings*, PBS (Sept. 1, 2025, 6:40 PM), https://www.pbs.org/newshour/show/photojournalist-documents-arrests-outside-of-immigration-hearings; Arya Sundaram, *NYC Immigration Arrests & Deportations Surge After Slow Start, Data Shows*, Gothamist (Aug. 31, 2025), https://gothamist.com/news/nyc-immigration-arrests-and-deportations-surge-after-slow-start-data-shows; Gustavo Solis, *One Man's Journey Through the Trump Era Asylum System*, KPBS (Aug. 29, 2025, 6:00 AM), https://www.kpbs.org/news/border-immigration/2025/08/28/one-mans-journey-through-the-trump-era-asylum-system; Margaret Kadifa, *S.F. Immigration Judge Ordered a Woman Into Court. Then ICE Took Her*, Mission Local (Aug. 28, 2025, 5:53 PM), https://missionlocal.org/2025/08/six-arrested-immigration-court/; Michael Bott, *At Least 13 Migrants Detained by ICE in San Francisco as Arrests Soar*, NBC Bay Area (Aug. 28, 2025, 6:32 PM), https://www.nbcbayarea.com/news/local/migrants-detained-ice-san-francisco/3940300/; Eric Feldman, *Fired Immigration Judge: 'I Fear Due Process Is Being Violated'*, NY1 (Aug. 27, 2025, 8:20 AM), https://ny1.com/nyc/all-boroughs/politics/2025/08/27/fired-immigration-judge-warns-courts-are-being-set-up-to-fail-; Dean Moses et al., *ICE*



these articles question these tactics' integrity, casting doubt on their consistency with "the rule of law" and due process.[6] Likewise, seventeen discuss public pushback against these tactics—such as protests outside immigration courts; clergy and other members of the public

---

*in Courts: Wife of Bronx Man Arrested at Federal Plaza in Front of Children Says It Left Her Family Traumatized*, AMNY (Aug. 26, 2025), https://www.amny.com/news/ice-arrest-man-arrested-federal-plaza-family/; Ximena Bustillo, *Confusion, Explosive Anger and Waiting: NPR Spent a Day in New York Immigration Court*, NPR (Aug. 25, 2025, 5:00 AM), https://www.npr.org/2025/08/25/nx-s1-5503595/immigration-court-new-york; Kate Scanlon, *ICE Detentions in Immigration Courts Prompt Alarm From Catholic Advocates*, OSV News (Aug. 25, 2025), https://www.osvnews.com/ice-detentions-in-immigration-courts-prompt-alarm-from-catholic-advocates/; Ryan Oehrli, *Charlotte ICE Official Defends Controversial Arrests, Tactics: 'People Are Defiant'*, The Charlotte Observer (Aug. 25, 2025, 12:09 PM), https://www.charlotteobserver.com/news/local/article311812778.html; Dean Moses, *ICE in Courts: New York Attorney General Letitia James Files Brief Seeking to Halt Immigration Court Arrests*, AMNY (Aug. 25, 2025), https://www.amny.com/news/ice-courts-letitia-james-brief-halt-arrests/ (hereinafter, "Moses re: NY AG Amicus"); Michelle Boorstein, *He Was a Child Refugee. Now He's a Bishop Navigating Trump's Deportation Push.*, The Washington Post (Aug. 24, 2025, 6:00 AM), https://www.washingtonpost.com/nation/2025/08/24/pope-leo-bishop-san-diego-michael-pham/ ; Mariana Garcia, *ICE Arrests Colombian Asylum Seeker at S.F. Court Hearing*, Mission Local (Aug. 22, 2025, 1:11 PM), https://missionlocal.org/2025/08/sf-ice-colombian-asylum-seeker-arrest/; Jacob Soboroff, *Sketch Artist Captures ICE Arrests in NYC Immigration Court*, MSNBC (Aug. 22, 2025), https://www.msnbc.com/11th-hour/watch/sketch-artist-captures-ice-arrests-in-nyc-immigration-court-245632069595 (hereinafter, "Soboroff re: Sketch Artist"); Emma Ruby, *Fear & Heartbreak in Dallas' Federal Immigration Court*, Dallas Observer (Aug. 22, 2025), https://www.dallasobserver.com/news/ice-arrests-at-dallas-immigration-court-documented-by-community-23068425; Margaret Kadifa & Joe Rivan Barros, *ICE Pepper Sprays Protestors & Press at S.F. Immigration Court*, Mission Local (Aug. 20, 2025, 12:53 PM), https://missionlocal.org/2025/08/ice-agents-pepper-spray-protesters-arrest-one-in-downtown-s-f/; Dean Moses, *ICE Arrests Appear to Slow at Lower Manhattan Immigration Court – But Masked Agents Still Stalk the Halls*, AMNY (August. 20, 2025), https://www.amny.com/immigration/ice-arrests-slow-lower-manhattan-immigration-court/ (hereinafter, "Moses re: ICE Arrests Slow"); Noorulain Khawaja, *Inside the Chaotic Arrests at New York's Immigration Court*, Spectrum News NY1 (Aug. 20, 2025, 10:30AM), https://ny1.com/all-boroughs/news/2025/08/20/chaotic-arrests-at-new-york-s-immigration-court; Marcia Karmer, *Mayor Adams, NYC Ask Court to Stop ICE Arrests at Immigration Court Hearings*, CBS News (Aug. 19, 2025, 6:38 PM), https://www.cbsnews.com/newyork/news/ice-arrests-at-immigration-court-hearings/; Billal Rahman, *Six-Year-Old Detained by ICE Agents in New York*, Newsweek (Aug. 19, 2025, 5:11 AM), https://www.newsweek.com/six-year-old-detained-ice-agents-new-york-2115478 ; Adam Daly, *NY Leaders Join Lawsuits to Halt ICE Courthouse Arrests & Improve Detention Conditions*, AMNY (Aug. 19, 2025), https://www.amny.com/immigration/ny-leaders-lawsuit-ice-courthouse-arrests/; Santul Nerkbar, *Adams Asks Trump Administration to Stop Courthouse Migrant Detentions*, New York Times (Aug. 19, 2025), https://www.nytimes.com/2025/08/19/nyregion/adams-immigration-amicus-brief.html; J. Dale Shoemaker & Akela Lacy, *Judge Overturns Immigration Court Arrest*, Investigative Post (Aug. 19, 2025), https://www.investigativepost.org/2025/08/19/judge-overturns-immigration-court-arrest/.

[6] Stephenson, *supra* n. 5; Kadifa re: Five Asylum Seekers, *supra* n. 5; Moses re: ICE Arrests Ramp Up, *supra* n. 5; Moses re: Unfair Hearings, *supra* n. 5; Soboroff & Guerro, *supra* n. 5; Solis, *supra* n. 5; Bott, *supra* n. 5; Feldman, *supra* n. 5; Bustillo, *supra* n. 5; Scanlon, *supra* n. 5; Oehrli, *supra* n. 5; Moses re: NY AG Amicus, *supra* n. 5; Boorstein, *supra* n. 5; Soboroff re: Sketch Artist, *supra* n. 5; Moses re: ICE Arrests Slow, *supra* n. 5; Khawaja, *supra* n. 5; Karmer, *supra* n. 5; Daly, *supra* n. 5.

 

accompanying noncitizens to their immigration hearings; and lawsuits challenging these tactics' legality.[7] And another editorial has decried these arrests and called for ICE to cease them.[8]

Delayed production of responsive records is compromising the ongoing public debate about the propriety of ICE arrests at immigration courts and the dismissal of immigration cases, a high-profile government action. *Cf. Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, 769 F. Supp. 3d 8, 27 (D.D.C. 2025) ("CREW") (expediting a request for records about the U.S. DOGE Service); *Protect Dem. Proj. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) (expediting a request for records about a possible unlawful airstrike on Syria); *Am. Civ. Liberties Union of No. Cal. v. U.S. Dep't of Def.*, No. C 06-01698, 2006 WL 1469418, at *6-7 (N.D. Cal. May 25, 2006) ("ACLU") (expediting a request for records about possible unlawful military surveillance of protestors); *Freedom Coalition of Doctors for Choice v. Ctrs. For Disease Control & Prevention*, 2:23-cv-102, 2024 WL 69084, at *14 (N.D. Tex. Jan. 5, 2024) (expediting a request disputing the effectiveness of COVID-19 vaccines).

In *CREW* and *Protect Democracy Project* the U.S. District Court for the District of Columbia found urgency to expedite the processing of FOIA requests for records about the U.S. DOGE Service and an airstrike in Syria respectively because if production were delayed, the public and requesters would "be precluded from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of a high-profile government action." *CREW*, 769 F. Supp. 3d at 27 (cleaned up); *Protect Dem. Proj.*, 263 F. Supp. 3d at 299 (same). Similarly, in *ACLU*, the U.S. District Court for the Northern District of California found urgency to expedite the processing of a FOIA request about military domestic surveillance program because "[g]etting the requested information quickly might be valuable to would-be protesters and opposition groups" and "might help them decide how to express their political viewpoints." 2006 WL 1469418, at *7. As demonstrated by the extensive media coverage on the issue, protests outside immigration court, and lawsuits filed, immigration court arrests and dismissals are a high-profile government action whose legality is disputed akin to DOGE, bombing a foreign country, and domestic surveillance such that delayed production of responsive records is compromising the ongoing debate about this action's legality.

---

[7] Stephenson, *supra* n. 5; Garcia, *supra* n. 5; Kadifa re: 5 Asylum Seekers, *supra* n. 5; Moses re: Unfair Hearings, *supra* n. 5; Soboroff & Guerrero, *supra* n. 5; Solis, *supra* n. 5; Bustillo, *supra* n. 5; Moses re: NY Amicus, *supra* n. 5; Boorstein, *supra* n. 5; Joe Kukura, *US Citizen & SF Native Arrested by ICE After Protest*, SFIST (Aug. 22, 2025), https://sfist.com/2025/08/22/us-citizen-and-sf-native-arrested-by-ice-after-protest/; Ruby, *supra* n. 5; Kadifa & Barros, *supra* n. 5; Moses re: ICE Arrests Slow, *supra* n. 5; Karmer, *supra* n. 5; Daly, *supra* n. 5; Nerkbar, *supra* n. 5; Shoemaker & Lacy, *supra* n. 5.
[8] *ICE Must Abandon Its Destructive Enforcement Policy*, AMNY (Aug. 28, 2025), https://www.amny.com/editorial/ice-must-abandon-destructive-enforcement-policy/.



Additionally, delayed processing of responsive records is compromising the significant public interest in informing the public debate about the legality of immigration court arrests and dismissals before courts rule on these issues in pending litigation. *See Heritage Found. v. Entl. Prot. Agency,* Civil Action No. 23-748, 2023 WL 2954418, *4 (D.D.C. April 14, 2023) (recognizing a public interest in obtaining records to inform public debate about government action before the conclusion of a court case challenging that action).

At least two court cases are challenging the legality of these arrests and dismissals: *African Communities Together v. Lyons*, Civil No. 25-cv-6366, (S.D.N.Y. filed Aug. 1, 2025) and *Immigration Advocates Response Collaborative v. U.S. Department of Justice*, Civil No. 25-cv-2279 (D.D.C. filed July 16, 2025). In *African Communities*, plaintiffs have moved to stay ICE's policy of abandoning its prior restrictions on immigration courthouse arrests and EOIR's policy encouraging immigration judges to dismiss noncitizens removal proceedings without meaningful process pending the resolution of litigation. Mot. to Stay, *African Communities Together v. Lyons*, Civil No. 25-cv-6366, (S.D.N.Y. Aug. 11, 2025), ECF No. 22. Briefing is complete on that motion as of August 25, 2025, Reply Mem. of L. in Supp. of Mot., *African Communities Together v. Lyons*, Civil No. 25-cv-6366, (S.D.N.Y. Aug. 25, 2025), ECF No. 45, and the court held a hearing on the motion on September 2, 2025, Order, *African Communities Together v. Lyons*, Civil No. 25-cv-6366, (S.D.N.Y. Aug. 26, 2025), ECF No. 47. So, the court may now rule at any time.

Similarly, in *Immigration Advocates*, plaintiffs have moved to expedite the production of the administrative record for these policies so that they may proceed to summary judgment. Mot. to Expedite Produc. of the Administrative R., Civil No. 25-cv-2279 (D.D.C. July 24, 2025), ECF No. 7. Their motion is fully briefed, *see* Rely to Opp. to Mot. to Expedite Produc. of the Administrative R., Civil No. 25-cv-2279 (D.D.C. Aug. 14, 2025), ECF No. 20, so the court may rule at any time.

Production of responsive records is needed prior to the adjudication of these preliminary motions to inform the public debate about the courts' forthcoming rulings. Should production not occur before then, it is also needed prior to the adjudication of any appeal or forthcoming motion for summary judgment to inform the public debate over that decision.

Therefore, expedition of this Request remains warranted under 28 C.F.R. § 16.5(e)(1)(ii), (iv).

\*\*\*

Thank you for your prompt attention to this response and the remanded request for expedited processing, as well as the outstanding determination on the Request's application for a fee waiver. If you have any questions regarding this response or the Request, please do not hesitate to contact us.

  

Very truly yours,

/s/ Chris Opila
Christopher ("Chris") Opila
Staff Attorney (Transparency)
American Immigration Council
PMB2026
2001 L Street N.W., Suite 500
Washington, DC 20036
202-507-7699 | copila@immcouncil.org

 /s/ Rex Chen
Rex Chen
Supervising Counsel for Immigrant Rights
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
212-219-3360 | rchen@latinojustice.org

Enclosures:

    A.  FOIA Request No. 2025-84742
    B.  Expedited Processing Denial
    C.  Expedite Processing Remand
    D.  First Notice of Intent to Close Administratively
    E.  Response to First Notice of Intent to Close Administratively
    F.  Email re: Search Burdens
    G.  Declaration of Jeniffer Perez Santiago, *Am. Immigr. Council v. Exec. Off. for Immigr. Review*, 23-cv-1952 (D.D.C. July 22, 2024), ECF No. 25-3
    H.  Mem. Op., *Am. Immigr. Council v. Exec. Off. for Immigr. Review*, 23-cv-1952 (D.D.C. Feb. 14, 2025), ECF No. 34

Exhibit A




July 28, 2025

**Via Public Access Link Portal & Certified Mail**

U.S. Department of Justice
Executive Office for Immigration Review
Office of General Counsel – FOIA Service Center
5107 Leesburg Pike, Suite 1903
Falls Church, VA 22041

Director of Public Affairs
Office of Public Affairs
Department of Justice,
950 Pennsylvania Avenue NW.
Washington, DC 20530–0001

Re:     Freedom of Information Act Request on Terminations of Immigration Proceedings and ICE Arrests at Immigration Courts

Dear FOIA Officer:

The American Immigration Council (the "Council") and LatinoJustice PRLDEF (collectively, "Requesters") submit this request to the Executive Office for Immigration Review ("EOIR") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Since around the middle of May 2025, U.S. Immigration Customs and Enforcement ("ICE) has been arresting noncitizens in or near EOIR immigration courts when noncitizens appear for a hearing in their immigration cases. ICE has also sought to dismiss these cases so it can seek the expedited removal of respondent noncitizens. Requesters seek certain records about these arrests and dismissals as well as expedited processing and a fee waiver.

I.    REQUEST FOR INFORMATION

Requesters seek all emails,[1] correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar

---

[1] Requested emails exclude duplicates. (E.g, agencies should only produce one record of an email chain that contains all emails in that chain, rather than a record for each new email in the chain that contains all emails in the chain prior to that email).

communication records[2] between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records.

| A | B | C |
|---|---|---|
| The Chief Immigration Judge | ICE Director | Expedited removal |
| A Regional Deputy Chief Immigration Judge ("RDCJ") | ICE Deputy Director | An ICE enforcement operation in or near an immigration court |
| An Assistant Chief Immigration Judge ("ACIJ") | ICE Chief of Staff | An ICE arrest in or near an immigration court |
| A Court Administrator | ICE Associate Director of Enforcement and Removal Operations ("ERO") | Dismissal or termination of immigration cases or proceedings in immigration court[3] |
| | The Director of ERO Field Operations | |
| | An Assistant Director of ERO Field Operations | |
| | An ERO Field Office Director | |
| | An ERO Field Office Deputy Director | |

## II.   FORMAT OF PRODUCTION

Requesters seek responsive electronic records in a machine-readable, native file format, with all metadata and load files. Requesters ask EOIR to produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits, in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## III.   EXPEDITED PROCESSING

Requesters seek expedited processing of this request and certify that the statements herein are "true and correct" pursuant to 28 C.F.R. § 16.5(e)(3). FOIA obligates EOIR to process requests expeditiously in two cases: (i) those where a requester "demonstrates a compelling need"—such as "urgency to inform the public concerning actual or alleged Federal Government activity" if the

---

[2] Responsive records should be construed as exclusive of records that is part of a noncitizen's record of proceedings (e.g., a motion to dismiss).

[3] Responsive records should be construed as exclusive of records that are part of a noncitizen's record of proceedings (e.g., a motion to dismiss).

requester is "primarily engaged in disseminating information,"5 U.S.C. § 552(a)(6)(E)(i), (v)—and (ii) "in other cases determined by the agency," *id.* § 552(a)(6)(E)(i), which, for the Department of Justice, include "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 28 C.F.R. § 16.5(e)(1)(ii), (iv). Both cases exist here.

A.   A MATTER OF WIDESPREAD AND EXCEPTIONAL INTEREST RAISING GOVERNMENT INTEGRITY CONCERNS

ICE arrests at and near immigration courts and immigration judges' dismissal of immigration cases to facilitate expedited removal are matters of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

Fifty articles on an issue make it a matter of widespread and exceptional public interest. *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, Case No. 25-cv-511 (CRC), 2025 WL 752367, at *13 (D.D.C. Mar. 10, 2025) (hereinafter "CREW") *see also Brennan Ctr. for Just. v. Dep't of Com.* 498 F. Supp. 3d 87, 97 (D.D.C. 2020). A "handful of articles" also establishes such interest where the articles are "in a variety of publications" and "repeatedly reference the ongoing national discussion." *Am. Civ. Liberties Union v. Dep't of Just.*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004).

Here, one hundred and twenty one articles in nationwide, state, local, and international media outlets have covered ongoing ICE arrests at or near immigration courts in Atlanta, Boston, Buffalo, Charlotte, Denver, Houston, Los Angeles, Miami, New York, Portland, Phoenix, Sacramento, San Diego, San Franciso, Seattle, and elsewhere throughout the country since May 20, 2025.[4] This equates to almost two articles per day for sixty-six days.

---

[4] Margaret Kadifa, *ICE Arrests All Adults Without Children at S.F. Immigration Court Today*, Mission Local (July 25, 2025, 1:05 PM), https://missionlocal.org/2025/07/hed-ice-steps-up-arrests-at-s-f-immigration-court/ (hereinafter, "Kadifa re: Adult Arrests"); Pedro Camacho, *ICE Arrests Migrant Deemed Mentally Impaired by Judge as He Exits Immigration Court: 'He's Clearly Not Understanding the Questions'*, The Latin Times (July 25, 2025, 10:36 AM), https://www.latintimes.com/ice-arrests-migrant-deemed-mentally-impaired-judge-he-exits-immigration-court-hes-clearly-not-587576; Jordan Salama, *When ICE Agents Are Waiting Outside the Courtroom*, The New Yorker (July 25, 2025), https://www.newyorker.com/news/the-lede/when-ice-agents-are-waiting-outside-the-courtroom; Eileen Markey, *Punished for Playing by the Rules: The Deliberate Cruelty of Trump's Deportation Regime*, The Nation (July 24, 2025), https://www.thenation.com/article/society/ice-trump-detention-regime-cruelty/; Dean Moses, *ICE in Court: Feds Snatch More Immigrants as Lander, Williams Demand Safety Inspection of Detainment Center*, AMNY (July 23, 2025), https://www.amny.com/politics/ice-immgirants-court-lander-williams-07232025/ (hereinafter, "Mose re: ICE in Court"); Danielle James, *ICE Arrests at Check-Ins, Court Hearings Are on the Rise. Michigan Is No Exception*, MLIVE (July 21, 2025, 7:10 AM), https://www.mlive.com/politics/2025/07/ice-arrests-at-check-ins-court-hearings-are-on-the-rise-michigan-is-no-exception.html; Margaret Kadifa, *ICE Agents Keep Snatching Asylum Seekers Immediately After Their Court Hearings*, Mother Jones (July 21, 2025), https://www.motherjones.com/politics/2025/07/ice-agents-arrest-asylum-seekers-after-court-hearings-san-francisco/ (hereinafter, "Kadifa re: ICE Snatching"); Esmeralda Perez, *San Diego Immigration Attorney Weighs in on Lawsuit Challenging ICE Courthouse Arrests*, CBS8 (July 20, 2025, 10:19 PM), https://www.cbs8.com/article/news/local/san-diego-attorney-weighs-in-on-lawsuit-challenging-ice-

courthouse-arrests/509-79fec519-eb00-442c-b479-4522f423be7c; Martha Bellisile et al., *Volunteers Flock to Immigration Courts to Support Migrants Arrested in the Hallways*, ABC News (July 20, 2025, 8:38 AM), https://abcnews.go.com/US/wireStory/volunteers-flock-immigration-courts-support-migrants-arrested-hallways-123902561 (hereinafter "Bellisile et al. re: Volunteers Flock to Immigration Courts"); Eduardo Cuevas, *'Escalation:' Federal Agents Now Detaining People with Active Immigration Cases*, USA Today (July 18, 2025, 11:26 AM), https://www.usatoday.com/story/news/nation/2025/07/18/migrants-immigration-court-trump-crackdown/84614161007/; Mark Rivera et al., *ICE Arrests at Immigration Court in Chicago, Nationwide Labeled 'Unlawful' in New Lawsuit*, ABC 7 Chicago (July 18, 2025, 8:36 PM), https://abc7chicago.com/post/us-immigration-news-ice-arrests-courts-chicago-nationwide-labeled-unlawful-new-lawsuit-trump-administration/17186490/; Jeff Abbot, *Texas Based Immigration Advocacy Group Sues Trump Administration Over Courthouse Arrests*, El Paso Times (July 18, 2025, 5:02 AM), https://www.elpasotimes.com/story/news/immigration/2025/07/18/texas-immigration-advocacy-group-challenges-ices-courthouse-arrests/85255298007/; Emily Belz, *In Immigration Court, Christians Show Up to Fill the Back Benches*, Christianity Today (July 18, 2025), https://www.christianitytoday.com/2025/07/immigration-court-observation-ice-arrests/; David Baratz, *See How ICE Targets Immigrants Appearing at Routine Court Hearings*, USA Today (July 17, 2025, 3:15 PM), https://www.usatoday.com/picture-gallery/news/nation/2025/07/17/how-ice-targets-immigrants-at-court-hearings-photos/85259555007/; Martha Bellisile, *Homeland Security Officials Defend Immigration Court Arrests After Being Sued*, Associated Press (July 17, 2025, 2:04 PM), https://apnews.com/article/ice-immigration-court-immigrants-a5190ada4a6019f84d76e62c11c44e30; Swasti Singhai, *Five Days, 12 Arrests: A Week Inside San Diego Immigration Court*, Times of San Diego (July 17, 2025, 7:41 AM), https://timesofsandiego.com/politics/2025/07/17/arrests-immigration-court-trump-anxiety-chaos/ (hereinafter, "Singhai re: Week at San Diego Immigration Court"); Devan Cole et al., *Trump Administration Sued Over ICE Arrests at Immigration Courthouses*, CNN (July 16, 2025, 6:23 PM), https://www.cnn.com/2025/07/16/politics/ice-immigration-courthouse-arrests-lawsuit; Luis Ferré-Sadurní, *Immigrants File Class-Action Lawsuit to Stop ICE Courthouse Arrests*, NY Times (July 16, 2025), https://www.nytimes.com/2025/07/16/nyregion/trump-ice-arrests-lawsuit-immigrants.html (hereinafter, "Ferré-Sadurní re: Lawsuit"); Maxine Bernstein, *Federal Judge in Oregon: Homeland Security 'Tricked' Asylum Seeker Before Arrest at Immigration Court*, The Oregonian (July 15, 2025, 10:47 AM), https://www.oregonlive.com/pacific-northwest-news/2025/07/federal-judge-in-oregon-homeland-security-tricked-asylum-seeker-before-arrest-at-immigration-court.html; Sarah Thamer, *Advocates Denounce ICE Arrests at Fort Snelling Immigration Court*, MPR News (July 15, 2025, 4:00 AM), https://www.mprnews.org/story/2025/07/15/advocates-protest-ice-arrests-at-immigration-court; Alex Baumhardt, *Asylum Seeker Taken by ICE Outside Portland Immigration Court to Be Immediately Released*, Oregon Capital Chronicle (July 14, 2025, 5:24 PM), https://oregoncapitalchronicle.com/2025/07/14/asylum-seeker-taken-by-ice-outside-portland-immigration-court-to-be-immediately-released/; Ciara Encinas, *Volunteers Describe How They Document ICE Arrests in Immigration Courts*, Fox 5 (July 11, 2025, 4:55 PM), https://fox5sandiego.com/news/local-news/san-diego/san-diego-court-ice-arrests/; Gerardo Zavala, *ICE Arrests Asylum Seeker After Sacramento Court Hearing*, CAPRADIO (July 11, 2025), https://www.capradio.org/articles/2025/07/11/ice-arrests-asylum-seeker-after-sacramento-court-hearing/; Paige Browning & John O'Brien, *Fears of Arrests Cause Tension at Seattle Immigration Court*, KUOW (July 10, 2025, 5:58 PM), https://www.kuow.org/stories/fears-of-ice-arrests-cause-tension-at-seattle-immigration-court; Margaret Kadifa, *ICE Arrests 4 People After Immigration Court Hearings in San Francisco*, Mission Local (July 10, 2025, 12:08 PM), https://missionlocal.org/2025/07/ice-arrests-four-people-after-they-appear-in-immigration-court/ (hereinafter, "Kadifa re: 4 Arrests"); *What Goes On in America's Immigration Courts*, Economist (July 10, 2025), https://www.economist.com/united-states/2025/07/10/what-goes-on-in-americas-immigration-courts (hereinafter "Economist"); Francesca Regalado & Soumya Karlamangla, *Tensions Escalate in San Francisco over Immigration Enforcement*, NY Times (July 9, 2025), https://www.nytimes.com/2025/07/09/us/ice-immigration-protest-san-francisco.html; John Ramos, *Peruvian Women Detained by ICE in San Francisco Freed After Judge's Ruling*, CBS News (July 8, 2025, 6:35 PM), https://www.cbsnews.com/sanfrancisco/news/san-francisco-ice-woman-freed-immigration-court/; Tom Li & Ko Lyn Cheang, *Video: Protestors Cling to Departing ICE Van After Arrest at S.F. Immigration Court*, San Francisco Chronicle (July 8, 2025, 5:34 PM),

https://www.sfchronicle.com/sf/article/protesters-cling-ice-van-chaos-immigration-court-20761721.php; Henry Rosoff, *ICE Escalates Immigration Court Arrests Outside NYC Court*, PIX11 (July 8, 2025, 5:18 PM), https://pix11.com/news/local-news/manhattan/ice-escalates-immigration-arrests-outside-nyc-court/; Sabrina Tavernise, *Against Illegal Immigration, but Married to Someone Here Illegally*, NY Times (July 8, 2025), https://www.nytimes.com/2025/07/08/us/trump-illegal-immigration-raids-arkansas.html; Nisa Khan, *When ICE Is Waiting at Immigration Court, What Can Advocates Do?*, KQED (July 7, 2025), https://www.kqed.org/news/12047018/how-legal-experts-advocates-are-responding-to-the-detention-of-asylum-seekers; Emma Seiwell, *ICE Opposition Grows, With Lawmakers, Attorneys Decrying Courthouse Arrests as a Violation of Due Process*, NY Daily News (July 5, 2025, 6:00 AM), https://www.nydailynews.com/2025/07/05/ice-opposition-grows-with-lawmakers-attorneys-decrying-courthouse-arrests-a-violation-of-due-process/ (hereinafter "Seiwell re: ICE Opposition Grows"); Jenna DeAngelis, *NYC Officials Lead "ICE Watch And Accompaniment" Effort at Federal Immigration Court. Here's What It Means*, CBS News (July 3, 2025, 6:59 PM), https://www.cbsnews.com/newyork/news/nyc-ice-watch-federal-immigration-court/; Jim Vertuno, *Honduran Family Freed From Detention After Lawsuit Against ICE Courthouse Arrests*, Associated Press (July 3, 2025, 6:14 PM), https://apnews.com/article/ice-family-children-lawsuit-release-ef8d764aebec8ba1b67bafc9080a563d; Swasti Singhai, *San Diego Volunteers Bear Witness Daily as ICE Continues Courtroom Arrests*, Times of San Diego (July 3, 2025, 3:41 PM), https://timesofsandiego.com/life/2025/07/03/san-diego-community-bears-witness-as-ice-continues-courtroom-arrests/ (hereinafter "Singhai re: Volunteers"); Emma Seiwell, *ICE Agents Now Snatching Migrants With Open Court Cases; NY Officials, Lawyers Say It's 'Utterly Unlawful'*, NY Daily News (July 3, 2025, 6:50 AM), https://www.nydailynews.com/2025/07/02/ice-agents-now-snatching-migrants-with-open-court-cases-nyc-officials-lawyers-say-its-utterly-unlawful/ (hereinafter "Seiwell re: ICE Snatching"); Shelby Bremer, *Lawsuit Over San Diego Immigration Court Arrest May Give Insight Into ICE Practices*, NBC San Diego (July 2, 2025, 6:01 PM), https://www.nbcsandiego.com/news/local/san-diego-lawsuit-ice-courthouse-arrests/3861107/; Melissa Gomez, *Faith Leaders Bear Witness as Migrants Make Their Case in Immigration Court*, Los Angeles Times (July 2, 2025, 3:00 AM), https://www.latimes.com/california/story/2025-07-02/faith-leaders-bear-witness-as-migrants-make-their-case-immigration-court (hereinafter, "Gomez re: Faith Leaders"); Madeleine May & Hannah Marr, *Afghan Ally Detained by ICE After Attending Immigration Court Hearing*, CBS News (July 1, 2025, 1:48 PM), https://www.cbsnews.com/news/afghan-ally-detained-by-ice-immigration-court/; Margaret Kadifa, *For One S.F. Asylum Seeker, ICE Arrest Meant Move to More Conservative Judge*, Mission Local (July 1, 2025, 4:00 AM), https://missionlocal.org/2025/07/sf-asylum-seeker-immigration-judge-ice-arrest/ (hereinafter "Kadifa re: Forum Shopping"); Dean Moses, *ICE Raids Continue in Lower Manhattan Court as Immigrant Advocates Rail Against 'Trump's Personal Army'*, AMNY (July 1, 2025), https://www.amny.com/news/ice-raids-lower-manhattan-court-trump-07012025/ (hereinafter, "Moses: re: ICE Raids"); Natali Yahr, *Wisconsin Asylum Seeker Miguel Robles Detained in Unprecedent Wave of Courthouse Arrests*, Racine County Eye (July 1, 2025), https://racinecountyeye.com/2025/06/30/miguel-robles-immigration-asylum/; Gwynne Hogan, *He Fled Death Threats for Being Gay, Applied for Asylum and Married a U.S. Citizen. ICE Arrested Him Anyway*, The City (June 30, 2025, 1:41 PM), https://www.thecity.nyc/2025/06/27/ice-arrested-asylum-gay/ (hereinafter "Hogan re: Mamadou Arrest"); Ko Lyn Cheang, *S.F. Drag Performer Detained by ICE After Asylum Hearing*, San Francisco Chronicle (June 28, 2025), https://www.sfchronicle.com/sf/article/drag-performer-detained-ice-20399122.php; Anna-Cat Brigida, *A Legal Trap? Why the Trump Administration is Targeting Immigration Courts for Arrests*, Al Jazeera (June 27, 2025), https://www.aljazeera.com/news/longform/2025/6/27/why-the-trump-administration-is-targeting-immigration-courts-for-arrests; Julia Marnin, *6-Year-Old Boy with Leukemia Arrested by ICE is Now Detained in Texas, Suit Says*, Fort Worth Star-Telegram (June 26, 2025, 3:23 PM), https://www.star-telegram.com/news/state/texas/article309472695.html; Dan Katz, *ICE Arrested a 6-Year-Old Boy with Leukemia at Immigration Court. His Family is Suing*, Texas Public Radio (June 25, 2025, 11:06 PM), https://www.tpr.org/border-immigration/2025-06-25/ice-arrested-a-6-year-old-boy-with-leukemia-at-immigration-court-his-family-is-suing; Junyao Yang, *Tracking Every ICE Action in San Francisco So Far*, Mission Local (June 25, 2025, 11:30 AM), https://missionlocal.org/2025/06/sf-ice-arrests-tracker/; Luis Ferré-Sadurní, *They Had Come to Graduate. Their Minds Were on a Student Held by ICE*, NY Times (June 25, 2025),

https://www.nytimes.com/2025/06/25/nyregion/immigrant-students-graduation-ice.html; Nina Shapiro, *As Pushback Grows to WA Immigration Court Arrests, ICE Changes Tactics*, The Seattle Times (June 24, 2025, 6:00 AM), https://www.seattletimes.com/seattle-news/as-pushback-grows-to-wa-immigration-court-arrests-ice-changes-tactics/ (hereinafter "Shapiro re: ICE Tactic Change"); Kate Morrissey, *Here's What's Happening to the People ICE Arrests in Immigration Court*, Capital & Main (June 24, 2025), https://capitalandmain.com/heres-whats-happening-to-the-people-ice-arrests-in-immigration-court; Elizabeth L.T. Moore & Elizabeth Zavala, *Obscure San Antonion Court Becomes Flashpoint in Immigration Debate*, San Antonio Express-News (June 23, 2025), https://www.expressnews.com/news/article/obscure-san-antonio-immigration-court-spotlight-20381608.php; Ray Sanchez & Allsha Ebrahimji, *Masked Ice Officers: The New Calling Card of The Trump Administration's Crackdown*, CNN (June 21, 2025), https://www.cnn.com/us/ice-immigration-officers-face-masks; Ken Stone, *ICE Agents Scatter As SD Bishop Pham, Other Clergy Visit Immigration Court,* Times of San Diego (June 20, 2025, 3:04 PM), https://timesofsandiego.com/life/2025/06/20/ice-agents-scatter-as-sd-bishop-pham-other-clergy-visit-immigration-court/; Luis Ferré-Sadurní, *Brad Lander Tried to Escort Immigrants facing Arrest. He's Not Alone* , NY Times (June 19, 2025), https://www.nytimes.com/2025/06/19/nyregion/ice-immigrants-volunteer-escorts-courthouse.html (hereinafter "Ferré-Sadurní re: Lander Escort"); Luis Ferré-Sadurní, *Brad Lander is Arrested by ICE Agents at Immigration Courthouse,* NY Times (June 17, 2025), https://www.nytimes.com/2025/06/17/nyregion/brad-lander-immigration-ice.html (hereinafter "Ferré-Sadurní re: Lander Arrest"); https://www.krgv.com/news/ice-detains-three-people-outside-harlingen-immigration-court/; Lily Celeste, *ICE Detains Three People Attending Their Immigration Hearings in Harlingen,* KRGV.Com (June 15, 2025, 6:40 PM), https://www.krgv.com/news/ice-detains-three-people-outside-harlingen-immigration-court/; Stephen Hobbs, *In Sacramento's Immigration Court, ICE Detention Threats Leave Residents in Limbo,* The Sacramento Bee (June 14, 2025, 10:05 AM), https://www.sacbee.com/news/politics-government/capitol-alert/article308346910.html (hereinafter "Hobbs re: Sacramento Immigr. Ct. Arrests"); David Manoucheri, *ICE Agents Wait at Immigration Court in Sacramento for 2d Consecutive Day, Take Someone Into Custody*, KCRA3 (June 12, 2025, 2:53 PM), https://www.kcra.com/article/ice-agents-immigration-court-sacramento-custody/65049263; Ryan Oehrli, *'Rigged'? ICE Agents Are Arresting People at Charlotte's Immigration Court,* The Charlotte Observer (June 12, 2025, 11:31 AM), https://www.charlotteobserver.com/news/local/crime/article308209165.html; Thomas Lyons, *Mood is Tense at Concord Immigration Court Following ICE Arrests*, Berkleyside (June 12, 2025, 9:55 AM), https://www.berkeleyside.org/2025/06/12/concord-immigration-court-tension-after-ice-arrests; Ida Domingo, *ICE Arrests 10 at Sterling, Virginia Immigration Court During Enforcement Operation*, ABC 7 News (June 12, 2025, 6:13 AM), https://wjla.com/news/local/ice-arrests-10-people-sterling-virginia-immigration-court-agents-detain-enforcement-deportation-salvadoran-venezuelan-peruvian-noncitizens-operation-fairfax-county-courtroom-photos-video-homeland-security-trump-adminstration-illegal; Armando Garcia, *Immigrant Rights Group Say ICE Officers 'Ambush Noncitizens' in Courthouse Arrests, Ask Judge to Intervene,* ABC News (June 12, 2025, 10:32 AM), https://abcnews.go.com/US/immigrant-rights-groups-ice-officers-ambush-noncitizens-courthouse/story?id=122770040; Ximena Bustillo, *ICE's Novel Strategy Allows for More Arrests from Inside Immigration Courts*, NPR (June 12, 2025, 5:02 AM), https://www.npr.org/2025/06/12/nx-s1-5409403/trump-immigration-courts-arrests; *ICE Arrests People at the Annandale Immigration Court*, Annandale Today (June 12, 2025), https://annandaletoday/ice-arrests-people-at-the-annandale-immigration-court/; Hanna Pampaloni, *ICE Makes Arrests at Sterling Immigration Court,* Loudoun Now (June 12, 2025), https://www.loudounnow.com/news/ice-makes-arrests-at-sterling-immigration-court/article_f8f7118c-aca1-4a8d-ad6e-99826fa77eb6.html; Luis Ferré-Sadurní, *Inside a Courthouse, Chaos and Tears as Trump Accelerates Deportations*, NY Times (June 12, 2025), https://www.nytimes.com/2025/06/12/nyregion/immigration-courthouse-arrests-trump-deportation.html (hereinafter "Ferré-Sadurní re: Inside NYC Immigr. Cts."); Carolina Estrada, *Two Men Detained by ICE After Sacramento Immigration Court Hearings*, KCRA3 (June 11, 2025, 11:13 PM), https://www.kcra.com/article/two-men-detained-by-ice-sacramento-immigration-hearings/65041264 (hereinafter, "Estrada re: Two Arrests"); Stephen Hobbs, *Two Men Handcuffed at Sacramento Immigration Court, Taken to ICE Office*, The Sacramento Bee (June 11, 2025, 6:09 PM), https://www.sacbee.com/news/politics-government/capitol-alert/article308401280.html; Martha Bellisile et al., *Immigration Officers Intensify Arrests in Courthouse Hallways on a Fast Track to Deportation*, Associated Press (June

6

11, 2025, 4:17 PM), https://apnews.com/article/immigration-court-arrests-ice-deportation-99d822cdc93ae7dc26026c27895d5ea1 (hereinafter "Bellisile et al. re: Immigration Officers Intensify Arrests"); Brittany Taylor et al., *Second Day of Arrests by ICE Agents at Immigration Court in Southwest Houston*, Click 2 Houston.com (June 11, 2025, 10:25 AM), https://www.click2houston.com/news/local/2025/06/11/ice-agents-stationed-outside-immigration-court-in-houstons-greenspoint-area/; Hamed Aleaziz, *Under Pressure From the White House, ICE Seeks New Ways to Ramp Up Arrests*, NY Times (June 11, 2025), https://www.nytimes.com/2025/06/11/us/politics/ice-la-protest-arrests.html; Priscilla Alvarez, *ICE Protest Nationwide Comes As Agency Scrambles to Meet Trump's Immigration Arrest Quotas*, CNN (June 10, 2025, 10:16 PM), https://www.cnn.com/2025/06/10/politics/ice-scrambles-immigration-arrest-quotas; Conrad Wilson, *ICE Arrests 2 More Asylum Seekers at Immigration Court in Portland*, OPB (June 10, 2025, 5:12 PM), https://www.opb.org/article/2025/06/10/ice-arrests-2-more-asylum-seekers-at-immigration-court-in-portland/ (hereinafter, "Wilson re: Two Arrests"); Margaret Kadifa et al., *S.F. Immigration Court Shuts Down After ICE Protests, Arrests*, Mission Local (June 10, 2025, 12:43 PM), https://missionlocal.org/2025/06/video-ice-agents-arrest-people-outside-s-f-courthouse; Ninfa Saavedra & Robert Arnold, *ICE Arrests Multiple People at Houston's Immigration Court*, Click2Houston.com (June 10, 2025, 2:48 PM), https://www.click2houston.com/news/local/2025/06/10/ice-arrests-reportedly-underway-at-houstons-immigration-court/; Natalie Weber, *ICE Detains Multiple Men at Houston Immigration Courthouse, Civil Rights Organization Says*, Houston Public Media (June 10, 2025, 11:58 AM), https://www.houstonpublicmedia.org/articles/news/politics/immigration/2025/06/10/523600/ice-detains-multiple-men-at-houston-immigration-courthouse/; Giulia McDonnell Nieto del Rio, *This Is What An ICE Arrest in Boston Immigration Court Looks Like*, Boston Globe (June 9, 2025, 6:31 AM), https://www.bostonglobe.com/2025/06/09/metro/ice-arrests-at-boston-immigration-court/ (hereinafter, "Nieto del Rio re: Inside Boston Immigr. Ct. Arrest"; Audrey Conklin & Bill Melugin, *Trump's ICE Launches Bold Courthouse Migrant Arrest Strategy to Fast-Track Deportations Biden Avoided,* Fox News (June 9, 2025, 4:00 AM), https://www.foxnews.com/us/trumps-ice-launches-bold-courthouse-migrant-arrest-strategy-fast-track-deportations-biden-avoided?msockid=1cd283b1756f61231883976574c46057; Conrad Wilson, *ICE Detains Another Asylum-Seeker Outside Portland Courtroom, Legal Petition Says*, OPB (June 6, 2025, 9:30 AM), https://www.opb.org/article/2025/06/06/asylum-arrest-portland-yzlh/ (hereinafter "Wilson re: Arrest"); Michael Elsen-Rooney, *Their Student Was Detained by ICE. Now this Bronx School is Rallying to Get Him* Back, Chalkbeat New York (June 5, 2025, 7:33pm), https://www.chalkbeat.org/newyork/2025/06/05/nyc-student-detained-by-ice-supported-by-ellis-prep-bronx-school-community/; Bennett Haeberle, *In Chicago & Elsewhere, ICE Increases Enforcement in Immigration* Court, 5 Chicago (June 5, 2025, 5:54 PM), https://www.nbcchicago.com/investigations/in-chicago-and-elsewhere-ice-increases-enforcement-in-immigration-court/3761730/; Megan Ulu-Lani Boyanton, *At Least Eight People Detained at Denver Immigration Court as ICE Presence Increases, Advocates Say*, The Denver Post (June 5, 2025, 5:04 PM), https://www.denverpost.com/2025/06/05/denver-immigration-court-arrests-ice-trump-advocates/; Amy Larson, *Newlywed Couple Separated at Immigration Courthouse by ICE*, The Hill (June 5, 2025, 1:14 PM), https://thehill.com/homenews/state-watch/5334753-immigration-courthouse-ice-trump-dhs/; Laura Romero et al., *In a New Tactic, ICE Is Arresting Migrants at Immigration Courts, Attorneys Say*, ABC News (June 4, 2025, 6:37 PM), https://abcnews.go.com/US/new-tactic-ice-arresting-migrants-immigration-courts-attorneys/story?id=122513021; Julie Carey, *Cancel, Arrest, Deport: Immigration Lawyer Warns of Emerging ICE Tactic*, NBC Washington (June 4, 2025, 3:01 PM), https://www.nbcwashington.com/news/local/cancel-arrest-deport-immigration-lawyer-warns-of-emerging-ice-tactic/3927509/; Brad Schmidt, *Immigration Arrest at Courthouse Marks First for Portland*, The Oregonian (June 3, 2025, 3:22 PM), https://www.oregonlive.com/politics/2025/06/immigration-arrest-at-courthouse-marks-first-for-portland.html; Stephen Franklin & Katema Hosseini, *ICE Target Noncitizens As Cases Dismissed in Immigration Court in Chicago*, Borderless (June 3, 2025), https://borderlessmag.org/2025/06/03/ice-arrests-chicago-immigration-court-trump-detention-immigration-custom-enforcement/; Conrad Wilson, *ICE Detains Asylum Seeker Outside Portland Immigration Court, Lawyers Say*, OPB (June 2, 2025, 11:01 PM), https://www.opb.org/article/2025/06/02/ice-immigration-enforcement-detains-asylum-seeker-portland-court/ (hereinafter, "Wilson re: Initial Arrest"); Angélica Franganillo Díaz & Priscilla Alvarez, *ICE Targets Migrants for Arrest at

*Courthouses as Trump Administration Intensifies Deportation Push*, CNN (June 2, 2025, 5:00 AM), https://www.cnn.com/2025/06/02/politics/ice-arrests-migrants-courthouse; Shelly Bradbury, *Feds Detain Immigrant Family at Denver Courthouse Amid New Trump Strategy*, Denver Post (May 30, 2025, 3:32 PM), https://www.denverpost.com/2025/05/30/denver-immigration-arrest-courthouse-ice-trump/; Giulia McDonnell Nieto del Rio, *ICE Arrests at Massachusetts Immigration Courts Target Immigrants Seeking Permission to Stay in US*, Boston Globe (May 30, 2025, 1:39PM), https://www.bostonglobe.com/2025/05/27/metro/immigration-courts-ice-arrests-massachusetts (hereinafter, "Nieto del Rio re: Boston Immigr. Ct. Arrests"); Suzanne Gamboa, *Immigration Arrests in Courthouses Have Become the New Deportation Tool, Stripping Migrants of a Legal Process,* NBC News (May 30, 2025, 5:00 AM), https://www.nbcnews.com/news/latino/immigrations-arrests-ice-deportations-courthouse-legal-process-ice-rcna209671; Hamed Aleaziz et al., *How ICE is Seeking to Ramp Up Deportations Through Courthouse Arrests*, NY Times (May 30, 2025), https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html; Carolina Estrada, *'This is Very Concerning': 3 Arrested While Attending Hearings at Immigration Court in Sacramento, Groups Say*, KCRA3 (May 29, 2025, 1:37 PM), https://www.kcra.com/article/sacramento-immigration-court-arrests-ice/64920625; Allison Sherry, *Signaling a Policy Shift, ICE Detains a Family Who Showed Up at Denver Immigration Court for a Check-In*, CPR News (May 29, 2025, 1:35 PM), https://www.cpr.org/2025/05/29/ice-detains-family-denver-immigration-court/; Daniel Gonzalez & Richard Ruelas, *After Short Break, ICE Resumes Arrests at Phoenix Immigration Court, Changes Keep Tactic*, AZ Central (May 29, 2025, 5:01 AM), https://www.azcentral.com/story/news/politics/immigration/2025/05/29/phoenix-immigration-court-ice-arrests-resume/83767918007/; Gwynne Hogan, *Migrants, Protestors, and a Pastor Arrested Inside and Outside Manhattan Immigration Courthouses,* The City (May 28, 2025, 3:16 PM), https://www.thecity.nyc/2025/05/28/ice-arrests-migrants-26-federal-plaza-pastor/; (hereinafter, "Hogan re: NYC Immigr. Ct. Arrests"); Olivia Hebert, *ICE Stormed SF Court to Arrest 4 Asylum Seekers, Denounced as Unlawful*, SF Gate (May 28, 2025), https://www.sfgate.com/bayarea/article/asylum-seekers-arrested-ice-san-francisco-20349387.php;  Tomoki Chien, *Undercover ICE Agents Begin Making Arrests at SF Immigration Court*, The San Francisco Standard (May 27, 2025, 5:32 PM), https://sfstandard.com/2025/05/27/undercover-ice-agents-make-arrests-san-francisco-court/; Luis Ferré-Sadurní & Dana Rubinstein, *ICE, Shifting Tactics, Detains High School Student at N.Y.C. Courthouse*, NY Times (May 27, 2025), https://www.nytimes.com/2025/05/27/nyregion/new-york-student-arrested-ice.html; Michael Elsen-Rooney, *A Bronx High Schooler Showed Up for a Routine Immigration Court Date. ICE Was Waiting*, Chalkbeat New York (May 26, 2025, 8:35 pm), https://www.chalkbeat.org/newyork/2025/05/27/bronx-high-school-student-detained-by-immigration-ice-agents/?ref=hellgatenyc.com; Milena Malaver et al., *ICE Agents in Miami Find New Spot to Carry Out Arrests: Immigration Court,* Miami Herald (May 26, 2025, 1:27 PM), https://www.miamiherald.com/news/local/immigration/article306900486.html; Melissa Gomez, *Father Ripped from Family as Agents Target Immigration Courts, Arresting People After Cases Dismissed*, LA Times (May 24, 2025, 10:00AM), https://www.latimes.com/california/story/2025-05-24/ice-agents-swarm-immigration-courts-arresting-people-after-cases-dismissed (hereinafter, "Gomez re: Immigr. Ct. Arrests"); Tyche Hendricks, *'Unprecedented': ICE Officers Operating Inside Bay Area Immigration Courts, Lawyers Say*, KQED (May 24, 2025), https://www.kqed.org/news/12041473/unprecedented-ice-officers-operating-inside-bay-area-immigration-courts-lawyers-say; Ted Hesson & Kristina Cooke, *ICE Arrests Migrants at Courthouses, Opens Door to Fast-Track Deportations,* Reuters (May 23, 2025, 4:35PM), https://www.reuters.com/world/us/ice-arrests-migrants-courthouses-opens-door-fast-track-deportations-2025-05-23/; Camilo Montoya-Galvez & Nidia Cavazos, *ICE Ending Migrants' Court Cases In Order to Arrest and Move to Deport Them*, CBS News (May 23, 2025, 9:53 AM), https://www.cbsnews.com/news/ice-ending-migrants-court-cases-arrest-move-to-deport-them/; Arelis R. Hernández & Maria Sacchetti, *Immigrant Arrests at Courthouses Signal New Tactic in Trump's Deportation Push*, Washington Post (May 23, 2025), https://www.washingtonpost.com/immigration/2025/05/23/immigration-court-arrests-ice-trump/; Gustavo Solis, *ICE Agents Swarm San Diego Immigration Court, Arresting People After Their Hearings*, KPBS (May 22, 2025, 5:45PM), https://www.kpbs.org/news/border-immigration/2025/05/22/ice-agents-swarm-san-diego-immigration-court-arresting-people-after-their-hearings; Trevor Hughes, *ICE Agents Deploy New Tactic: Arresting People As They Leave Mandatory Court Hearings*, USA Today (May 22, 2025, 1:13 PM), https://www.usatoday.com/story/news/nation/2025/05/22/ice-arrests-immigration-court-deportation-

Much of the coverage express doubts about the integrity of ICE arrests at immigration courts, describing them as a due process violation and/or a tactic to increase deportations, forum shop, and scare noncitizens into giving up on their immigration cases.[5] Some coverage alludes to

tactics/83792357007/; Joshua Goodman et al., *They Came to Hearing at Chicago's Immigration Court, Then Got Arrested*, Chicago Sun-Times (May 22, 2025, 3:59PM), https://chicago.suntimes.com/immigration/2025/05/22/ice-agents-hallways-immigration-court-trump-mass-arrest; Anders Hagstrom & Bill Melugin, *ICE Beings New, Nationwide Effort to Arrest Illegal Aliens at Immigration Hearings* (May 22, 2025, 1:07 PM), https://www.foxnews.com/politics/ice-begins-new-nationwide-effort-arrest-illegal-aliens-immigration-hearings; Joshua Goodman & Gisela Salomon, *ICE Agents Wait in Hallways of Immigration Court as Trump Seeks to Deliver on Mass Arrest Pledge*, Associated Press (May 22, 2025, 1:30 AM), https://apnews.com/article/immigration-courts-arrests-trump-ice-deportations-fa96435d4ec021cc8ff636b23d80d848; J. Dale Shoemaker, *ICE Raids Immigration Court in Buffalo*, Investigative Post (May 22, 2025), https://www.investigativepost.com/2025/05/22/ice-raids-immigration-court-in-buffalo/; Raphael Romero Ruiz *et al.*, *For 2nd Day, People Attending Phoenix Immigration Hearings Arrested by ICE*, USA Today (May 21, 2025, 11:42 PM), https://www.usatoday.com/story/news/politics/immigration/2025/05/21/ice-arrests-phoenix-immigration-court/83772323007/?gnt-cfr=1&gca-cat=p; Gustavo Sagrero Álvarez, *ICE Agents at Seattle Courthouse Arrest People Whose Deportation Hearings are Dismissed*, KUOW (May 21, 5:45 PM), https://www.kuow.org/stories/ice-agents-at-seattle-courthouse-arrest-people-whose-deportation-hearings-are-dismissed; Akela Lacy et al. *ICE Agents Are Camped Outside Immigration Courts to Make Arrests*, The Intercept (May 21, 2025, 3:27 PM), https://theintercept.com/2025/05/21/ice-agents-courts-arrests-immigrants-deport/; Paul Ingram, *'Mayhem' As ICE Officials Arrest Multiple People at Immigration Court in Phoenix*, AZ Mirror (May 21, 2025, 11:12 AM), https://azmirror.com/2025/05/21/mayhem-as-ice-officials-arrest-multiple-people-at-immigration-court-in-phoenix/; Nina Shapiro, *ICE Arrests at WA Immigration Court Spark Fear of Fast-Track Removal*, Seattle Times (May 21, 2025, 6:00 AM), https://www.seattletimes.com/seattle-news/law-justice/ice-arrests-at-wa-immigration-court-spark-fear-of-fast-track-removal/ (hereinafter, "Shapiro re: ICE Arrests"); Raphael Romero Ruiz & Richard Ruelas, *They Showed Up to Immigration Court in Phoenix. Then Agents Surrounded Them*, USA Today (May 20, 2025), https://www.usatoday.com/story/news/politics/immigration/2025/05/20/prosecutors-drop-charges-vs-migrants-as-border-agents-wait-outside/83756994007/?gnt-cfr=1&gca-cat=p

[5] Kadifa re: Adult Arrests, *supra* n. 4; Salama, *supra* n. 4; Markey, *supra* n. 4; Mose re: ICE in Court; James, *supra* n. 4; Bellisile et al. re: Volunteers Flock to Immigration Courts, *supra* n. 4; Bellisile, *supra* n. 4; Cole et al., *supra* n. 4; Ferré-Sadurní re: Lawsuit, *supra* n. 4; Rivera et al., *supra* n. 4; Cuevas, *supra* n. 4; Abbot, *supra* n. 4; Bernstein, *supra* n. 4; Thamer, *supra* n. 4; Browning & O'Brien, *supra* n. 4; Economist, *supra* n. 4; Ramos, *supra* n. 4; Li & Cheang, *supra* n. 4; Tavernise, *supra* n. 4; Khan, *supra* n. 4; DeAngelis, *supra* n. 4; Seiwell re: ICE Opposition Grows, *supra* n. 4; Singhai re: Volunteers, *supra* n. 4; Kadifa re: Forum Shopping, *supra* n. 4; Moses re: ICE Raids, *supra* n. 4; Yahr, *supra* n. 4; Hogan re: Mamadou Arrest, *supra* n. 4; Cheang, *supra* n. 4; Brigida, *supra* n. 4; Katz, *supra* n. 4; Morrissey, *supra* n. 4; Moore & Zavala, *supra* n. 4; Hobbs re: Sacramento Immigr. Ct. Arrests, *supra* n. 4; Lyons, *supra* n. 4; Oehrli, *supra* n. 4; Bustillo, *supra* n. 4; Bellisile et al. re: Immigration Officers Intensify Arrests, *supra* n. 4; Wilson re: Two Arrests, *supra* n. 4; Kadifa et al., *supra* n. 4; Nieto del Rio re: Inside Boston Immigr. Ct. Arrest, *supra* n. 4; Conklin & Melugin, *supra* n. 4; Wilson re: Arrest, *supra* n.14; Romero et al., *supra* n.14; Carey, *supra* n. 4; Franklin & Hosseini, *supra* n. 4; Bradbury, *supra* n. 4; Nieto del Rio re: Boston Immigr. Ct. Arrests, *supra* n. 4; Gamboa, *supra* n. 4; Aleaziz et al., *supra* n. 4; Gonzalez & Ruelas, *supra* n. 4; Hebert, *supra* n. 4; Chien, *supra* n. 4; Elsen-Rooney re: Dylan Arrest, *supra* n. 4; Malaver et al., *supra* n. 4; Gomez re: Immigr. Ct. Arrests, *supra* n. 4; Hernández & Sacchetti, *supra* n. 4; Solis, *supra* n. 4; Hughes, *supra* n. 4; Goodman et al., *supra* n. 4; Goodman & Salomon, *supra* n. 4; Shoemaker, *supra* n. 4; Ruiz et al., *supra* n. 4; Álvarez, *supra* n. 4; Lacy et al., *supra* n. 4; Ingram, *supra* n. 4; Shapiro re: ICE Arrests, *supra* n. 4; Seiwell re: ICE Snatching, *supra* n. 4; Hendricks, *supra* n. 4; Schmidt, *supra* n. 4.

possible coordination between EOIR and ICE in making these arrests.[6] Several editorials also decry the arrests as a "set up" and for disregarding due process.[7]

Similarly, eighty-five articles in state, local, and nationwide media outlets have discussed ICE asking immigration judges to dismiss noncitizens' immigration cases so it can pursue these noncitizens' expedited removal.[8] Immigration attorneys also report ICE officials serving pre-signed dismissals based on "non-opposition" to noncitizen respondents at immigration courts without respondents not having notice of ICE's motion to dismiss their immigration case and an opportunity to oppose it. Much of the coverage on these dismissals casts doubt on their integrity,

---

[6] Ferré-Sadurní re: Lawsuit, *supra* n. 4; Bernstein, *supra* n. 4; Khan, *supra* n. 4; Yahr, *supra* n. 4; Aleaziz, *supra* n. 4; Conklin & Melugin, *supra* n. 4; Aleaziz et al., *supra* n. 4; Gomez re: Immigr. Ct. Arrests, *supra* n. 4; Díaz & Alvarez, *supra* n. 4.

[7] Veronica Cardenas, *I Was Once an ICE Prosecutor. What I See Now in Immigration Courts Is Disturbing*, The Hill (July 17, 2025, 8:00AM), https://thehill.com/opinion/immigration/5404863-i-was-once-an-ice-prosecutor-what-i-see-now-in-immigration-courts-is-disturbing/; Brian Strassburger, S.J. & William Critchley-Menor, S.J., *What We Saw During An ICE Arrest & Immigration Court Hearing: The Breakdown of Justice in America*, America: The Jesuit Review (July 11, 2025), https://www.americamagazine.org/politics-society/2025/07/11/ice-immigration-court-deportation-injustice-251119; *Trump Disregards Due Process in Our Nation's Immigration Courts,* San Antonio Express-News (June 27, 2025), https://www.expressnews.com/opinion/editorial/article/ice-arrest-immigration-court-texas-20395342.php; *Masked ICE Arrests Raise Urgent Questions About U.S. Immigration Practices*, The Riverdale Press (June 26, 2025), https://www.riverdalepress.com/stories/masked-ice-arrests-raise-urgent-questions-about-us-immigration-practices,187060.

[8] Kadifa re: Adult Arrests, *supra* n. 4; Camacho, *supra* n. 4; Salama, *supra* n. 4; Maurice DuBois et al., *3 Immigration Judges Speak Out About Their Firings: "It Was Arbitrary, Unfair*, CBS News (July 24, 2025, 8:34 PM), https://www.cbsnews.com/boston/news/immigration-judges-speak-out-firings-arbitrary-unfair/?intcid=CNM-00-10abd1h; James, *supra* n. 4; Kadifa re: ICE Snatching, *supra* n. 4; Bellisile et al. re: Volunteers Flock to Immigration Courts, *supra* n. 4; Rivera et al., *supra* n. 4; Cuevas, *supra* n. 4; Bellisile, *supra* n. 4; Singhai re: Week at San Diego Immigration Court, *supra* n. 4; Cole et al., *supra* n. 4; Ferré-Sadurní re: Lawsuit, *supra* n. 4; Bernstein, *supra* n. 4; Thamer, *supra* n. 4; Browning & O'Brien, *supra* n. 4; Kadifa re: 4 Arrests, *supra* n. 4; Economist, *supra* n. 4; Regalado & Karlamangla, *supra* n. 4; Li & Cheang, *supra* n. 4; Khan, *supra* n. 4; Seiwell re: ICE Opposition Grows, *supra* n. 4; Vertuno, *supra* n. 4; Seiwell re: ICE Snatching, *supra* n. 4; Gomez re: Faith Leaders, *supra* n. 4; Bremer, *supra* n. 4; May & Marr, *supra* n. 4; Kadifa re: Forum Shopping, *supra* n. 4; Yahr, *supra* n. 4; Hogan re: Mamadou Arrest, *supra* n. 4; Cheang, *supra* n. 4; Brigida, *supra* n. 4; Marnin, *supra* n. 4; Katz, *supra* n. 4; Shapiro re: ICE Tactic Change, *supra* n. 4; Morrissey, *supra* n. 4; Moore & Zavala, *supra* n. 4; Ferré-Sadurní re: Lander Escort, *supra* n. 4; Celeste, *supra* n. 4; Oehrli, *supra* n. 4; Garcia, *supra* n. 4; Lyons, *supra* n. 4; Bustillo, *supra* n. 4; Ferré-Sadurní re: Inside NYC Immigr. Cts., *supra* n. 4; Bellisile et al. re: Immigration Officers Intensify Arrests, *supra* n. 4; Taylor et al., *supra* n. 4; Julia Ainsely, *Trump Admin Tells Immigration Judges to Dismiss Cases in Tactic to Speed Up Arrests,* NBC News (June 11, 2025, 5:00AM), https://www.nbcnews.com/politics/national-security/trump-admin-tells-immigration-judges-dismiss-cases-tactic-speed-arrest-rcna212138; Wilson re: Two Arrests, *supra* n. 4; Saavedra & Arnold, *supra* n. 4; Weber, *supra* n. 4; Nieto del Rio re: Inside Boston Immigr. Ct. Arrest, *supra* n. 4; Conklin & Melugin, *supra* n. 4; Wilson re: Arrest, *supra* n. 4; Larson, *supra* n. 4; Romero et al., *supra* n. 4; Carey, *supra* n. 4; Schmidt, *supra* n. 4; Franklin & Hosseini, *supra* n. 4; Wilson re: Initial Arrest, *supra* n. 4; Díaz & Alvarez, *supra* n. 4; Bradbury, *supra* n. 4; Nieto del Rio re: Boston Immigr. Ct. Arrests, *supra* n. 4; Gamboa, *supra* n. 4; Aleaziz et al., *supra* n. 4; Sherry, *supra* n. 4 Gonzalez & Ruelas, *supra* n. 4; Noriega, *supra* n. 4; Hogan re: NYC Immigr. Ct. Arrests, *supra* n. 4; Chien, *supra* n. 4; Elsen-Rooney re: Dylan Arrest, *supra* n. 4; Malaver et al., *supra* n. 4; Gomez re: Immigr. Ct. Arrests, *supra* n. 4; Hendriks, *supra* n. 4; Montoya-Galvez & Cavazos, *supra* n. 4; Hernández & Sacchetti, *supra* n. 4; Hughes, *supra* n. 4; Goodman et al., *supra* n. 4; Hagstrom & Melugin, *supra* n. 4; Goodman & Salomon, *supra* n. 4; Shoemaker, *supra* n. 4; Ruiz et al., *supra* n. 4; Álvarez, *supra* n. 4; Lacy et al., *supra* n. 4; Ingram, *supra* n. 4; Shapiro re: ICE Arrests, *supra* n. 4.

describing them as a violation of due process and a tactic to deport noncitizens without hearings.[9] Several articles also express concerns about possible coordination between EOIR and ICE in dismissals.[10] And some coverage even suggests that EOIR is firing immigration judges for refusing to dismiss cases.[11]

Arrests and dismissals at immigration courts have outraged Americans around the country. Opposition to these actions and doubts about their legality have prompted mass protests at immigration courts in New York, Seattle, San Francisco, and elsewhere.[12] It has also prompted clergy, political leaders, and other members of the public to accompany noncitizens to their immigration court dates to document arrests and dismissals, attempt to stop the former,

---

[9] James, *supra* n. 4; Cole et al., *supra* n. 4; Ferré-Sadurní re: Lawsuit, *supra* n. 4; Cuevas, *supra* n. 4; Bernstein, *supra* n. 4; Browning & O'Brien, *supra* n. 4; Kadifa re: 4 Arrests, *supra* n. 4; Li & Cheang, *supra* n. 4; Khan, *supra* n. 4; Kadifa re: Forum Shopping, *supra* n. 4; Yahr, *supra* n. 4; Hogan re: Mamadou Arrest, *supra* n.2; Cheang, *supra* n. 4; Brigida, *supra* n. 4; Moore & Zavala, *supra* n. 4; Lyons, *supra* n. 4; Oehrli, *supra* n. 4; Garcia, *supra* n. 4; Bustillo, *supra* n. 4; Ferré-Sadurní re: Inside NYC Immigr. Cts., *supra* n. 4; Bellisile et al. re: Immigration Officers Intensify Arrests, *supra* n. 4; Wilson re: Two Arrests, *supra* n. 4; Saavedra & Arnold, *supra* n. 4; Nieto del Rio re: Inside Boston Immigr. Ct. Arrest, *supra* n. 4; Conklin & Melugin, *supra* n. 4; Wilson re: Arrest, *supra* n. 4; Romero et al., *supra* n. 4; Carey, *supra* n. 4; Franklin & Hosseini, *supra* n. 4; Bradbury, *supra* n. 4; Nieto del Rio re: Boston Immigr. Ct. Arrests, *supra* n. 4; Gamboa, *supra* n. 4; Aleaziz et al., *supra* n. 4; Chien, *supra* n. 4; Elsen-Rooney re: Dylan Arrest, *supra* n. 4; Malaver et al., *supra* n. 4; Gomez re: Immigr. Ct. Arrests, *supra* n. 4; Hernández & Sacchetti, *supra* n. 4; Hughes, *supra* n. 4; Ruiz et al, *supra* n. 4; Lacy et al., *supra* n. 4; Shapiro re: ICE Arrests, *supra* n. 4; Seiwell re: ICE Snatching, *supra* n. 4; Hendricks, *supra* n. 4; Seiwell re: ICE Opposition Grows, *supra* n. 4.

[10] Ferré-Sadurní re: Lawsuit, *supra* n. 4; Bernstein, *supra* n. 4; Khan, *supra* n. 4; Yahr, *supra* n. 4; Conklin & Melugin, *supra* n. 4; Aleaziz et al., *supra* n. 4; Díaz & Alvarez, *supra* n. 4; Schmidt, *supra* n. 4.

[11] Dubois et al., *supra* n. 8.

[12] Thamer, *supra* n. 4; Browning & O'Brien, *supra* n. 4; Alicia Victoria Lozano, *Violent Clashes at San Francisco Immigration Court Won't Deter Protestors, Organizers Say*, NBC News (July 10, 2025, 4:43 PM), https://www.nbcnews.com/news/us-news/violent-clashes-san-francisco-immigration-court-wont-deter-protesters-rcna218059; Sarah Rumpf-Whitten, *Watch: ICE Agents Fight Off Masked Mob Outside Blue City Immigration Court*, FOX News (July 10, 2025, 1:12 PM), https://www.foxnews.com/us/watch-ice-agents-fight-off-masked-mob-outside-blue-city-immigration-court; Shay Arthur, *Crowd Gathers for Immigration Rally at Memphis Court*, WREG Memphis (July 8, 2025, 12:07 PM), https://wreg.com/news/local/crowd-gathers-for-immigration-rally-at-memphis-court/; Ramos, *supra* n. 4; Regalado & Karlamangla, *supra* n. 4; Li & Cheang, *supra* n. 4; Khan, *supra* n. 4; DeAngelis, *supra* n. 4; Stephania Jimenez, *PSL San Antonio Organizes Event to Educate Community on Immigration Laws Amid Rising IDE Deportations*, KSAT (July 1, 2025, 10:42 PM), https://www.ksat.com/news/local/2025/07/02/psl-san-antonio-organizes-to-educate-community-on-immigration-laws-amid-rising-ice-deportations/; May & Marr, *supra* n. 4; Shapiro re: ICE Tactic Change, *supra* n. 4; Ferré-Sadurní re: Lander Arrest, *supra* n. 4; Moore & Zavala, *supra* n. 4; Greg Micek et al., *Sacramento Immigration Court on Lockdown, Draws Protest After Suspected ICE Operation*, Capradio (June 12, 2025), https://www.capradio.org/articles/2025/06/12/sacramento-immigration-court-on-lockdown-draws-protest-after-suspected-ice-operation/; Hobbs re: Sacramento Immigr. Ct. Arrests, *supra* n. 4; Lyons, *supra* n. 4; Ferré-Sadurní re: Inside NYC Immigr. Cts., *supra* n. 4; Bellisile et al. re: Immigration Officers Intensify Arrests, *supra* n. 4; Alvarez, *supra* n. 4; George Kelly & Max Harrison-Caldwell, Protesters Shut Down Immigration Court After ICE Arrests, The San Francisco Standard (June 10, 2025, 1:00 PM), https://sfstandard.com/2025/06/10/protesters-surround-immigration-court-after-ice-arrests/; Kadifa et al., *supra* n. 4; Weber, *supra* n. 4; Joe Rivano Barros et al., *S.F. Police Arrest Dozens in 2nd Night of Protests Against ICE*, Mission Local (June 9, 2025, 8:16 PM), https://missionlocal.org/2025/06/sf-mission-march-mobilized-thousands-against-ice/; Boyanton, *supra* n. 4; Aleaziz et al., *supra* n. 4; Hogan re: NYC Immigr. Ct. Arrests; Ruiz *et al*, *supra* n. 4.

help arrested noncitizens inform their families. [13] At least four federal judges have also deemed a few specific arrests at immigration courts unlawful and ordered ICE to release the arrestees, [14] while a class of noncitizens represented by several rights groups has also sued to stop the arrests nationwide. [15]

Responsive records will address critical integrity questions left open by existing media coverage. Such records will show the extent that EOIR leadership and support staff have coordinated with ICE ERO leadership to facilitate arrests, dismissals, and enforcement actions in immigration courts.

    B.   URGENCY TO INFORM THE PUBLIC ABOUT FEDERAL GOVERNMENT ACTIVITY BY A REQUESTER

Additionally, and alternatively, the Council has a compelling need for the records sought. It is primarily engaged in disseminating information. And urgency also exists to inform the public about the topics discussed above.

    1.   *The Council Primarily Engages in Information Dissemination*

The Council primarily engages in disseminating information and analysis on immigration and other issues. Organizations primarily engaged in information dissemination include not only "media organizations and newspapers," *Heritage Found. v. Entl. Prot. Agency*, Civil Action No. 23-748, 2023 WL 2954418, *3 (D.D.C. 2023), but also "non-partisan law and public policy group[s]" like Requesters that "regularly write[], publish[], and disseminat[e], information online," *Brennan Ctr. for Just.*, 498 F. Supp. 3d at 98 (Brennan Center); *see also Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5 (D.D.C. 2019) (Center for Public Integrity); *Protect Dem. Proj. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) (Protect Democracy Project); *Am. Civil Liberties Union*, 321 F. Supp. 2d at 29 n.5 (Electronic Privacy Information Center ("EPIC")).

Like Brennan Center, Protect Democracy Project, EPIC, and Center for Public Integrity, the Council authors factsheets and special reports on proposed and actual immigration policies,

---

[13] Salama, *supra* n. 4; Markey, *supra* n. 4; Mose re: ICE in Court; Bellisile et al. re: Volunteers Flock to Immigration Courts, *supra* n. 4; Ferré-Sadurní re: Lawsuit, *supra* n. 4; Belz, *supra* n. 4; Thamer, *supra* n. 4; Strassburger & Critchley-Menor, *supra* n. 5; Ciara Encinas, *Volunteers Describe How They Document ICE Arrests in Immigration Courts*, Fox 5 (July 11, 2025, 4 :55 PM), https://fox5sandiego.com/news/local-news/san-diego/san-diego-court-ice-arrests,/; Zavala, *supra* n. 4 ; Joey Safchik, *ICE Handcuffs 71-Year-Old Grandmother, a US Citizen, at San Diego Immigration Court*, 7 San Diego (July 9, 2025, 7 :06 PM), https://www.nbcsandiego.com/news/local/ice-arrests-71-year-old-grandmother-a-us-citizen-at-san-diego-immigration-court/3865098/; Ramos, *supra* n. 4; Rossoto, *supra* n. 4; Khan, *supra* n. 4; Singhai re: Volunteers, *supra* n. 4; Gomez re : Faith Leaders, *supra* n. 4; Shapiro re: ICE Tactic Change, *supra* n. 4; Sanchez & Ebrahimji, *supra* n. 4; Ferré-Sadurní re: Lander Arrest, *supra* n. 4; Ferré-Sadurní re: Lander Escort, *supra* n. 4; Micek et al., *supra* n. 4; Stone, *supra* n. 4; Hobbs re: Sacramento Immigr. Ct. Arrests, *supra* n. 4; Estrada re: Two Arrests, *supra* n. 4; Boyanton, *supra* n. 4.

[14] *See* Markey, *supra* n. 4; Bernstein, *supra* n. 4; Baumhardt, *supra* n. 4; Ramos, *supra* n. 4; Vertuno, *supra* n. 4.

[15] *See, e.g.*, Rivera et al., *supra* n. 4; Abbot, *supra* n. 4; Bellisile, *supra* n. 4; Cole et al., *supra* n. 4; Ferré-Sadurní re: Lawsuit, supra n. 4.

some of which shape media coverage in outlets across the nation.[16] It also analyzes immigration data and other government records—including those obtained through FOIA requests like this one—in interactive web reports.[17] And it circulates its reports and factsheets through its website,[18] blog, email newsletters, and an X (formerly known as Twitter) account with 64.9 thousand followers.[19]

   2.   *Urgency Exists to Inform the Public*

Urgency also exists to inform the public about the extent that EOIR leadership and support staff have coordinated with ICE ERO leadership to facilitate arrests, dismissals, and enforcement actions in immigration courts.

Requisite urgency exists where "the request touches on 'a matter of current exigency to the American public'" and delay "compromises a significant recognized interest." *Protect Dem. Proj.*, 263 F. Supp. 3d 293 at 299 (quoting *Al-Fayed v.* CIA, 254 F.3d 300, 310 (D.C. Cir. 2001)). The above topics are exigent to the American public, as demonstrated by the one hundred and twenty plus articles discussing ICE arrests at or near immigration courts cited in this request, the eighty plus articles discussing dismissals of immigration proceedings, and the mass protests against these actions outside immigration courts. *See CREW*, 2025 WL 752367, at *13 (finding urgency to inform the public based on at least fifty articles on the issue); *Am. Civil Liberties Union of No. Cal. v. U.S. Dep't of Def.*, No. C 06-01698, 2006 WL 1469418, at *6 (N.D. Cal. May 25, 2006) (same); 28 C.F.R. § 16.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful to establishing the requirement that there be an 'urgency to inform' the public on the topic.").

Delayed production of responsive records would compromise the ongoing public debate about the propriety of ICE arrests at immigration courts and the dismissal of immigration cases,

---

[16] *See, e.g., Trump-Backed Mass Deportations Would Cost Billions*, Report Says, CBS News (Oct. 3, 2024), https://www.cbsnews.com/video/trump-backed-mass-deportations-would-cost-billions-report/ (discussing Am. Immig. Council, Mass Deportation: Devasting Costs to America, Its Budget and Economy (Oct. 2, 2024), https://www.americanimmigrationcouncil.org/report/mass-deportation/); Emma Goldberg, *What if Trump Deported Millions of Immigrants*, The New York Times (Oct. 22, 2024), https://www.nytimes.com/interactive/2024/10/22/us/elections/trump-deportation.html?unlocked_article_code=1.Uk4.Pjao.99OiYFTTpEl6 (same); *What Trump's Mass Deportation Plan Might Look Like If He Wins the Election*, 60 Minutes (Oct. 27, 2024), https://www.youtube.com/watch?v=WjCHjwlSMFI (same); *Mass Deportations*, Last Week Tonight (Oct. 27, 2024), https://www.youtube.com/watch?v=0UEhMDAlX1Y (same); *The Costs of Mass Deportation? Expert Breaks Down Trump's Immigration Plan*, Amanpour & Company, (Oct. 28, 2024), https://www.youtube.com/watch?v=Dmfo3atidKE (same).
[17] *See* Am. Immig. Council, Torrance County Detention Facility: Troubling Role in Detaining Haitian Migrants During the 2021 Del Rio Incident (2024), https://www.americanimmigrationcouncil.org/foia/torrance-detention-facility; Am. Immig. Council, Ohio, We Have a Problem: Border Patrol & Local Law Enforcement's Patterns & Tactics of Abuse in Ohio's Immigration Enforcement (2024), https://www.americanimmigrationcouncil.org/foia/ohio-border-patrol-abuse; Am. Immig. Council, Refugee Resettlement in U.S. Cities (2019), https://data.americanimmigrationcouncil.org/en/refugee-resettlement-us/#exploratory_tool
[18] The Council's website received 4,506,460 views from 2,952,034 different users in 2024.
[19] *See* https://x.com/immcouncil.

especially the concerns that EOIR is coordinating with ICE to facilitate arrests and dismissals. *Cf. CREW*, 2025 WL 752367, at *13 (expediting a request for records about the U.S. DOGE Service); *Protect Dem. Proj.*, 263 F. Supp. 3d 293 at 299 (expediting a request for records about a possible unlawful airstrike on Syria); *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Def.*, No. C. 06-01698, 2006 WL 1469418, at *6-7 (N.D. Cal. May 25, 2006) (expediting a request for records about possible unlawful military surveillance of protestors); *Freedom Coalition of Doctors for Choice v. Ctrs. For Disease Control & Prevention*, 2:23-cv-102, 2024 WL 69084, at *14 (N.D. Tex. Jan. 5, 2024) (expediting a request disputing the effectiveness of COVID-19 vaccines).

## IV. FEE WAIVER REQUEST

Requestors seek a fee waiver since "disclosure of the requested records is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). EOIR must construe "the FOIA fee waiver provision … liberally … in favor of waivers for noncommercial requesters" like Requesters. *Schoenman v. FBI*, 604 F. Supp. 2d 174, 188 (D.D.C. 2009). Disclosure is in the public interest where it (A) "is likely to contribute significantly to public understanding of the operations or activities of the government" and (B) "is not primarily in the commercial interest of the [R]equesters." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 28 C.F.R. § 16.10(k)(1). Requesters satisfy both requirements.

### A. DISCLOSURE OF THE INFORMATION IS IN THE PUBLIC INTEREST

Disclosing the requested records is likely to contribute significantly to the public's understanding of the extent that EOIR leadership and support staff have coordinated with ICE ERO leadership to facilitate arrests, dismissals, and enforcement actions in immigration courts.

EOIR must consider two factors when assessing a disclosure's contribution to public understanding of a government activity or operation, *see* 28 C.F.R. § 16.10(k)(2): (i) whether the request has a "direct and clear" rather than "remote or attenuated" connection to "identifiable operations or activities of the federal government"; and (ii) whether disclosure "would be likely to contribute significantly to public understanding of those operations or activities." *Id.* § 16.10(k)(2)(i)-(ii). Each factor supports a fee waiver here.

#### 1. *Request Has a Direct and Clear Connection to Government Operations or Activities*

First, this request has a direct and clear relation to the following governmental operations and activities: the extent that EOIR leadership and support staff have coordinated with ICE ERO leadership to facilitate arrests, dismissals, and enforcement actions in immigration courts.

#### 2. *Records Sought Will Contribute Significantly to Public Understanding of the Above*

Second, disclosing the records sought will "contribute significantly to public understanding of" the above activities. *Id.* § 16.10(k)(2)(ii). Such contribution exists where "[d]isclosure of the requested information [is] meaningfully informative about [these] activities" and "contribute[s]

to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester." *Id.* § 16.10(k)(2)(ii)(A)-(B). Both criteria are satisfied here.

      i.   DISCLOSURE OF RECORDS IS MEANINGFULLY INFORMATIVE

Disclosing requested records will be meaningfully informative about the extent that EOIR leadership and support staff have coordinated and cooperated with ICE ERO leadership to facilitate arrests, dismissals, and enforcement actions in immigration courts. Disclosure is meaningfully informative where disclosed information is not "in the public domain, in either the same or a substantially identical form." *Id.* § 16.10(k)(2)(ii)(A).

Here, as demonstrated by the media coverage cited above, the public only knows that ICE is arresting noncitizens at or near immigration courts after moving to dismiss their immigration cases and that immigration judges are granting many dismissals, thereby allowing ICE to pursue expedited removal.[20] Media coverage has alluded to, and expressed concern about, possible EOIR coordination with ICE.[21] Public knowledge does not extend to the extent or specifics of any such coordination. Requested records are therefore "meaningfully informative" about each of these activities.

      ii.   DISCLOSURE OF RECORDS CONTRIBUTES TO UNDERSTANDING OF A REASONABLY BROAD AUDIENCE

Disclosing requested records will contribute to the understanding of a reasonably broad audience of persons interested in the extent that EOIR leadership and support staff have coordinated and cooperated with ICE ERO leadership to facilitate arrests, dismissals, and enforcement actions in immigration courts.

Requesters presumably satisfy this consideration as representatives of the news media. *Id.* § 16.10(k)(2)(ii)(B). They both "gather[] information of potential interest to a segment of the public, use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience." *Id.* § 16.10(b)(6); *see also Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 282, 287-88 (D. Conn. 2012) (finding that ACLU is a news media representative); *cf. Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding that an organization similar to the Council is a news media representative).

Additionally, and alternatively, the ongoing and extensive media coverage in nationwide, state, and local outlets about the dismissal of immigration cases and ICE arrests at and near immigration courts shows that these matters interest a reasonably broad audience. Requesters

---

[20] *See generally* Media articles cited in footnotes 4-13.

[21] Ferré-Sadurní re: Lawsuit, *supra* n. 4; Bernstein, *supra* n. 4; Khan, *supra* n. 4; Yahr, *supra* n. 4; Conklin & Melugin, *supra* n. 4; Aleaziz et al., *supra* n. 4; Díaz & Alvarez, *supra* n. 4; Schmidt, *supra* n. 4.

intend and are well-equipped to inform this audience about the information contained in responsive records, as they are experts in educating the public on immigration issues.

As detailed further in the expedited processing section, the Council analyzes government records—including those obtained through FOIA requests like this one—in interactive web reports and other publications available for free on its website.[22] And it circulates these publications for free through its website,[23] blog, email newsletters, and an X account with 64.9 thousand followers. It intends to publish content about records obtained from this request on its website and otherwise disseminate that content to its readers and the larger public.

Similarly, LatinoJustice PRLDEF produces newsletters, blogs, reports, opinion, editorials, and video interviews about the constitutional rights and equal protection of Latinos, immigrants, and other marginalized communities.[24] And it circulates these publications for free through its social media accounts. All of its materials are free and available to the public on its website.

In sum, Requesters intend to analyze the records they receive from this request and educate a broad audience of the interested public about them. And, Requesters have a demonstrated ability to do so.

B.   REQUESTERS' LACK OF COMMERCIAL INTEREST

Turning to commercial interest, disclosure is not primarily in Requesters' commercial interest. As nonprofits, Requesters have no commercial interest in the records requested. *See Am. Ctr. for L. & Just. v. U.S. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 84 (D.D.C. 2021) ("[N]onprofit organizations by definition have no commercial interests."); *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 406 (D.D.C. 2015) (finding that the Council has no such interest in its record requests). Rather, the request furthers Requesters' work to increase public understanding of immigration processes, including the extent that EOIR leadership and support staff have coordinated and cooperated with ICE ERO leadership to facilitate arrests, dismissals, and enforcement actions in immigration courts.

Alternatively, and additionally, the public interest in obtaining a better understanding of EOIR's actions discussed above exceeds any commercial interest that EOIR may ascribe to Requesters in records responsive to this request.

\*\*\*

---

[22] *See, e.g.*, Torrance County Detention Facility: Troubling Role in Detaining Haitian Migrants During the 2021 Del Rio Incident, *supra* n. 15; Ohio, We Have a Problem: Border Patrol & Local Law Enforcement's Patterns & Tactics of Abuse in Ohio's Immigration Enforcement, *supra* n. 15; Refugee Resettlement in U.S. Cities, *supra* n. 15.

[23] The Council's website received 4,506,460 views from 2,952,034 different users in 2024.

[24] *See, e.g.*, LatinoJustice PRLDEF, 100 Days Later: The Harm So Far to Latinx Communities (April 2025), https://www.latinojustice.org/en/pressreport/100-days-later-harm-so-far-latinx-communities; LatinoJustice PRLDEF, A Promise to Harm: What's at Stake for the Latino Community in Project 2025 (Oct. 2024), https://www.latinojustice.org/en/pressreport/promise-harm-whats-stake-latino-community-project-2025.

Thank you for your attention to this request. If you have any questions regarding this request, please do not hesitate to contact us.

Very truly yours,

/s/ Chris Opila                                    _/s/Rex Chen_____

Christopher ("Chris") Opila                  Rex Chen
Staff Attorney (Transparency)              Supervising Counsel for Immigrant Rights
American Immigration Council              LatinoJustice PRLDEF,
PMB2026                                          475 Riverside Drive Suite 1901
2001 L Street N.W., Suite 500               New York, NY 10115
Washington, DC 20036                         212-219-3360 | rchen@latinojustice.org
202-507-7699 | copila@immcouncil.org

Exhibit B

| | |
|---|---|
| **From:** | jeniffer.perez.santiago@usdoj.gov |
| **To:** | Chris Opila |
| **Cc:** | jeniffer.perez.santiago@usdoj.gov |
| **Subject:** | DOJ-EOIR FOIA Request # 2025-84742 |
| **Date:** | Wednesday, July 30, 2025 2:42:19 PM |

---

> **Warning: Unusual sender** <jeniffer.perez.santiago@usdoj.gov>
> You don't usually receive emails from this address. Make sure you trust this sender before taking any actions.

Re: 2025-84742

Dear Christopher Opila,

The Executive Office for Immigration Review (EOIR) has received your request for expedited treatment of your Freedom of Information Act (FOIA) request.

The FOIA regulations states that expedited treatment is granted if there is an exceptional need such as jeopardy to life or personal safety, a threatened loss of substantial due process rights, or an urgency to inform the public concerning actual or alleged Federal Government activities. *See* 28 C.F.R. § 16.5(e).

Upon review of your request, it has been determined that you did not meet the threshold. Therefore, your request for expedited treatment has been denied.

If you need any further assistance or would like to discuss any aspect of your request, please contact the EOIR FOIA Service Center or FOIA Public Liaison at EOIR.FOIArequests@usdoj.gov. Alternatively, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at (877) 684-6448; or facsimile at (202) 741-5769.

If you are not satisfied with the EOIR's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website https://www.justice.gov/oip/submit-and-track-request-or-appeal.Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,

FOIA Intake



Exhibit C

**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Christopher Opila, Esq.

Re:  Appeal Nos. A-2025-02530; A-2025-02531; A-2025-02532 & A-2025-02533

Request Nos. 2025-84744; 2025-84734; 2025-84742 & 2025-84746

copila@immcouncil.org

**VIA:  Online Portal - 09/04/2025**

Dear Christopher Opila:

This is to advise you that your administrative appeals from the actions of the Executive Office for Immigration Review (EOIR) were received in this Office on August 27, 2025.  You appealed from EOIR's denial of your requests for expedited treatment of your Freedom of Information Act (FOIA) requests.

After carefully considering your appeal, and as a result of discussions between EOIR personnel and this Office, I am remanding your requests to EOIR for further processing of your requests for expedited processing.  You may appeal any future adverse determination made by EOIR.  If you would like to inquire about the status of these remanded requests, please contact EOIR directly at 703-605-1297.

Finally, I note that you requested expedited treatment of your appeals.  Because I am closing your underlying appeals within ten calendar days, your request for expedited treatment of these appeals is moot.

Please be advised that this Office's decision was made only after a full review of these matters.  Your appeals were assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeals, your underlying requests, and the actions of EOIR in response to your requests for expedited processing.

If you are dissatisfied with my actions on your appeals, the FOIA permits you to file a

lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

      For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769.  If you have any questions regarding the action this Office has taken on your appeals, you may contact this Office and speak with the undersigned agency official by calling 202-514-3642.

      Sincerely,

      X_____

      Christina Troiani
      Chief, Administrative Appeals Staff

Exhibit D

| | |
|---|---|
| **From:** | jeniffer.perez.santiago@usdoj.gov |
| **To:** | Chris Opila |
| **Cc:** | jeniffer.perez.santiago@usdoj.gov |
| **Subject:** | DOJ-EOIR FOIA Request # 2025-84742 |
| **Date:** | Tuesday, August 5, 2025 11:45:53 AM |

---

**External sender** <jeniffer.perez.santiago@usdoj.gov>
Make sure you trust this sender before taking any actions.

Re:    2025-84742

Dear Christopher Opila,

This correspondence is in response to your Freedom of Information Act (FOIA) request dated
July 28, 2025 to the Executive Office for Immigration Review (EOIR) in which you seek
all emails, correspondence, calendar entries, meeting notes, text messages, Signal messages,
WhatsApp messages, Microsoft Teams messages, and other similar communication records 2
between one or more individuals listed in Column A of the table below and one or more
individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date
of a reasonable search for responsive records. A: The Chief Immigration Judge; A Regional
Deputy Chief Immigration Judge ("RDCJ"); An Assistant Chief Immigration Judge ("ACIJ");
or a Court Administrator. B: ICE Director;ICE Deputy Director; ICE Chief of Staff; ICE
Associate Director of Enforcement and Removal Operations ("ERO"); The Director of ERO
Field Operations; An Assistant Director of ERO Field Operations; An ERO Field Office
Director; or an ERO Field Office Deputy Director. C: Expedited removal; an ICE enforcement
operation in or near an immigration court; an ICE arrest in or near an immigration court; or
dismissal or termination of immigration cases or proceedings in immigration court. (Date
Range for Record Search: From 04/01/2025 To 07/28/2025).

EOIR cannot process your request at this time as it does not reasonably define a set of records
to search as required by the FOIA and DOJ regulations. 5 U.S.C. § 522(a)(3); 28 C.F.R. §
16.3(b). DOJ regulations state that, "[t]o the extent possible, requesters should include specific
information that may assist a component in identifying the requested records, such as the date,
title or name, author, recipient, subject matter of the record, case number, file designation, or
reference number" and also that "requesters should include as much detail as possible about
the **specific records or the types of records that they are seeking**." 28 C.F.R. §
16.3(b). **Some of the ways to narrow your request is to limit the search to only emails or
calendar entries.**

Your request requires clarification and is on hold. Please contact EOIR to clarify your request.
If we do not hear from you within 30 calendar days of this notice, we will assume that you are
no longer interested, and your request will be administratively closed.

If you need any further assistance or would like to discuss any aspect of your request, please
contact the analyst who processed your request or the EOIR FOIA Public Liaison at
EOIR.FOIArequests@usdoj.gov. Additionally, you may contact the Office of Government
Information Services (OGIS) at the National Archives and Records Administration to inquire
about the FOIA mediation services they offer. The contact information for OGIS is as follows:
Office of Government Information Services, National Archives and Records Administration,

Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at
ogis@nara.gov; telephone at (202) 741-5770; toll free at (877) 684-6448; or facsimile at (202)
741-5769.

Sincerely,

Jeniffer Perez Santiago
Attorney Advisor

 

Exhibit E

August 18, 2025

Filed Via Email

U.S. Department of Justice
Executive Office for Immigration Review
Office of General Counsel – FOIA Service Center
5107 Leesburg Pike, Suite 1903
Falls Church, VA 22041

Re:    2025-84742— Response to Notice of Intent to Close for Lack of Reasonable Description

Dear FOIA Officer:

The American Immigration Council and LatinoJustice PRLDEF (collectively, "Requesters") filed FOIA Request No. 2025-84742 (the "Request") with the Executive Office for Immigration Review ("EOIR") via the U.S. Department of Justice Public Access Link[1] on July 28, 2025. Ex. A. Requesters sought expedited processing of this Request.

On July 30, 2025, EOIR denied expedited processing on this Request. Ex. B. On August 5, 2025, EOIR expressed concern about the adequacy of the Request's description of responsive records. Ex. C. It also provided notice of its intent to close this Request administratively within thirty days if it did not receive a response from Requesters. *Id.*

This letter constitutes Requesters' response and a renewal of their request for expedited processing.

I.    THE REQUEST'S SCOPE

The Request seeks all emails,[2] correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records[3] between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records.

---

[1] Requesters also posted 2025-84742 to the U.S. Department of Justice's Director of Public Affairs via certified mail on July 30, 2025, because the Request seeks expedited processing based on 28 C.F.R. § 16.5(e)(1)(iv). The Director of Public Affairs received the Request on August 6, 2025.

[2] Requested emails exclude duplicates. (E.g, agencies should only produce one record of an email chain that contains all emails in that chain, rather than a record for each new email in the chain that contains all emails in the chain prior to that email).

[3] Responsive records should be construed as exclusive of records that are part of a noncitizen's record of proceedings (e.g., a motion to dismiss).

 

| A | B | C |
|---|---|---|
| The Chief Immigration Judge | ICE Director | Expedited removal |
| A Regional Deputy Chief Immigration Judge ("RDCJ") | ICE Deputy Director | An ICE enforcement operation in or near an immigration court |
| An Assistant Chief Immigration Judge ("ACIJ") | ICE Chief of Staff | An ICE arrest in or near an immigration court |
| A Court Administrator | ICE Associate Director of Enforcement and Removal Operations ("ERO") | Dismissal or termination of immigration cases or proceedings in immigration court[4] |
| | The Director of ERO Field Operations | |
| | An Assistant Director of ERO Field Operations | |
| | An ERO Field Office Director | |
| | An ERO Field Office Deputy Director | |

II. EOIR'S NOTICE

On August 5, 2025, EOIR sent the notice below:

> EOIR cannot process your request at this time as it does not reasonably define a set of records to search as required by the FOIA and DOJ regulations. 5 U.S.C. § 522(a)(3); 28 C.F.R. § 16.3(b). DOJ regulations state that, "[t]o the extent possible, requesters should include specific information that may assist a component in identifying the requested records, such as the date, title or name, author, recipient, subject matter of the record, case number, file designation, or reference number" and also that "requesters should include as much detail as possible about the specific records or the types of records that

---

[4] Responsive records should be construed as exclusive of records that are part of a noncitizen's record of proceedings (e.g., a motion to dismiss).

 

they are seeking." 28 C.F.R. § 16.3(b). Some of the ways to narrow your request is to limit the search to only emails or calendar entries.

Your request requires clarification and is on hold. Please contact EOIR to clarify your request. If we do not hear from you within 30 calendar days of this notice, we will assume that you are no longer interested, and your request will be administratively closed. Ex. C.

## III.  REQUEST'S DESCRIPTION COMPORTS WITH FOIA

EOIR's concern with the Request's description is misplaced, as the Request reasonably describes responsive records. Nonetheless, to help the agency process the Request more expeditiously, Requesters will reduce the types of responsive communication records and hold other types of responsive communication records in abeyance until the agency has processed responsive emails, calendar entries, meeting notes, and Microsoft Teams messages.

A reasonable description is one that allows an agency employee familiar with the subject area of the request to locate responsive records "with a reasonable amount of effort." *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990); *see also Kowalczyk v. Dep't of Just.,* 73 F.3d 386, 388 (D.C. Cir. 1996) ("A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.'" (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982))).

Courts routinely approve descriptions of communications that specify the communications' dates, forms, parties, and topics, just as Requesters did here. *See, e.g.*, *Bader Family Found. v. U.S. Equal Emp. Opportunity Comm'n*, Case No. 23-cv-976 (JMC), 2025 WL 915563, at *4 (D.D.C. Mar. 26, 2025) ("All internal and external communications" sent or received by a defined set of employees that make certain allegations); *Gun Owners of Am. v. Fed. Bureau of Investigation*, 594 F. Supp. 3d 37, 46-49 (D.D.C. 2022) ("All communications between the FBI and the Virginia Department of State Police involving" two background check programs); *Am. Oversight v. U.S. Env't Prot. Agency*, 386 F. Supp. 3d 1, 4-5, 11 (D.D.C. 2019) ("All emails between four named officials and "any email address containing a house.gov or senate.gov domain" during a two week period).

Consistent with caselaw and agency regulations, the Request provides the following information about responsive communications to help EOIR identify them:
  (i)     A date range: April 1, 2025, to the date of reasonable search;
  (ii)    Authors and recipients: Positions listed in Columns A and B;
  (iii)   Subject matters: Topics listed in Column C; and
  (iv)    Types of records sought: Emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records.

 

EOIR has not asked for any additional information or clarification of the Requests' terms to process the Request—an omission that belies its concern that the Request does not reasonably define a set of records such that an agency employee familiar with arrests and dismissals at immigration court cannot locate responsive communications with reasonable effort.

Instead, EOIR asks Requesters to narrow the types of responsive communication records to only emails or calendar entries. Such a request indicates that EOIR's true concern with the Request may lie with any burden it imposes on the agency. Yet EOIR must "provide sufficient explanation" for any unreasonable burden it claims. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995). Such explanation entails "a detailed explanation … regarding the time and expense of a proposed search." *Prop. of the People, Inc. v. U.S. Dep't of Just.*, 530 F. Supp. 3d 57, 63 (D.D.C. 2021) (quoting *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008)). EOIR provides no such explanation, so Requesters cannot identify any aspects of their Request that pose undue burdens and work with the agency to reduce them.

Nonetheless, to ease any burdens on the agency and assist the agency in processing the Request expeditiously, Requesters make two modifications to their Request: (i) Requesters exclude Signal messages, WhatsApp messages, text messages, and other phone records from the types of responsive records; and (ii) Requesters hold the search for, and processing of, responsive correspondence and other similar communication records in abeyance until EOIR has processed responsive emails, calendar entries, meeting notes, and Microsoft Teams messages.

IV. RENEWED REQUEST FOR EXPEDITED PROCESSING

Requesters renew their request for expedited processing of this Request, which EOIR denied on July 30, 2025. Ex. C. Requesters certify that the supplemental statements herein are "true and correct" pursuant to 28 C.F.R. § 16.5(e)(3) and incorporate their previous request for expedited processing herein.

Arrests by U.S. Immigration and Customs Enforcement ("ICE") at and near immigration courts and dismissals of immigration cases remain matters of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence. Similarly, urgency continues to exist to inform the public about the coordination of ICE and ERO with EOIR to facilitate these arrests and dismissals.

National, state, and local media outlets published one hundred and twenty-one articles about ICE arrests at or near immigration courts between May 20, 2025, and July 28, 2025, when Requesters filed the Request. Since then, media outlets have published an additional thirty




articles[5] about the arrests. Thirteen of these articles also discuss the dismissal[6] of immigration proceedings in immigration courts and fourteen express concerns about these tactics' fairness

---

[5] Dean Moses, *The Art of Bearing Witness: How One Sketch Artists Is Capturing the ICE Arrests in NYC Immigration Court,* AMNY (Aug. 18, 2025), https://www.amny.com/new-york/sketch-artist-ice-arrests-nyc-courts/ (hereinafter "Moses re: Arrest Sketch Artist"); Melissa Colorado, *6-Year-Old Girl Take by ICE During Family's Visit to Immigration Court in NYC,* 4 New York (Aug. 17, 2025, 12:50pm), https://www.nbcnewyork.com/news/local/queens-girl-taken-by-ice/6369242/; Sara Holthouse, *Local Groups Call Attention to Buffalo ICE Incident Involving City Woman,* The Post-Journal (Aug. 16, 2025), https://www.post-journal.com/news/top-stories/2025/08/local-groups-call-attention-to-buffalo-ice-incident-involving-city-woman/; Margaret Kadifa, *ICE Makes Unusual Arrest of Indigenous Woman in S.F. Immigration Court,* Mission Local (Aug. 15, 2025, 4:42 PM), https://missionlocal.org/2025/08/sf-ice-indigenous-arrest-immigration-court/ (hereinafter, "Kadifa re: Unusual Arrest"); Gwynne Hogan, *Arrests Nearly Halt at Immigration Court. One Reason: Fewer People are Showing Up,* The City (Aug. 15, 2025, 5:00 AM), https://www.thecity.nyc/2025/08/15/arrests-down-immigration-court-no-shows/; Aleja Hertzler-McCain, *'There Really Is No Escape': Faith Leaders Help Immigrants Face Court as ICE Arrests Rise,* RNS (Aug. 15, 2025), https://religionnews.com/2025/08/15/faith-leaders-accompany-immigrants-to-court-appointments/; Margaret Kadifa, *ICE Arrests One Asylum-Seeker from S.F. Immigration Court,* Mission Local (Aug. 14, 2025, 1:35 PM), https://missionlocal.org/2025/08/ice-arrests-asylum-seeker-thursday/ (hereinafter, "Kadifa re: Thursday Arrest"); Colin Kalmbacher, *'Erroneous Deprivation of Liberty': Angry Judge Swipes at Trump Admin Over 'Game of Detention Roulette' and "Masked" ICE Agents at Immigration Hearings in Habeas Case,* Law & Crime (Aug. 14, 2025, 12:39 PM), https://lawandcrime.com/high-profile/erroneous-deprivation-of-liberty-angry-judge-swipes-at-trump-admin-over-game-of-detention-roulette-and-masked-ice-agents-at-immigration-hearings-in-habeas-case/; Elie Quinlan Houghtaling, *Judge Torches Trump for Letting ICE Arrest People at Immigration Court,* New Republic (Aug. 14, 2025, 10:48 AM), https://newrepublic.com/post/199098/judge-donald-trump-ice-immigration-court-due-process/; Jose Pagliery, *Ex-Immigration Judge Reveals Tactics Used to Arrest Migrants Who Show Up for Court,* NOTUS (Aug. 14, 2025, 5:18 AM), https://www.notus.org/courts/former-immigration-judge-court-hearings-ice-arrest; Haidee Chu & Gwynne Hogan, *NYC Is the Nation's Capital of Immigration Courthouse Arrests, New Data Analysis Shows* (Aug. 11, 2025, 5:00 AM), https://www.thecity.nyc/2025/08/11/26-federal-plaza-immigration-court-trump-arrests-data-analysis/; Dean Moss, *'Give Me Liberty or Give Me Death': Anti-ICE Protestors Dressed as Lady Justice, Statute of Liberty Arrested outside of Manhattan Immigration Court,* AMNY (Aug. 11, 2025), https://www.amny.com/news/anti-ice-protesters-dressed-lady-justice-immigration-court/ (hereinafter, "Moss re: Lady Justice"); Luís Ferré-Sadurní, *ICE Is Holding Migrants in Crowded and Unsanitary Cells, Suit Claims,* NY Times (Aug. 8, 2025), https://www.nytimes.com/2025/08/08/nyregion/immigration-holding-cells-lawsuit-aclu.html; Deepa Bharath, *Faith Leaders Rally to Support Immigrants Facing Deportation in Southern California,* Associated Press (Aug. 8, 2025, 7:01 AM), https://apnews.com/article/faith-leaders-california-trump-immigration-crackdown-c08b988309584aa3fdd4f86d8b1ee272; Arya Sundaram, *NYPD Arrests 15 in Lower Manhattan Protest Against Immigrant Enforcement Tactics,* Gothamist (Aug. 8, 2025), https://gothamist.com/news/nypd-arrests-15-in-lower-manhattan-protest-against-immigration-enforcement-tactics; Margaret Kadifa, *An Old Legal Procedure is Getting Asylum Seekers Out of ICE Detention* (Aug. 6, 2025, 2:30 PM), https://missionlocal.org/2025/08/habeas-corpus-petitions/ (hereinafter, "Kadifa re: Habeas"); Tim Henderson, *ICE Has a New Courthouse Tactic: Get Immigrants' Cases Tossed, Then Arrest Them Outside,* Stateline (August 6, 2025, 5:00 AM), https://stateline.org/2025/08/06/ice-has-a-new-courthouse-tactic-get-immigrants-cases-tossed-then-arrest-them-outside/; William Brangham, *Jesuit Priest Describes Seeing ICE Agents Target Migrants at Immigration Court,* PBS News (Aug. 4, 2025, 6:30 PM), https://www.pbs.org/newshour/show/jesuit-priest-describes-seeing-ice-agents-target-migrants-at-immigration-court; Luís Ferré-Sadurní & Ashley Cai, *Trump's Immigrant Crackdown in New York: More Arrests, Longer Detention,* (Aug. 4, 2025, 10:04 AM), https://www.nytimes.com/2025/08/04/nyregion/new-york-immigrant-arrests-trump.html; Crystal Cranmore, *Westchester High School Grad Detained by ICE After Routine Visa Hearing, Family Says,* ABC 7 (Aug.




and integrity.[7] Similarly, twelve of these articles cover public pushback against these dubious tactics—protests outside immigration courts and accompaniment to immigration proceedings—while two cover yet another order by a federal judge ruling that a specific arrest at an immigration court was unlawful wherein the judge decried such arrests as "detention roulette."[8] Therefore, expedition of this Request remains warranted under 28 C.F.R. § 16.5(e)(1)(ii), (iv).

***

Thank you for your prompt attention to this response and its renewed request for expedited processing, as well as the outstanding determination on the Request's application for a fee

---

4, 2025, 6:27 AM), https://abc7ny.com/post/westchester-high-school-grad-detained-ice-routine-visa-hearing/17407805/; Todd Heisler et al., *Anatomy of an ICE Arrest*, NY Times (August 3, 2025), https://www.nytimes.com/2025/08/03/nyregion/immigrant-arrests-courthouse.html; Margaret Kadifa, *Four Out of Five Asylum Seekers Arrested Friday in S.F. Immigration Court*, Mission Local (Aug. 1, 2025, 5:04 PM), https://missionlocal.org/2025/08/four-arrested-friday-immigrationcourt/ (hereinafter, "Kadifa re: Friday Arrests"); Brant Bingamon, *Judges Are Ignoring the Rule of Law in Immigration Court, Greg Casar Says*, The Austin Chronicle (Aug. 1, 2025), https://www.austinchronicle.com/news/2025-08-01/judges-are-ignoring-the-rule-of-law-in-immigration-court-greg-casar-says/; Margaret Kadifa, *Immigrants Arrested in S.F. Friday Sent to Arizona*, Mission Local (July 30, 2025, 4:55 PM), https://missionlocal.org/2025/07/immigrants-sent-arizona/; Hayley Miller, *ICE Arrests at NYC Immigration Court Offer Harrowing Snapshots of Trump's Crackdown*, MSNBC (July 30, 2025, 1:01 PM), https://www.msnbc.com/msnbc/amp/shows/top-stories/blog/rcna221970; Jacob Soboroff, *Witnessing ICE Arrests Inside NYC Immigration Courthouse*, MSNBC (July 29, 2025), https://www.msnbc.com/msnbc/watch/witnessing-ice-arrests-inside-nyc-immigration-courthouse-244023365688; Margaret Kadifa, *Immigrants Arrested in S.F. Are Being Sent to Prison in Hawaii*, Mission Local (July 29, 2025, 1:26 PM), https://missionlocal.org/2025/07/immigrants-flown-hawaii/; Emiliano Tahu Gómez, *'Unconstitutional Death Row': At San Antonio Immigration Court, Rep. Casar Decries Arrests, Gets Few Answers*, Austin American-Statesman (July 28, 2025, 6:19 PM), https://www.statesman.com/story/news/politics/government/2025/07/28/unconstitutional-death-row-san-antonio-immigration-court-rep-casar-decries-arrests-gets-few-answers/85415560007/ (hereinafter, "Gómez re: San Antonio"); Meredith Haas, *ICE Arrests Outside SA Immigration Court Draw Criticism from Lawmakers, Advocates*, KENS5 (July 28, 2025, 6:06 PM), https://www.kens5.com/article/news/local/san-antonio-texas-immigration-court-ice-arrests-deportation-congressman-greg-casar-advocates-lawmakers/273-dd5bcb13-bcb5-4ea2-b6bb-9827e056376c; Sanford Nowlin, *U.S. Rep. Greg Casar Calls ICE Arrests at San Antonio Immigration Court 'Disturbing, Dystopian'*, San Antonio Current (July 28, 2025, 5:03 PM), https://www.sacurrent.com/news/us-rep-greg-casar-calls-ice-arrests-at-san-antonio-immigration-court-disturbing-dystopian-38097422.

[6] Holthouse, *supra* n. 5; Kadifa re: Unusual Arrest, *supra* n. 5; Hertzler-McCain, *supra* n. 5; Kadifa re: Thursday Arrest, *supra* n. 5; Pagliery, *supra* n. 5; Pagliery, *supra* n. 5; Chu & Hogan, *supra* n. 5; Bharath, *supra* n. 5; Henderson, *supra* n. 5; Brangham, *supra* n. 5; Kadifa re: Friday Arrests, *supra* n. 5; Bingamon, *supra* n. 5; Gómez, *supra* n. 5; Nowlin, *supra* n. 5.

[7] Moses re: Arrest Sketch Artist, *supra* n. 5; Holthouse, *supra* n. 5; Hertzler-McCain, *supra* n. 5; Chu & Hogan, *supra* n. 5; Bharath, *supra* n. 5; Henderson, *supra* n. 5; Brangham, *supra* n. 5; Heisler et al., *supra* n. 5; Bingamon, *supra* n. 5; Gómez, *supra* n. 5; Haas, *supra* n. 5.

[8] Kalmbacher, *supra* n. 3; Houghtaling, *supra* n. 3.

 

waiver. If you have any questions regarding this response or the Request, please do not hesitate to contact us.

Very truly yours,

/s/ Chris Opila                                      _/s/ Rex Chen_____
Christopher ("Chris") Opila                 Rex Chen
Staff Attorney (Transparency)           Supervising Counsel for Immigrant Rights
American Immigration Council          LatinoJustice PRLDEF
PMB2026                                             475 Riverside Drive, Suite 1901
2001 L Street N.W., Suite 500          New York, NY 10115
Washington, DC 20036                      212-219-3360 | rchen@latinojustice.org
202-507-7699 | copila@immcouncil.org

Enclosures:

    A.  FOIA Request No. 2025-84742
    B.  2025-84742 Expedited Processing Denial
    C.  2025-84742 Notice of Intent to Close Administratively

Exhibit F

| | |
|---|---|
| **From:** | Perez Santiago, Jeniffer (EOIR) |
| **To:** | Chris Opila |
| **Cc:** | Raul Pinto; Rex Chen |
| **Subject:** | FW: DOJ-EOIR FOIA Request # 2025-84742 |
| **Date:** | Thursday, August 28, 2025 12:44:49 PM |

---

**External sender** <jeniffer.perez.santiago@usdoj.gov>
Make sure you trust this sender before taking any actions.

Good afternoon,

Thank you for your email.  Your request as-filed would require the Executive Office for Immigration Review to conduct an unreasonably burdensome search. DOJ regulations state that, "[t]o the extent possible, requesters should include specific information that may assist a component in identifying the requested records, such as the date, title or name, author, recipient, subject matter of the record, case number, file designation, or reference number" and also that "requesters should include as much detail as possible about the specific records or the types of records that they are seeking." 28 C.F.R. § 16.3(b).  For this Office to respond to your request, EOIR would have to:

1. You are seeking "all emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, **and other similar communication records**".  In this case, you have not defined the specific records or the types of records that you are seeking that's why we suggested to limit the scope to emails and calendar entries taking into consideration EOIR's capabilities for searching.  Also, you can provide search terms based on your topic.

2. In addition, you provided a list of the following custodian to be searches:
   a. The Chief Immigration Judge
   b. Regional Deputy Chief Immigration Judge ("RDCJ");
   c. An Assistant Chief Immigration Judge ("ACIJ");
   d. or a Court Administrator.

   EOIR currently has 72 courts.  Each court has a CA and could have several ACIJs, there are several RDCJs and one CIJ.  This search will include over 150 email accounts for a period over 4 months.

With regards your expedited request.  The FOIA regulations states that expedited treatment is granted if there is an exceptional need such as jeopardy to life or personal safety, a threatened loss of substantial due process rights, or an urgency to inform the public concerning actual or

alleged Federal Government activities. *See* 28 C.F.R. § 16.5(e).

Upon review of your request, it has been determined that you did not meet the threshold. Therefore, your request for expedited treatment has been denied.

If you need any further assistance or would like to discuss any aspect of your request, please contact the EOIR FOIA Service Center or FOIA Public Liaison at **EOIR.FOIArequests@usdoj.gov**. Alternatively, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at (877) 684-6448; or facsimile at (202) 741-5769.

If you are not satisfied with the EOIR's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website https://www.justice.gov/oip/submit-and-track-request-or-appeal.Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,

**Jeniffer Pérez Santiago**
Associate General Counsel for FOIA
Office of the General Counsel
Executive Office for Immigration Review
Department of Justice
5107 Leesburg Pike, Suite 2600
Falls Church, VA 22041

---

**From:** Chris Opila <COpila@immcouncil.org>
**Sent:** Monday, August 18, 2025 2:49 PM
**To:** Perez Santiago, Jeniffer (EOIR) <Jeniffer.Perez.Santiago@usdoj.gov>
**Cc:** Raul Pinto <RPinto@immcouncil.org>; Rex Chen <rchen@latinojustice.org>

**Subject:** [EXTERNAL] RE: DOJ-EOIR FOIA Request # 2025-84742

Hi Jeniffer,

Please find attached a response from the American Immigration Council and LatinoJustice regarding EOIR's concern with this request's description. Our response also renews our application for expedited processing and supplements the record for that application.

Let me know if you have any additional questions or concerns. I look forward to working with you to get this request processed expeditiously.

Best,

Chris

**Chris Opila**
*Staff Attorney (Transparency)*
Pronouns: he/him/his
202-507-7699 | copila@immcouncil.org

**American Immigration Council**
www.AmericanImmigrationCouncil.org
www.ImmigrationImpact.com

**Help us build a more welcoming country. Check out our national campaign.**

---

**From:** jeniffer.perez.santiago@usdoj.gov <jeniffer.perez.santiago@usdoj.gov>
**Sent:** Tuesday, August 5, 2025 11:46 AM
**To:** Chris Opila <COpila@immcouncil.org>
**Cc:** jeniffer.perez.santiago@usdoj.gov
**Subject:** DOJ-EOIR FOIA Request # 2025-84742

**External sender** <jeniffer.perez.santiago@usdoj.gov>
Make sure you trust this sender before taking any actions.

Re:     2025-84742
Dear Christopher Opila,
This correspondence is in response to your Freedom of Information Act (FOIA) request dated July 28, 2025 to the Executive Office for Immigration Review (EOIR) in which you seek all emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records 2 between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records. A: The Chief Immigration Judge; A Regional

Deputy Chief Immigration Judge ("RDCJ"); An Assistant Chief Immigration Judge ("ACIJ"); or a Court Administrator. B: ICE Director;ICE Deputy Director; ICE Chief of Staff; ICE Associate Director of Enforcement and Removal Operations ("ERO"); The Director of ERO Field Operations; An Assistant Director of ERO Field Operations; An ERO Field Office Director; or an ERO Field Office Deputy Director. C: Expedited removal; an ICE enforcement operation in or near an immigration court; an ICE arrest in or near an immigration court; or dismissal or termination of immigration cases or proceedings in immigration court. (Date Range for Record Search: From 04/01/2025 To 07/28/2025).

EOIR cannot process your request at this time as it does not reasonably define a set of records to search as required by the FOIA and DOJ regulations. 5 U.S.C. § 522(a)(3); 28 C.F.R. § 16.3(b). DOJ regulations state that, "[t]o the extent possible, requesters should include specific information that may assist a component in identifying the requested records, such as the date, title or name, author, recipient, subject matter of the record, case number, file designation, or reference number" and also that "requesters should include as much detail as possible about the **specific records or the types of records that they are seeking.**" 28 C.F.R. § 16.3(b). **Some of the ways to narrow your request is to limit the search to only emails or calendar entries.**

Your request requires clarification and is on hold. Please contact EOIR to clarify your request. If we do not hear from you within 30 calendar days of this notice, we will assume that you are no longer interested, and your request will be administratively closed.

If you need any further assistance or would like to discuss any aspect of your request, please contact the analyst who processed your request or the EOIR FOIA Public Liaison at EOIR.FOIArequests@usdoj.gov. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at (877) 684-6448; or facsimile at (202) 741-5769.

Sincerely,

Jeniffer Perez Santiago
Attorney Advisor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Exhibit G

AMERICAN IMMIGRATION COUNCIL, *et al.*,

          *Plaintiffs,*

    v.

EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,

          *Defendant.*

Civil Action No. 23-cv-1952 (RC)

**DECLARATION OF JENIFFER PEREZ SANTIAGO, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**

## I.     INTRODUCTION

I, Jeniffer Pérez Santiago, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am Associate General Counsel for FOIA and Acting Senior FOIA Litigation Counsel under the Office of the General Counsel (OGC) at the Executive Office for Immigration Review (EOIR). I have held this position for approximately two years. I also serve as the Acting Supervisor for the FOIA Unit as needed. Prior to this position, I was a Senior FOIA Analyst for the Consumer Financial Protection Bureau (CFPB) in which I conducted quality control reviews for all FOIA requests. In addition, I trained the FOIA team, stakeholders and senior CFPB personnel on FOIA related matters. I held the position from March 2020 through October 2021. Prior to my position at CFPB, I was a Senior FOIA Analyst for the Department of Energy where I processed complex FOIA requests, appeals and litigation. I held that position from May 2019 through March 2020.

2.     The EOIR FOIA Unit is responsible for executing EOIR's FOIA Program
pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act
("PA"), 5 U.S.C. § 552a. The EOIR FOIA Unit is comprised of a FOIA Service Center and
a separate group of FOIA Attorney Advisors with support staff.

3.     In my role as Associate General Counsel (FOIA), my official duties and
responsibilities include creating and implementing policy and procedures for the EOIR
FOIA Program, conducting FOIA training for EOIR personnel, processing complex
FOIA requests and providing litigation support to Assistant U.S. Attorneys defending
the agency in FOIA litigation matters and appeals.  In connection with my official
duties, I am familiar with EOIR's procedures for responding to requests for information
pursuant to provisions of the FOIA and the Privacy Act.  In that respect, I am familiar
with the FOIA request made by Plaintiffs dated October 28, 2022 that is attached as
Exhibit A to the Complaint (the "FOIA Request" 2023-03932). The statements
contained in this declaration are based upon my personal knowledge, my review of
records kept by EOIR in the ordinary course of business, and information provided to
me by other EOIR employees in the course of my official duties.

## II.     DESCRIPTION OF EOIR'S FOIA PROGRAM

4.     EOIR's FOIA Program operates as a bifurcated system based on whether a FOIA
request is designated as "Simple" (or Track 2) or "Complex" (or Track 3), under a multi-
tracking system.[1] FOIA intake is managed by a FOIA Service Center and is comprised of

---

[1] EOIR's FOIA Program also maintains an "Expedited" (or Track 1) multi-track designation in
which a request can either be Complex or Simple; however, Expedited requests have generally
made up less than 20 requests per year over the last 5 years. In practice, "expedited" merely means
that the request moves to the front of the queue in either the Complex track (Track 3) or the Simple
track (Track 2).

government information professionals and contractors. The FOIA Service Center processes all Simple requests. One supervisory attorney advisor, two associate general counsels, including me,[2] one attorney advisor, one legal assistant, and one part-time specialized contractor within OGC manage and process substantially all Complex requests.[3] Simple requests are generally first- or third-party requests seeking a Respondent's Record of Proceeding ("ROP") generated by an immigration proceeding, including Immigration Judge decisions and orders and Board of Immigration Appeals ("BIA" or "Board") decisions related to a particular Respondent. Complex requests are generally requests seeking agency records other than ROPs and generally require collection of records from one or more program offices (including field offices), involve a search for numerous records necessitating a wide-ranging search, and/or involve processing of voluminous records. In accordance with standard FOIA processing practice, FOIA requests are processed in the order received absent a grant of "Expedited" (Track 1) processing, generally referred to as a "First-in, First-out" system.

5.    Historically, Simple requests (i.e., requests for ROPs) comprise over 95% of FOIA requests received at the EOIR FOIA Service Center. In Fiscal Year (FY) 2018, EOIR received 52,432 FOIA requests and had a backlog of 2,403 requests. In FY2019, EOIR received 55,499 FOIA requests and had a backlog of 9,155 requests. In FY2020, EOIR received 48,885 FOIA requests and had a backlog of 10,923 requests. In FY2021, EOIR received 60,996 FOIA requests and had a backlog of 29,735 requests. In FY2022, EOIR received 56,544 FOIA requests and had a backlog of 47,070 requests. In FY2023, EOIR received 70,475 FOIA requests and had a backlog of 21,623 requests. See

---

[2] One of the Attorney Advisors has been on detail since February 2022.
[3] Infrequently, attorneys within OGC who are not part of the FOIA Unit will be tasked on Complex requests if resources allow.

https://www.justice.gov/oip/reports-1.

6.     EOIR's FOIA Program for processing FOIA requests begins with the FOIA

Service Center. A FOIA request may be submitted through an on-line portal, known as the

Public Access Link ("the PAL") or by other submission means. The FOIA request is received

or logged in by FOIA intake personnel into an electronic database, and a control number is

automatically assigned. FOIA intake personnel briefly review the FOIA request to make an

immediate determination on whether the request seeks a ROP, in which case it is designated

as Simple (Track 2), or other agency records, in which case it is designated as Complex

(Track 3).[4] The requester then receives an acknowledgment letter if submitted through an on-

line portal, or, alternatively FOIA intake personnel send an acknowledgment letter or a

combined acknowledgement/response letter to the requester. The acknowledgement letter

includes the control number and other information related to fees, multi-tracking, approximate

time to process, and resources to assist the requester. The processing of Simple requests

remains within the FOIA Service Center for the life of the request until closed. All Complex

requests are forwarded to the supervisory attorney advisor overseeing the FOIA Program for

managing, processing, and/or delegating, and such Complex requests remain within OGC for

the life of the request until closed.

7.     For Simple requests, or first- or third-party requests for ROPs, the first step is to

identify the physical location of the ROP by entering a unique Respondent number into the

agency's CASE database.[5]  Generally, a ROP is located in one of three locations: (1) within

---

[4] Requests for expedited processing are sent to the Complex request attorneys for a legal
determination on whether the requester is entitled to expedited processing.
[5] Case Access System for EOIR ("CASE") is the electronic case manager for the EOIR
Immigration Courts, Board of Immigration Appeals ("BIA"), and staff to support case
management.

4

one or more of the 15 Federal Records Centers ("FRC") (long-term storage facilities) geographically located throughout the contiguous United States; (2) within the 70 Immigration Courts and/or Immigration Adjudication Centers geographically located throughout the United States and its territories; or (3) within Headquarters, if the Respondent filed an appeal of a lower court decision. If located, the FOIA Service Center will order or retrieve the physical file ROP, scan and process its contents, and provide responsive records, if any, to the requester.[6]

8.      First-party requests for ROPs require verification of identity that the requester, or his or her representative, has authorization to receive the ROP since the records contained therein include a substantial amount of personally identifiable information (PII) and are essentially analogous to Privacy Act records. On the agency's website, EOIR advises: "To ensure that privacy protected information is not improperly released, a request seeking records regarding yourself must verify your identity. The FOIA Service Center recommends providing a notarized original signature or submitting an originally signed Form DOJ-361, Certification of Identity." *See* https://www.justice.gov/eoir/foia-submit a request#How do I request records about myself?. If the requester submits proper verification of identity for the ROP requested, EOIR provides an unredacted copy of the entire contents of the official record of immigration proceedings.

9.      Third-party requests for ROPs are by definition requests for ROPs without verification of identity. In those situations, EOIR may take one of two approaches to respond to the requester depending on the public interest related to the subject of the ROP. In the first

---

[6] Since 2018, EOIR has been creating electronic versions of ROPs for Respondents newly entering immigration proceedings, or "eROPs"; however, less than 2% of FOIA requests have eROPs as of the date this declaration was signed.

5

approach, EOIR may issue a partial grant providing a redacted copy of an immigration judge decision or order within the ROP if the Respondent is the subject of a precedential BIA or Attorney General published decision. *See* https://www.justice.gov/eoir/ag-bia-decisions. In that situation, the public interest weighs in favor of partial disclosure notwithstanding the lack of a verification of identity in view of the publicly available published decision. In the second approach, EOIR may issue a so-called Glomar response, meaning the agency neither confirms nor denies existence of any record related to the Respondent identified by the requester. *See Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976). In this situation, the privacy interest of the individual identified by the requester outweighs any public interest in acknowledgement that the agency maintains any record related to the identified Respondent assuming any such record exists.

10.     The FOIA Service Center provides status updates on all current FOIA requests through the PAL, phone, and email. The PAL provides updates automatically upon every action in the record as the request is being processed. Per EOIR's procedures, once a call is received, the person that takes the call will add a note regarding the call in FOIAXpress within the "Notes" section.  The email inbox also provides status request updates and accepts new FOIA requests.

11.     For Complex requests, the first step is to identify which program offices, based on experience and knowledge of EOIR's program offices, within EOIR are reasonably likely to possess records responsive to that request (assuming any exist) and to initiate searches within those program offices. Once the appropriate program office(s) is/are identified for a given request, FOIA points of contact ("FOIA POCs") within each of those program offices are provided with a copy of the FOIA request and/or a detailed description of the request. The

FOIA POC(s) then review(s) the FOIA request along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward(s) the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any.

12.     EOIR's organizational chart illustrates that the agency is organized as follows: the Office of the Director ("OOD") and seven components thereunder, specifically, the BIA, the Office of the Chief Administrative Hearing Officer ("OCAHO"), the Office of the Chief Immigration Judge ("OCIJ"), the Office of the General Counsel ("OGC"), the Office of Administration ("OA"), the Office of Information Technology ("OIT"), and the Office of Policy ("OP"). *See* https://www.justice.gov/eoir/eoir-organization-chart/chart. Several sub-components fall under OOD, including the Planning, Analysis, and Statistics Division ("PASD"), the Office of Legal Access Programs ("OLAP"), and the Office of Equal Employment Opportunity ("EEO"). *See* https://www.justice.gov/eoir /office-of-the-director. Additionally, several sub-components fall under OP, including, the Communications and Legislative Affairs Division ("CLAD"), the Immigration Law Division ("ILD"), and the Legal Education and Research Services Division ("LERS").

13.     In accordance with the EOIR FOIA Unit's instructions, the individuals and component offices are directed to conduct searches of their file systems, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would be the file systems likely to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the FOIA supervisory attorney advisor, me, other associate general counsel, or attorney advisor, who manage,

process, and/or delegate tasking of Complex (Track 3) requests.

### III.    PROCESSING OF THE FOIA REQUEST

14.    I have reviewed Plaintiffs' FOIA Request dated October 28, 2022, which is attached as Exhibit A to the Complaint (and Exhibit A to this declaration). The request sought the following information:

*1. For the period between January 1, 2017, to the present, we request EOIR records of guidelines, procedures, protocols, or policies relating to the following:*

*a. Immigration courts' process and criteria used to advance the date of individual merit hearings. This includes, but is not limited to, immigration court clerks' advancement of individual merit hearing dates.*

*b. Immigration judges' adjudication of motions to continue individual merit hearings when the basis for continuances relate to the following:*

*i. Attorney has a case-related scheduling conflict; or*

*ii. Attorneys' workload or case-related conflicts that may prevent case preparation, such as having multiple hearings scheduled with EOIR within a short period of time or case appointments with other agencies, e.g. client interviews with U.S. Citizenship and Immigration Services (USCIS).*

*c. Immigration courts' process for notifying respondents, respondents' representatives, or both, that individual merit hearings have been advanced.*

*d. Court personnel's process for selecting a new hearing date when an individual merit hearing is advanced, including materials that describe how to input rescheduling information in attorneys' EOIR ECAS calendar.*

e. The agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled "Good Cause for a Continuance in Immigration Proceedings."

2. Aggregate data since January 1, 2020, that includes the following:

a. The number of cases in the EOIR system that have been marked with idnAdjCode 87, strCode 55, strDescription "HEARING DELIBERATELY ADVANCED BY COURT."

b. The number of cases in the EOIR system that have been marked with idnAdjCode 107, strCode 9B, strDescription "DOCKET MANAGEMENT (ADVANCE HEARING)."

15.     The agency understood item 1 of the FOIA request to seeks records that constitute officially issued and centrally disseminated guidelines, procedures, protocols, or policies pertaining to the listed subitems. The request did not seek "all records related to" such guidelines, procedures, protocols, or policies such as, for instance, the application of such guidelines, procedures, protocols or policies in specific immigration cases.  Nor did it request documents regarding any practices related to the subject matter of the request that might be unique to specific immigration courts or immigration judges.  EOIR, moreover, has no reason to believe that individual immigration courts have enacted guidelines, procedures, protocols or policies related to the subitems specified in the request that would deviate from any centrally issued guidelines, procedures, protocols or policies, including those identified by EOIR in response to the FOIA request as referenced in paragraph 21 below.

16.     EOIR oversees seventy-two immigration courts across the country. There are several positions that form the Office of the Chief Immigration Judge (OCIJ)'s leadership.

9

The highest-level roles are the Chief Immigration Judge and the Regional Immigration Judges.  Each court is administered by an Assistant Chief Immigration Judge (ACIJ) and a Court Administrator (CA).  Any guidelines, procedures, protocols, or policies, as well as instructions on how to implement guidelines, procedures, protocols, or policies across the courts, must be channeled through EOIR's leadership and, to the extent any existed that were not published and publicly available (see paragraph 21 below), would be disseminated by EOIR leadership to all ACIJs and Court Administrators through ACIJ or Court Administrator group emails.

17.     Were Plaintiffs to contend that item 1 of the FOIA request seeks records beyond those that constitute officially issued and centrally disseminated guidelines, procedures, protocols or policies, the request fails to reasonably describe the records sought or would be unduly burdensome to process as there are seventy-two immigration courts receiving hundreds of thousands of cases in any given year, and it would be unduly burdensome for the agency to review the docket in each of those cases over the time period at issue in the request to try to identify any case-specific application of the type of guidelines, procedures, protocols or policies requested in the FOIA request.  Moreover, EOIR FOIA currently has approximately 4,712 open FOIA requests, some going back to 2020.  EOIR staff are working assiduously to reduce that backlog and conducting burdensome searches would interrupt the efforts of the agency to reduce the backlog.

18.     On October 28, 2022, acknowledgement correspondence was sent to Plaintiff by the FOIA Service Center advising that Plaintiff's request was assigned Control No. FOIA 2023-03932.   On December 9, 2022, the FOIA Office sent a request for records to OCIJ to search for records sought in the first part of the request. Because guidelines, procedures,

protocols or policies is disseminated by OCIJ leadership to the ACIJs and ACs, and the request was understood to be seeking centrally issued guidelines, procedures, protocols or policies documents, OCIJ was the office identified as being likely have the type of records that Plaintiffs sought in their request.

19.     With respect to item 1 of the request, a request was sent to then-Regional Deputy Chief Immigration Judge Sheila McNulty, Principal Deputy Chief Immigration Judge Daniel Weiss, Regional Deputy Chief Immigration Judge Daniel Daugherty, and Court Administrator Hunter Johnson to search for responsive records.  Because all of these individuals would be included on emails concerning guidelines, procedures, protocols or policies of the type requested in the FOIA request (to the extent any existed that were not published and publicly available), it was determined that it was not necessary for all of them to review their email for responsive records.  Instead, the Regional Deputy Chief Immigration Judge Sheila McNulty conducted a manual search of her email to assess whether any guidelines, procedures, protocols, or policies were disseminated over email during the timeframe of the request.  Judge Sheila McNulty was an Assistant Chief Immigration Judge from November 2015 to March 2021 and Regional Deputy Chief Immigration Judge from March 2021 to April 2023.  Then, she was appointed to the position of Chief Immigration Judge.  This made her the custodian that would likely have any records during this period for item 1 of the request. In all three positions, she would have either received, been copied, or sent all policy changes within OCIJ, including guidelines, procedures, protocols or policies related to the operation of the immigration courts not otherwise published and publicly available.

20.     Accordingly, only the emails of Ms. McNulty were searched because Ms. McNulty was, at the time of the search, the Chief Immigration Judge and she had been part of

leadership within OCIJ (either as Chief Immigration Judge or as a Regional Deputy Chief Immigration Judge), or was an ACIJ, during the date range of the request and thus either would be the sender or recipient of any emails that were sent to the ACIJ or Court Administrator group emails.    Judge McNulty located two emails responsive to this request through the manual search of her email.

21.    In addition, because EOIR publicizes guidelines, procedures, protocols, or policies concerning immigration courts, a search was done to identify any such publicly available documents.  That search included consulting with OCIJ leadership, including Ms. McNulty, as well as an attorney advisor within EOIR with knowledge of guidelines, procedures, protocols or policies applicable to the seventy-two immigration courts.   That search identified the following responsive records and links that are publicly available at EOIR's website and that satisfy subitems 1a-d of the request (i.e., constitute guidelines, procedures, protocols, and policies related to the subject matter in those subitems):

1. ECAS manual https://www.justice.gov/eoir/page/file/1300086/download

2. UDSM https://www.justice.gov/eoir/file/1157516/download in the Shared Practice Manual Appendices of the ICPM.

3. ICPM- Immigration Court Practice Manual https://www.justice.gov/eoir/book/file/1528921/download

4. Adjournment Code list for the clerical side  https://www.justice.gov/eoir/reference-materials/general/shared-appendices/o#:~:text=Appendix%20O%20-%20Adjournment%20Codes%20%20%20Code,not%20av%20...%20%2020%20more%20rows%20

5. Policy Memo 21-15 https://www.justice.gov/eoir/book/file/1356761/download

6. DM 22-05

7. Policy Memo 21-13, updates and replaces Operating Policies and Procedures

Memorandum (OPPM) 17-01 https://immpolicytracking.org/policies/eoir-director-gives-

additional-guidance-continuances-/#/tab-policy-documents

8. Policy Memo 21-06 https://www.justice.gov/eoir/page/file/1343191/download

9. Policy Memo 20-07 https://www.justice.gov/eoir/page/file/1242501/download

10. Policy Memo 19-11 https://www.justice.gov/eoir/reference-

materials/OOD1911/download

11. OPPM 17-01 https://www.justice.gov/eoir/file/oppm17-01/download

22.    As to the fifth subitem (item 1e), which sought records related to the agency's

implementation of the 11/27/2020 Notice of Proposed Rulemaking titled "Good Cause for a

Continuance in Immigration Proceedings," 85 FR 75925, it was determined that the notice of

proposed rulemaking had not, as of the time of the search in response to the FOIA request,

resulted in a final rulemaking.  Accordingly, EOIR did not locate any responsive records

related to that subitem of the request.

23.    As to item 2 of the request, on December 9, 2022, the FOIA Office sent a request

for records to the Planning, Analysis, and Statistics Division (PASD) to search for records

sought in that item of the request.  PASD would be the division within EOIR that maintains

data of the type described in item 2 of the request.  On December 12, 2022, PASD provided to

the FOIA Office an Excel spreadsheet with a table responsive to the second part of Plaintiff's

request. The table shows the number of hearings labeled with adjournment codes 9B and 55

from January 1, 2020, to December 9, 2022. PASD conducted a search of the automated

CASE system to generate this data. Adjournment code 9B corresponds to "Docket

Management (Advance Hearing) and 55 corresponds to "Hearing Deliberately Advanced by

Court.  Although adjournment code 55 was deactivated before the beginning of this timeframe, the table reflects the number of hearings that occurred during the timeframe specified, not when the adjournment codes were entered.

24.    EOIR issued a final response letter to the Plaintiffs on August 9, 2023, and that letter along with its enclosures is attached hereto as Exhibit B.  That letter included the data requested in item 2 of the request.  As to item 1 of the request, that letter identified numerous publicly available documents pertaining to policies applicable to immigration courts that were accessible from the internet (as identified in paragraph 21 above).  It also included an email chain encompassing two emails with limited redactions under Exemption 6 of FOIA.

25.    Following the filing of this lawsuit, and without conceding any inadequacy in its original search, EOIR agreed to conduct a supplemental search for electronic records with the Office of Information Technology (OIT).

26.    The search parameters used by the OIT for this search were the following.  The search was conducted of the emails of Sheila McNulty (encompassing emails in which she was the sender) and was limited to emails sent to either the group email address for all Assistant Chief Immigration Judges or the group email address of all Court Administrators. Emails sent from Sheila McNulty to both group email addresses  (and not simply one or the other) were also included in the search results.  The search was limited in this way because any emails of EOIR guidelines, procedures, protocols or policies across the immigration courts would be disseminated by EOIR leadership to those group email addresses.

27.    The search terms, which were drawn from the language of the request, were:

1.    Policy AND "advance" AND "merit hearings"

2.    Guidance AND "advance" AND "merit hearings"

3.    Protocol AND "advance" AND "merit hearings"

14

4.　　　Procedure AND "advance" AND "merit hearings"

5.　　　Policy AND "continue" AND "hearing"

6.　　　Guidance AND "continue" AND "hearing"

7.　　　Protocol AND "continue" AND "hearing"

8.　　　Procedure AND "continue" AND "hearing"

The date range of the search was 1/1/2017 through 10/28/2022, the latter being the date when

EOIR began processing this request.

27.　　　This search returned approximately 121 items. A responsiveness review was

conducted of those search results and the same emails that were previously identified from the

manual search described in paragraph 20 above were the only records identified as responsive

to the request.

28.　　　On June 20, 2024, EOIR initiated another OIT search in order to ensure that any

emails sent by Sheila McNulty's predecessors in the role as Chief Immigration Judge were

captured by the search.  Thus, the search was conducted of the emails of MaryBeth Keller  and

Tracy Short who served in the role of Chief Immigration Judge prior to Sheila McNulty.  Tracy

Short was Judge McNulty's immediate predecessor and held the Chief Immigration Judge

position from June 2020 to July 2022, and was preceded in that role by MaryBeth Keller,

who held the position from September 2016 to July 2019.   Sheila McNulty's email also was

searched again to ensure that the search of her email was consistent with this supplemental

search.  This supplemental search  was limited to emails sent to, received by, or copied to

either the group email address for all Assistant Chief Immigration Judges or the group email

address  of all Court Administrators.  The search terms were identical to the first OIT search

terms described in paragraph 27.

29.     The second search returned approximately 202 items. A responsiveness review was conducted of those search results and the same emails that were previously identified from the manual search described in paragraph 20 above were the only records identified as responsive to the request. The fact that no additional records were found after a second, more expansive OIT search was conducted further confirms the adequacy of the search.

30.     Pertaining to exemption 6 of the FOIA applied to the released records, the redactions consisted of employee email addresses and a group email address to all ACIJs. Exemption 6 protects individuals from unwarranted invasions of personal privacy, including where disclosure of such email addresses could result in harassment of employees by the public. The group email address withheld could similarly be used to harass every ACIJ in the country at once. Given the nature of the work conducted by EOIR, the agency determined that the employees have a privacy interest in their work email addresses and that there is no corresponding public interest in disclosure of that information. Accordingly, those email addresses were withheld under Exemption 6 of FOIA. The agency also determined that foreseeable harm would result from disclosure of those email addresses in light of the potential for harassment. The redactions to the released records were minimal and all reasonably segregable, non-exempt information was provided to the requester.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated the 19th day of July 2024.

JENIFFER PEREZ
SANTIAGO
Digitally signed by JENIFFER
PEREZ SANTIAGO
Date: 2024.07.19 11:32:35
-04'00'

Jeniffer Pérez Santiago
Associate General Counsel (FOIA)
Acting Sr. FOIA Litigation Counsel

Exhibit H

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| AMERICAN IMMIGRATION COUNCIL, *et al.*, | : | | |
| | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 23-1952 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 25, 26 |
| | : | | |
| EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, | : | | |
| | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT

### I. INTRODUCTION

Plaintiffs are nonprofit organizations that advocate for fair and just administration of

United States immigration laws. These organizations claim that immigration judges sometimes

advance the date of immigration court hearings, and that this practice interferes with noncitizens'

access to counsel during those proceedings. Plaintiffs filed a Freedom of Information Act

("FOIA") request with the Executive Office of Immigration Review ("EOIR") for policy

documents regarding advancement of hearings, motions to continue, and related issues. After

EOIR failed to respond, Plaintiffs filed this lawsuit. The agency subsequently conducted manual

and keyword searches of email accounts belonging to current and former Chief Immigration

Judges. EOIR also searched an intranet site location where policy documents are commonly

stored. Plaintiffs claim that EOIR construed the scope of its request too narrowly, and that its

search for responsive documents was inadequate.  EOIR asserts that it properly construed

Plaintiffs' FOIA request and that its search was reasonable and adequate.  The Court concludes

that EOIR properly understood the scope of Plaintiffs' FOIA request with respect to records

sought within the Office of the Chief Immigration Judge ("OCIJ").  EOIR nonetheless

misinterpreted the FOIA request to exclude records held by Assistant Chief Immigration Judges

("ACIJs"), and additional locations are likely to contain documents responsive to the request.  As

such, the Court grants in part and denies in part each party's motion for summary judgment and

directs the agency to conduct a supplemental search for responsive records.

## II.  FACTUAL BACKGROUND

Plaintiffs submitted a FOIA request to EOIR on October 28, 2022, seeking "records of

guidelines, procedures, protocols, or policies relating to" five subcategories of procedures

followed by immigration courts and judges, reaching back to January 1, 2017.  Def.'s Statement

of Undisputed Material Facts ("SUMF") ¶¶ 1–2, ECF No. 25-2.[1]  Those subcategories included

(1.a.) "[i]mmigration courts' process and criteria used to advance the date of individual merit

hearings"; (1.b.) "[i]mmigration judges' adjudication of motions to continue individual merit

hearings when the basis for continuances relate to" an attorney's "case-related scheduling

conflict" or "workload or case-related conflicts that may prevent case preparation"; (1.c.)

"[i]mmigration courts' process for notifying respondents, respondents' representatives, or both,

that individual merit hearings have been advanced"; (1.d.) "[c]ourt personnel's process for

selecting a new hearing date when an individual merit hearing is advanced"; and (1.e) "[t]he

---

[1] Item 2 of the FOIA request sought data indicating the number of cases advanced by immigration courts since January 1, 2020.  *See* SUMF ¶ 2.  As EOIR provided the data, that request is no longer at issue in this lawsuit.  *See* Pls.' Mem. in Supp. of Mot. Summ. J. and in Partial Opp'n to Def.'s Mot. Summ. J. ("Pls.' Mot.") at 4 n.3, ECF No. 26-1.

agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled
'Good Cause for a Continuance in Immigration Proceedings.'" *Id.* ¶ 2.

After EOIR failed to produce records in response to the FOIA request, Plaintiffs filed this
lawsuit on July 6, 2023. *See* Compl., ECF No. 1. EOIR understood the FOIA request to seek
"records that constitute officially issued and centrally disseminated guidelines, procedures,
protocols, or policies pertaining to the listed subitems." Santiago Decl. ¶ 15, ECF No. 25-3.
EOIR reasoned that responsive guidelines and policies would be disseminated by OCIJ, *id.* ¶ 18,
and that then-Regional Deputy Chief Immigration Judge Sheila McNulty's email account "would
be included on emails concerning guidelines, procedures, protocols or policies of the type
requested in the FOIA request," *id.* ¶ 19. Judge McNulty performed what EOIR describes as a
"manual search of her email" that located two responsive records. *Id.* ¶ 20. EOIR also
conducted a search for publicly available guideline and policy documents, identifying 11
responsive records. *Id.* ¶ 21. After this lawsuit was filed, EOIR conducted a supplemental
search of email accounts belonging to Judge McNulty, who had since been appointed as Chief
Immigration Judge, and her two predecessors reaching back to September 2016. *Id.* ¶¶ 26–28.
These searches returned an aggregate of 323 items, *id.* ¶¶ 27, 29, "and the same emails that were
previously identified from the manual search described in paragraph 20 above were the only
records identified as responsive to the request." *Id.* ¶ 29. EOIR declined to search for records
responsive to subpart 1.e. of the FOIA request—which sought policy and procedure documents
implementing a proposed rule—because "it was determined that the notice of proposed
rulemaking had not, as of the time of the search in response to the FOIA request, resulted in a
final rulemaking." *Id.* ¶ 22.

Following further filings in this case, EOIR conducted an additional search of its "intranet site for guidelines, procedures, protocols and policies" by surveying the Administration and Policy tab, "where policies related to immigration courts would be stored." Suppl. Santiago Decl. ¶ 6, ECF No. 29-2. This search identified a single link to EOIR's public-facing website, which included documents EOIR had already provided to Plaintiffs. *Id.*

EOIR filed a motion for summary judgment, arguing that its search was adequate, that it properly invoked FOIA Exemption 6 regarding certain employees' email addresses, and that it complied with FOIA's segregability requirement. *See generally* Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 25-1. Plaintiffs filed a cross-motion for summary judgment, asserting that EOIR improperly narrowed the scope of its FOIA request, that the agency did not search all repositories likely to contain responsive records, and that its searches were not reasonably calculated to uncover all responsive documents. *See generally* Pls.' Mem. in Supp. of Mot. Summ. J. and in Partial Opp'n to Def.'s Mot. Summ. J. ("Pls.' Mot."), ECF No. 26-1

## III.  LEGAL STANDARD

The Freedom of Information Act is meant "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). It "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). "Consistent with the Act's goal of broad disclosure," those exemptions should be "given a narrow compass." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989). "The agency bears the burden of

establishing that a claimed exemption applies." *Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

Because FOIA cases do not ordinarily involve disputed facts, they "are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing whether the movant has met that burden, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (citations omitted). "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure.'" *Hardy v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (cleaned up) (quoting *Pub. Citizen Health Rsch. Grp. v. Food and Drug Admin.*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

## IV. ANALYSIS

The parties' cross-motions for summary judgment focus on EOIR's interpretation of the FOIA request and the depth of its search for responsive records. The Court first addresses Plaintiffs' claim that EOIR improperly construed its FOIA request, concluding that EOIR misinterpreted the scope of the request in part. The Court then considers whether EOIR's search for records was adequate and reached all repositories likely to contain responsive records, determining that EOIR adequately searched for records within OCIJ, but that it must search for responsive rules and policies held by ACIJs that govern specific individual immigration courts.

Because Plaintiffs do not dispute the application of Exemption 6 or that the agency satisfied its

segregability obligations, the Court grants EOIR summary judgment on those issues.

### A. Scope of the Request

Plaintiffs contend that EOIR's search for solely "officially issued" and "centrally

disseminated" guidance documents improperly narrowed their request.  *See* Pls.' Mot. at 8.

According to Plaintiffs, this limitation "excludes informal and unofficial records of guidelines,

procedures, protocols, or policies that reasonably fall within the scope of Plaintiffs' request."  *Id.*

They additionally argue that the "'centrally disseminated' limitation excludes court- and judge-

specific" records.  *Id.* at 9.  EOIR responds that it properly interpreted the text of Plaintiffs'

FOIA request to seek centrally issued records, and not unofficial policies or case-specific

documents.  *See* Def.'s Reply in Supp. Def.'s Mot. Summ. J. and Opp'n to Pls.' Cross-Mot.

("Def.'s Reply") at 1–5, ECF No. 29.  The Court determines that Plaintiffs requested only

official records, but that EOIR improperly limited the scope of the request to records circulated

by OCIJ.

A FOIA requester has an obligation to "reasonably describe[]" the records sought.  5

U.S.C. § 552(a)(3).  An agency, in turn, "is bound to read [a FOIA] request as drafted, not as

agency officials . . . might wish it was drafted."  *Urb. Air Initiative, Inc. v. Env't Prot. Agency*,

271 F. Supp. 3d 241, 255 (D.D.C. 2017) (cleaned up) (quoting *Miller v. Casey*, 730 F.2d 773,

777 (D.C. Cir. 1984)).  "[A]n agency also has a duty to construe a FOIA request liberally."

*Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)

(quoting *Truitt v. Dep't of State*, 897 F.2d 540, 544–45 (D.C. Cir. 1990)).  "In determining the

proper scope of a FOIA request, '[t]he linchpin inquiry is whether the agency is able to

determine 'precisely what records (are) being requested.'"  *Conservation Force v. Ashe*, 979 F.

Supp. 2d 90, 100 (D.D.C. 2013) (quoting *McKinley v. Fed. Deposit Ins. Corp.*, 807 F. Supp. 2d

1, 5 (D.D.C. 2011)); *see also American Chemistry Council, Inc. v. U.S. Dep't of Health &*

*Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) ("Agencies . . . need not expand their

searches beyond 'the four corners of the request,' nor are they 'required to divine a requester's

intent.'" (quoting *Landmark Legal Found. v. Env't Prot. Agency*, 272 F. Supp. 2d 59, 64 (D.D.C.

2003))).

Plaintiffs requested "EOIR records of guidelines, procedures, protocols, or policies

relating to" a series of immigration court practices, including advancement of merits hearing

dates, adjudication of motions to continue, notification of parties, and selection of new hearing

dates following advancement. SUMF ¶¶ 1–2. EOIR argues that Plaintiffs' targeting of

guidelines, procedures, protocols, and policies reaches only "official" documents, as those forms

of documents are official "by their nature." Def.'s Reply at 3. The Court agrees with this

interpretation of the FOIA request. Plaintiffs contend that the text of their request is broader

because it defines "records" to include a wide range of media. *See* Pls.' Reply in Supp. of Pls.'

Mot. Summ. J. and Surreply in Partial Opp'n to Def.'s Mot. Summ. J. ("Pls.' Reply") at 5, ECF

No. 31; Ex. A to Compl., ECF No. 1-1. But the scope of requested documents cannot be

broadened by a generic footnote advising the agency that Plaintiffs sought the records in any

available form. Plaintiffs additionally fail to broaden the scope by emphasizing the words

"related to" in the request. *See id.* The request does not seek records relating to the guidelines or

policies, but rather guidelines or polices related to certain topics. Plaintiffs thus sought the

policy records themselves, not a broader scope of documents related to those records.

The Court does not agree, however, with EOIR's stance that Plaintiffs requested solely

centrally disseminated records. EOIR explains that, in its view, "guidelines, procedures,

7

protocols and policies related to continuance or advancement of individual merit hearings . . . are promulgated by the Office's leadership within its Office of Chief Immigration Judge, not individual immigration courts and judges."  Def.'s Reply at 2 (citing Santiago Decl. ¶¶ 15–16 and Suppl. Santiago Decl. ¶¶ 2–3, 9).  Plaintiffs contend, however, that they seek localized policies, as well.  *See* Pls.' Reply at 2.  After all, Plaintiffs sought records of procedures and policies employed by immigration courts and immigration judges, not just policies issued by OCIJ.  *See* SUMF ¶ 2.  Plaintiffs also include examples of standing orders issued by individual immigration courts, some of which set policies for continuances, appearances, and filings.  *See* Ex. C to Pinto Decl., ECF No. 26-3.  Several provisions of the Code of Federal Regulations imply that individual immigration courts oversee scheduling of their own matters.  While the EOIR Director and Chief Immigration Judge have the power to issue some operational instructions and policies regarding case management, *see* 8 C.F.R. § 1003.0(b); 8 C.F.R. § 1003.9(b), "[t]he Immigration Court shall be responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings."  8 C.F.R. § 1003.18(a).  An individual immigration court may also "establish local operating procedures" with the concurrence of a majority of the judges of that court and the Chief Immigration Judge's approval "in writing."[2]  8 C.F.R. § 1003.40.  These provisions demonstrate that responsive records are likely to exist within individual immigration courts rather than within OCIJ alone.  Thus,  EOIR's decision to search within OCIJ alone improperly narrowed the scope of Plaintiffs' request.

---

[2] While this regulation contemplates written Chief Immigration Judge approval, the standing orders in the record contain signatures only from Assistant Chief Immigration Judges and individual immigration judges.  *See* Ex. C to Pinto Decl.  It thus appears that these orders may sometimes be approved by Assistant Chief Immigration Judges and would not necessarily appear in the Chief Immigration Judge's email account.

Finally, Plaintiffs contend that "Defendant has not offered sufficient foundation for determining that records responsive to Item 1.e do not exist." Pls.' Mot. at 13. This portion of the request sought "records of guidelines, procedures, protocols, or policies relating to . . . [t]he agency's implementation of the November 27, 2020, Notice of Proposed Rulemaking titled 'Good Cause for a Continuance in Immigration Proceedings.'" SUMF ¶ 2. Plaintiffs point to an "operative policy for continuances" that directs immigration judges to the proposed rule. Pls.' Mot. at 12–13. Yet the policy document clarifies that "the proposed regulatory changes" in the notice of proposed rulemaking "are not in effect." Ex. J. to Pinto Decl. at 239.[3] Plaintiffs' request is itself difficult to parse, as it is not easy to understand how an agency might issue guidelines, procedures, protocols, or policies relating to implementation of a rule that has not yet been promulgated. Plaintiffs do not clearly describe the records they search for, other than to speculate that EOIR "may have implemented aspects of the proposed rule through other means." Pls.' Reply at 5. This vague language does not "reasonably describe[]" the records sought. 5 U.S.C. § 552(a)(3). As such, it is not surprising that the agency struggled to "determine 'precisely what records (are) being requested,'" *Ashe*, 979 F. Supp. 2d at 100, and that it was unable to produce responsive documents.

For these reasons, the Court determines that EOIR properly construed Plaintiffs' FOIA request as to records held by OCIJ and complied with its obligations when it declined to search for records relating to implementation of a rule that has yet to come into effect. EOIR nonetheless should have expanded the scope of its search to reach records likely to be held by Assistant Chief Immigration Judges that govern individual immigration courts. These courts

---

[3] Because the exhibits attached to the Pinto Declaration form a single PDF, the Court refers to the page numbers generated by CM/ECF.

may establish their own local operating procedures that regulate the scheduling of cases, as Plaintiffs have demonstrated.

## B.  Adequacy of EOIR's Search

Plaintiffs contend that EOIR's search for responsive records was inadequate because the agency did not search all repositories likely to contain responsive records and because its search methods were not likely to find all responsive documents.  *See* Pls.' Mot. at 12–20.  Plaintiffs assert, for instance, that EOIR should have searched email accounts belonging to ACIJs, as well as accessible shared drives.  *See id.* at 14.  They also argue that EOIR's description of Judge McNulty's manual search was insufficient, and that the agency's keyword search was unreasonable.  *See id.* at 14–19.  EOIR responds that its search methods were reasonable and tailored to Plaintiffs' request.  *See* Def.'s Reply at 6–13.  The Court determines that EOIR's search for records within OCIJ was adequate, but that the agency must search for responsive records within ACIJ accounts and shared drives, which are more likely to contain local immigration court orders responsive to Plaintiffs' FOIA request.

An agency responding to a FOIA request must conduct an adequate search; that is, a search "reasonably calculated to uncover all relevant documents."  *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (quoting *Morley*, 508 F.3d at 1114).  The adequacy of a search is generally "determined not by the fruits of the search, but [rather] by the appropriateness of [the search's] methods."  *Id.* (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)); *see also Ryan v. FBI*, 174 F. Supp. 3d 486, 490–91 (D.D.C. 2016) ("'There is no requirement that an agency seek every record system,' rather a search may be reasonable if it includes all systems 'that are likely to turn up the information requested.'" (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990))).  In other words, at summary

judgment, the pertinent question is not "whether there might exist any other documents possibly responsive to the request," but rather "whether 'the *search* for [the requested] documents was *adequate*.'" *In re Clinton*, 973 F.3d 106, 116 (D.C. Cir. 2020) (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg*, 745 F.2d at 1485. To demonstrate the adequacy of its search, "the agency may rely upon reasonably detailed, nonconclusory affidavits [or declarations] submitted in good faith." *Id.* The affidavits or declarations should "explain the scope and method of [the agency's] search 'in reasonable detail.'" *Leopold v. CIA*, 177 F. Supp. 3d 479, 486 (D.D.C. 2016) (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). What is more, they should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. Unless there is evidence to the contrary, "such affidavits or declarations are sufficient to show that an agency complied with FOIA." *Leopold*, 177 F. Supp. 3d at 486. On the other hand, if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see Leopold v. Dep't of Just.*, 130 F. Supp. 3d 32, 40 (D.D.C. 2015) ("Summary judgment based on affidavits is not warranted, however, if the affidavits are 'controverted by either contrary evidence in the record [or] by evidence of agency bad faith.'" (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))).

EOIR's methods to search for records within OCIJ were reasonably calculated to uncover guidance documents responsive to Plaintiffs' request. Judge McNulty first performed a manual

search of her email account.  Santiago Decl. ¶ 19.  That account was likely to contain any extant

records of guidelines, procedures, protocols, or policies relating to immigration court

advancement of merits hearings, motions to continue, and processes for selecting a new hearing

date because Judge McNulty would have been included on those communications when she

served in various leadership positions reaching back to 2015.  *See id.* ¶¶ 19–20.  EOIR then

conducted a keyword search of Judge McNulty's email, along with those of the two previous

Chief Immigration Judges.  *See id.* ¶¶ 25–29.  This included eight pairings of words such as

"Policy AND 'advance' AND 'merit hearings.'"  *Id.* ¶ 27.  This search identified the same

records Judge McNulty discovered in her earlier manual search, which the agency found to

"further confirm[] the adequacy of the search."  *Id.* ¶ 29.  EOIR then searched its intranet page

for responsive records.  Suppl. Santiago Decl. ¶ 6.  These "original and supplemental search

efforts, taken together, were reasonable."  *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78

F.4th 436, 444 (D.C. Cir. 2023).  By their nature, the requested records detailing EOIR policies

for immigration courts would be clearly identified and readily available in the agency's systems

rather than buried in files.  It is also unsurprising that the bulk of these documents would be

publicly available.  The limited nature of these records may reflect the significant discretion

EOIR provides to immigration judges in the management of their own dockets.  *See* 8 C.F.R.

§ 1003.18(a) ("The Immigration Court shall be responsible for scheduling cases and providing

notice to the government and the alien of the time, place, and date of hearings.").  For instance,

EOIR policy and procedure memoranda assert that the agency "has no policy" and "does not

possess authority" to require an immigration judge "to grant or deny a continuance request in

specific cases."  Ex. J to Pinto Decl. at 235.

Plaintiffs pick at potential shortcomings in some aspects of this search.  They argue, for instance, that the declarant's description of the manual search Judge McNulty performed lacks sufficient detail.  *See* Pls.' Mot. at 15.  Were this the only search the agency performed, the Court would almost certainly agree.  Yet the agency's subsequent searches and reasonably thorough descriptions of those searches, *see* Santiago Decl. ¶¶ 26–28; Suppl. Santiago Decl. ¶ 6, overcome any shortcomings in the breadth and presentation of the initial manual search.  *See Hodge*, 703 F.3d at 580 ("[B]y the time a court considers the matter, it does not matter that an agency's *initial* search failed to uncover certain responsive documents so long as subsequent searches captured them.").  Plaintiffs' objection to the keyword searches also fails to account for the entirety of the agency's search.  *See* Pls.' Mot. at 16–19.  Taken together with a manual search of the email account by its user, as well as a search of EOIR's posted office-wide policies, the agency's search of OCIJ for responsive documents was "reasonably calculated to uncover all relevant documents."  *Hodge*, 703 F.3d at 579.

EOIR has not conducted an adequate search, however, for responsive records that may exist outside of OCIJ.  The agency explains that it "has no reason to believe that individual immigration courts have enacted guidelines, procedures, protocols or policies related to the subitems specified in the request that would deviate from any centrally issued guidelines, procedures, protocols or policies."  Santiago Decl. ¶ 15; *see also* Suppl. Santiago Decl. ¶ 9 (stating that "EOIR has no reason to believe that ACIJs would be disseminating responsive guidelines . . . .").  The agency does not explain why this is so, particularly given that immigration courts may establish their own local operating procedures.  *See* 8 C.F.R. § 1003.40.  Plaintiffs additionally provide some local operating procedures that govern the scheduling of hearings and appear to be signed by ACIJs.  *See, e.g.*, Ex. C to Pinto Decl. at 147, 150.

13

Plaintiffs' FOIA request also specifically targeted procedures used by "[i]mmigration courts"
and "[i]mmigration judges" rather than EOIR-wide policies.  SUMF ¶ 2.  The Court is thus left
with "substantial doubt as to the sufficiency of the search," which precludes summary judgment.
*Truitt*, 897 F.2d at 542.

To render the search adequate, EOIR must conduct a search of "systems" outside OCIJ
"that are likely to turn up the information requested," *Ryan*, 174 F. Supp. 3d at 490–91, including
all ACIJ email accounts and shared drives where immigration courts would likely store standing
orders, *see* Def.'s Resp. to Pls.' Local R. 7(h) Statement ¶ K, ECF No. 30-1 (not disputing that
EOIR's systems contain shared drives); Ex. I to Pinto Decl. at 225 (discussing EOIR's use of
shared drives).  Plaintiffs have established that ACIJs often sign immigration courts' standing
orders.  *See generally* Ex. C to Pinto Decl.  This search is also not "unreasonably burdensome"
and would not require the agency to "boil[] the ocean in search of responsive records."  *Kowal v.
U.S. Dep't of Just.*, 107 F.4th 1018, 1029 (D.C. Cir. 2024) (citing *Nation Mag., Washington
Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891–92 (D.C. Cir. 1995)).  EOIR argues that seeking
"records at a case-specific level" would be unreasonably burdensome, *see* Def.'s Reply at 3, yet
it does not argue that this search of ACIJ accounts would represent an undue burden.[4]  At the
same time, Plaintiffs do not appear to ask the agency to search the hundreds of email accounts

---

[4] Although the agency does not discuss the issue in its briefing, its declarant explains that
searching ACIJ accounts would require the agency to identify "who was in the position of ACIJ
for each immigration court over a five-year time period," asserting "[t]hat number would
certainly exceed thirty-eight."  Suppl. Santiago Decl. ¶ 9.  Even if EOIR had argued in its
briefing that a search of ACIJ accounts would be too burdensome, the declarant's justification
does not represent a "detailed explanation by the agency regarding the time and expense of a
proposed search in order to assess its reasonableness."  *Prop. of the People, Inc. v. United States
Dep't of Just.*, 530 F. Supp. 3d 57, 63 (D.D.C. 2021) (quoting *Wolf v. CIA*, 569 F. Supp. 2d 1, 9
(D.D.C. 2008)); *see also People for Am. Way Found. v. U.S. Dep't of Just.*, 451 F. Supp. 2d 6, 13
(D.D.C. 2006) (finding the agency's burden met when manual search of 44,000 files was
estimated to take more than 25,000 hours to perform).

belonging to other immigration judges.  *See* Pls.' Mot. at 13–14.  A search of that breadth is likely unnecessary regardless, as ACIJs signed the standing orders Plaintiffs present to the Court, and these orders would therefore be present in ACIJ accounts and shared drives regardless.  *See* Ex. C to Pinto Decl.[5]

## V.  CONCLUSION

For the foregoing reasons, EOIR's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  EOIR conducted an adequate search for records within OCIJ, properly applied Exemption 6 to relevant records, and satisfied its segregability requirements.  EOIR must nonetheless conduct an additional search of record repositories outside OCIJ that may contain records responsive to items 1.a. through 1.d. of Plaintiffs' FOIA request.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 14, 2025                                          RUDOLPH CONTRERAS
                                                                             United States District Judge

---

[5] EOIR also argues that it would be unduly burdensome to require the agency to search individual immigration court dockets for responsive records.  *See* Def.'s Mot. at 6.  Plaintiffs clarify that they do not ask the agency to search dockets for immigration judges' actions in individual cases.  *See* Pls.' Mot. at 10.  The Court similarly interprets Plaintiffs' FOIA request to target broader policies and procedures rather than individual case files.  *See* SUMF ¶ 2.