Exhibit E

 

November 21, 2025

Via Office of Information Policy FOIA Star Portal & Certified Mail

Office of Information Policy (OIP)
United States Department of Justice
441 G Street, NW, 6th Floor
Washington, D.C. 20530

Re:    2025-84734 – Appeal of Final Response

Dear FOIA Appeals Officer:

The American Immigration Council (the "Council") and LatinoJustice PRLDEF (collectively, "Requesters") filed Request No. 2025-84734 with the Executive Office for Immigration Review ("EOIR") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, on July 28, 2025, and sought expedited processing. Ex. A.

The EOIR administratively closed the request on September 25, 2025, after its search did not locate any responsive records. Ex. B at 2. Requesters appeal the search underlying this response and seek expedited processing of their appeal for the reasons set forth in a separate letter.

## I.    REQUEST'S SCOPE

The Request seeks all guidance, instructions, policies, and other similar records[1] created by, provided to, or otherwise in the possession of EOIR for dismissing or terminating an immigration case or proceeding issued since January 20, 2025. Ex. A at 1.

## II.    AGENCY'S UNREASONABLE SEARCH

The EOIR's search for records responsive to the Request is unreasonable. The agency failed to follow obvious leads for responsive records or locate responsive records known to exist. On

---

[1] These records include but are not limited to guidance, instructions, policies, templates, and other similar records that take the form of an email sent by EOIR.ocij.all.of.acijs@doj365.onmicrosoft.com. *See* Julia Ainsely, *Trump Admin Tells Immigration Judges to Dismiss Cases in Tactic to Speed Up Arrests,* NBC News (June 11, 2025, 5:00AM), https://www.nbcnews.com/politics/national-security/trump-admin-tells-immigration-judges-dismiss-cases-tactic-speed-arrest-rcna212138 (referencing "memo" entitled "Guidance on Case Adjudication" sent over email on May 30, 2025); Mark Rivera et al., *ICE Arrests at Immigration Court in Chicago, Nationwide Labeled 'Unlawful' in New Lawsuit,* ABC 7 Chicago (July 18, 2025, 8:36 PM), https://abc7chicago.com/post/us-immigration-news-ice-arrests-courts-chicago-nationwide-labeled-unlawful-new-lawsuit-trump-administration/17186490/ (same).

information and belief, it also did not search locations and systems likely to contain responsive records or use appropriate search methods and search terms in the locations and systems it searched.[2]

A.   REASONABLE SEARCH STANDARD

The EOIR must "ma[k]e a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 687 (D.C. Cir. 1990). It "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998) (internal quotation marks omitted); *see also Oglesby*, 920 F.2d at 68 (requiring agencies to search "all files likely to contain responsive materials"). Nor may the EOIR ignore "obvious leads to discover requested documents," *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), including evidence for the existence of responsive emails, *Albalaldejo v. Immigr. & Customs Enf't*, 518 F. Supp. 3d 496, 502-04 (D.D.C. 2021).

Keywords for any electronic search must also be "reasonably calculated to uncover all relevant documents." *Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 101 F.4th 909, 923 (D.C. Cir. 2024). So, keywords may not be compound or plural, *Bader Family Found. v. U.S. Dep't of Educ.*, 630 F. Supp. 3d 36, 44 (D.D.C. 2022), or omit "obvious alternative terms," *Am. Oversight*, 101 F.4th at 923. The agency must also conduct iterative keyword searches, i.e. "use the responses … obtain[ed]" from one keyword search (or the lack thereof) "to generate more precise searches." *Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 113 (D.D.C. 2023).

A search is also unreasonable where it fails to locate known, responsive records. *Bader Family Found.*, 630 F. Supp. 3d at 42-43; *see also Ilturralde v. Comptroller of Currency*, 315 F.3d 311 (D.C. Cir. 2003) (placing "significant weight on the fact that a records search failed to turn up a particular document in analyzing the adequacy of a records search").

B.   DEFECTS IN THE EOIR'S SEARCH

At minimum, the EOIR's search is deficient for not following obvious leads for locating requested records and not uncovering responsive records that are known to exist. The Request directs the agency to "'Guidance on Case Adjudication' sent over email on May 30, 2025, to advise immigration judges about how to handle oral motions to dismiss. Ex. A at 2 n.1; *see also* Exhibit C (showing this email guidance). But the agency did not find this email in its search.  Ex. B at 2.

---

[2]The EOIR's final response does not describe the search that it conducted for the Request. Given the lack of information about the search, Requesters reserve the right to make other objections to the agency's search later in administrative processing and/or in any litigation, including but not limited to objections to the custodians tasked with performing the searches, the locations searched, the searches' methodologies, and the failure to follow other obvious leads.

Not finding this email guidance is particularly glaring for at least three reasons. First, the agency would have located it had it followed obvious leads: one of the news articles referencing this email cited in the Request contains a link to a leaked copy of the responsive email, which the agency could have used to craft a search methodology that returned this email guidance (and likely other responsive records responsive as well). Second, the agency is defending the email guidance from several legal challenges, one of which has enjoined the guidance in Manhattan and the Bronx. *See, e.g.*, Opinion & Order, *African Communities Together v. Noem*, Case No. 25-cv-6366 (S.D.N.Y. Sept. 12, 2025), ECF No. 51, https://tinyurl.com/5856b5bh. Third, a few days before the agency closed the Request, it published a policy memorandum withdrawing the "Guidance on Case Adjudication" sent over email on May 30, 2025. *See* Ex. D. It strains credulity that that a reasonable search for "all guidance … for dismissing or terminating an immigration case" would not have located dismissal guidance that contains the terms "guidance" and "dismissal," *see* Ex. C, particularly when the agency was defending this guidance in court while processing the Request and withdrew the guidance before completing that processing.

On information and belief, the EOIR's search is also deficient for not searching locations and systems likely to contain responsive records or using appropriate search methods and search terms in the locations and systems searched. Though, Requesters lack sufficient information to make more detailed objections to search locations and methods at this time. The agency did not describe its search in its final response or provide this description over email after Requesters asked it to do so. Ex. B at 1. Should the agency provide a more detailed description of its search that specifies custodians, repositories, and search methods (including search terms), Requesters will supplement their appeal with more detailed objections to these aspects of the search.

## III.  EXPEDITED PROCESSING

Requesters seek expedited processing of this appeal for the reasons set forth in a separate letter.

* * *

Thank you for your attention to this request. If you have any questions regarding this request, please do not hesitate to contact us.

Very truly yours,

| | |
|---|---|
| /s/ Chris Opila | /s/Rex Chen |
| Christopher ("Chris") Opila | Rex Chen |
| Staff Attorney (Transparency) | Supervising Counsel for Immigrant Rights |
| American Immigration Council | LatinoJustice PRLDEF, |
| PMB2026 | 475 Riverside Drive Suite 1901 |
| 2001 L Street N.W., Suite 500 | New York, NY 10115 |
| Washington, DC 20036 | 212-219-3360 \| rchen@latinojustice.org |
| 202-507-7699 \| copila@immcouncil.org | |

Enclosures:
      A.   FOIA Request No. 2025-84734
      B.   EOIR Final Response for 2025-84734 & Correspondence
      C.   May 30, 2025, Guidance on Case Adjudication
      D.   PM 25-51 Withdrawal of May 30, 2025 Email

 **Exhibit A** 

July 28, 2025

**Via Public Access Link Portal & Certified Mail**

U.S. Department of Justice
Executive Office for Immigration Review
Office of General Counsel – FOIA Service Center
5107 Leesburg Pike, Suite 1903
Falls Church, VA 22041

Director of Public Affairs
Office of Public Affairs
Department of Justice,
950 Pennsylvania Avenue NW
Washington, DC 20530–0001

Re:     Freedom of Information Act Request on Terminations of Immigration Proceedings and ICE Arrests at Immigration Courts

Dear FOIA Officer:

The American Immigration Council (the "Council") and LatinoJustice PRLDEF (collectively, "Requesters") submit this request to the Executive Office for Immigration Review ("EOIR") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Since around the middle of May 2025, U.S. Immigration and Customs Enforcement ("ICE") has been moving to dismiss immigration proceedings against noncitizens in EOIR immigration courts around the country to pursue their expedited removal. Requesters seek certain records about these dismissals as well as expedited processing and a fee waiver.

## I.   REQUEST FOR INFORMATION

Requesters seek all guidance, instructions, policies, templates, and other similar records[1] created by, provided to, or otherwise in the possession of EOIR for dismissing or terminating an immigration case or proceeding issued since January 20, 2025.

---

[1] These records include but are not limited to guidance, instructions, policies, templates, and other similar records that take the form of an email sent by EOIR.ocij.all.of.acijs@doj365.onmicrosoft.com. *See* Julia Ainsely, *Trump Admin Tells Immigration Judges to Dismiss Cases in Tactic to Speed Up Arrests,* NBC News (June 11, 2025, 5:00AM), https://www.nbcnews.com/politics/national-security/trump-admin-tells-immigration-judges-dismiss-cases-tactic-

## II. FORMAT OF PRODUCTION

Requesters seek responsive electronic records in a machine-readable, native file format, with all metadata and load files. Requesters ask EOIR to produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits, in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## III. EXPEDITED PROCESSING

Requesters seek expedited processing of this request and certify that the statements herein are "true and correct" pursuant to 28 C.F.R. § 16.5(e)(3). FOIA obligates EOIR to process requests expeditiously in two cases: (i) those where a requester "demonstrates a compelling need"—such as "urgency to inform the public concerning actual or alleged Federal Government activity" if the requester is "primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(i), (v)—and (ii) "in other cases determined by the agency," *id.* § 552(a)(6)(E)(i), which, for the Department of Justice, include "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 28 C.F.R. § 16.5(e)(1)(ii), (iv). Both cases exist here.

### A. A MATTER OF WIDESPREAD AND EXCEPTIONAL INTEREST RAISING GOVERNMENT INTEGRITY CONCERNS

EOIR's dismissal of noncitizens' immigration court cases to facilitate their expedited removal is a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

Fifty articles on an issue make it a matter of widespread and exceptional public interest. *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, Case No. 25-cv-511 (CRC), 2025 WL 752367, at *13 (D.D.C. Mar. 10, 2025) (hereinafter "CREW") *see also Brennan Ctr. for Just. v. Dep't of Com.* 498 F. Supp. 3d 87, 97 (D.D.C. 2020). A "handful of articles" also establishes such interest where the articles are "in a variety of publications" and "repeatedly reference the ongoing national discussion." *Am. Civ. Liberties Union v. Dep't of Just.*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004).

Here, state, local, and nationwide media outlets have published at least at least eighty five articles since May 21, 2025, about ICE asking immigration judges to dismiss noncitizens'

---

speed-arrest-rcna212138 (referencing "memo" entitled "Guidance on Case Adjudication" sent over email on May 30, 2025); Mark Rivera et al., *ICE Arrests at Immigration Court in Chicago, Nationwide Labeled 'Unlawful' in New Lawsuit*, ABC 7 Chicago (July 18, 2025, 8:36 PM), https://abc7chicago.com/post/us-immigration-news-ice-arrests-courts-chicago-nationwide-labeled-unlawful-new-lawsuit-trump-administration/17186490/ (same).

immigration cases so it can pursue these noncitizens' expedited removal.[2] Immigration attorneys also report ICE officials serving pre-signed dismissals based on "non-opposition" to noncitizen

---

[2] Margaret Kadifa, *ICE Arrests All Adults Without Children at S.F. Immigration Court Today*, Mission Local (July 25, 2025, 1:05 PM), https://missionlocal.org/2025/07/hed-ice-steps-up-arrests-at-s-f-immigration-court/ (hereinafter, "Kadifa re: Adult Arrests"); Pedro Camacho, *ICE Arrests Migrant Deemed Mentally Impaired by Judge as He Exits Immigration Court: 'He's Clearly Not Understanding the Questions'*, The Latin Times (July 25, 2025, 10:36 AM), https://www.latintimes.com/ice-arrests-migrant-deemed-mentally-impaired-judge-he-exits-immigration-court-hes-clearly-not-587576; Jordan Salama, *When ICE Agents Are Waiting Outside the Courtroom*, The New Yorker (July 25, 2025), https://www.newyorker.com/news/the-lede/when-ice-agents-are-waiting-outside-the-courtroom; Maurice DuBois et al., *3 Immigration Judges Speak Out About Their Firings: "It Was Arbitrary, Unfair*, CBS News (July 24, 2025, 8:34 PM), https://www.cbsnews.com/boston/news/immigration-judges-speak-out-firings-arbitrary-unfair/?intcid=CNM-00-10abd1h; Danielle James, *ICE Arrests at Check-Ins, Court Hearings Are on the Rise. Michigan Is No Exception*, MLIVE (July 21, 2025, 7:10 AM), https://www.mlive.com/politics/2025/07/ice-arrests-at-check-ins-court-hearings-are-on-the-rise-michigan-is-no-exception.html; Margaret Kadifa, *ICE Agents Keep Snatching Asylum Seekers Immediately After Their Court Hearings*, Mother Jones (July 21, 2025), https://www.motherjones.com/politics/2025/07/ice-agents-arrest-asylum-seekers-after-court-hearings-san-francisco/; Martha Bellisile et al., *Volunteers Flock to Immigration Courts to Support Migrants Arrested in the Hallways*, ABC News (July 20, 2025, 8:38 AM), https://abcnews.go.com/US/wireStory/volunteers-flock-immigration-courts-support-migrants-arrested-hallways-123902561; Rivera et al., *supra* n. 1; Eduardo Cuevas, *'Escalation:' Federal Agents Now Detaining People with Active Immigration Cases*, USA Today (July 18, 2025, 11:26 AM), https://www.usatoday.com/story/news/nation/2025/07/18/migrants-immigration-court-trump-crackdown/84614161007/; Martha Bellisile, *Homeland Security Officials Defend Immigration Court Arrests After Being Sued*, Associated Press (July 17, 2025, 2:04 PM), https://apnews.com/article/ice-immigration-court-immigrants-a5190ada4a6019f84d76e62c11c44e30; Swasti Singhai, *Five Days, 12 Arrests: A Week Inside San Diego Immigration Court*, Times of San Diego (July 17, 2025, 7:41 AM), https://timesofsandiego.com/politics/2025/07/17/arrests-immigration-court-trump-anxiety-chaos/ (hereinafter, "Singhai re: Week at San Diego Immigration Court"); Devan Cole et al., *Trump Administration Sued Over ICE Arrests at Immigration Courthouses*, CNN (July 16, 2025, 6:23 PM), https://www.cnn.com/2025/07/16/politics/ice-immigration-courthouse-arrests-lawsuit; Luis Ferré-Sadurní, *Immigrants File Class-Action Lawsuit to Stop IC Courthouse Arrests*, NY Times (July 16, 2025), https://www.nytimes.com/2025/07/16/nyregion/trump-ice-arrests-lawsuit-immigrants.html (hereinafter, "Ferré-Sadurní re: Lawsuit"); Maxine Bernstein, *Federal Judge in Oregon: Homeland Security 'Tricked' Asylum Seeker Before Arrest at Immigration Court*, The Oregonian (July 15, 2025, 10:47 AM), https://www.oregonlive.com/pacific-northwest-news/2025/07/federal-judge-in-oregon-homeland-security-tricked-asylum-seeker-before-arrest-at-immigration-court.html; Sarah Thamer, *Advocates Denounce ICE Arrests at Fort Snelling Immigration Court*, MPR News (July 15, 2025, 4:00 AM), https://www.mprnews.org/story/2025/07/15/advocates-protest-ice-arrests-at-immigration-court; Paige Browning & John O'Brien, *Fears of Arrests Cause Tension at Seattle Immigration Court*, KUOW (July 10, 2025, 5:58 PM), https://www.kuow.org/stories/fears-of-ice-arrests-cause-tension-at-seattle-immigration-court; Margaret Kadifa, *ICE Arrests 4 People After Immigration Court Hearings in San Francisco*, Mission Local (July 10, 2025, 12:08 PM), https://missionlocal.org/2025/07/ice-arrests-four-people-after-they-appear-in-immigration-court/ (hereinafter, "Kadifa re: 4 Arrests"); *What Goes On in America's Immigration Courts*, Economist (July 10, 2025), https://www.economist.com/united-states/2025/07/10/what-goes-on-in-americas-immigration-courts; Francesca Regalado & Soumya Karlamangla, *Tensions Escalate in San Francisco over Immigration Enforcement*, NY Times (July 9, 2025), https://www.nytimes.com/2025/07/09/us/ice-immigration-protest-san-francisco.html; Tom Li & Ko Lyn Cheang, *Video: Protestors Cling to Departing ICE Van After Arrest at S.F. Immigration Court*, San Francisco Chronicle (July 8, 2025, 5:34 PM), https://www.sfchronicle.com/sf/article/protesters-cling-ice-van-chaos-immigration-court-20761721.php; Nisa Khan, *When ICE Is Waiting at Immigration Court, What Can Advocates Do?*, KQED (July 7, 2025), https://www.kqed.org/news/12047018/how-legal-experts-advocates-are-responding-to-the-detention-of-asylum-seekers; Emma Seiwell, *ICE Opposition Grows, With Lawmakers, Attorneys*

*Decrying Courthouse Arrests as a Violation of Due Process*, NY Daily News (July 5, 2025, 6:00 AM), https://www.nydailynews.com/2025/07/05/ice-opposition-grows-with-lawmakers-attorneys-decrying-courthouse-arrests-a-violation-of-due-process/ (hereinafter "Seiwell re: ICE Opposition Grows"); Jim Vertuno, *Honduran Family Freed From Detention After Lawsuit Against ICE Courthouse Arrests*, Associated Press (July 3, 2025, 6:14 PM), https://apnews.com/article/ice-family-children-lawsuit-release-ef8d764aebec8ba1b67bafc9080a563d; Emma Seiwell, *ICE Agents Now Snatching Migrants With Open Court Cases; NY Officials, Lawyers Say It's 'Utterly Unlawful'*, NY Daily News (July 3, 2025, 6:50 AM), https://www.nydailynews.com/2025/07/02/ice-agents-now-snatching-migrants-with-open-court-cases-nyc-officials-lawyers-say-its-utterly-unlawful/ (hereinafter, "Seiwell re: ICE Snatching"); Melissa Gomez, *Faith Leaders Bear Witness as Migrants Make Their Case in Immigration Court,* Los Angeles Times (July 2, 2025, 3:00 AM), https://www.latimes.com/california/story/2025-07-02/faith-leaders-bear-witness-as-migrants-make-their-case-immigration-court (hereinafter, "Gomez re: Faith Leaders"); Shelby Bremer, *Lawsuit over San Diego Immigration Court Arrest May Give Insight Into ICE Practices*, NBC San Diego (July 1, 2025, 6:01 PM), https://www.nbcsandiego.com/news/local/san-diego-lawsuit-ice-courthouse-arrests/3861107/; Madeleine May & Hannah Marr, *Afghan Ally Detained by ICE After Attending Immigration Court Hearing*, CBS News (July 1, 2025, 1:48 PM), https://www.cbsnews.com/news/afghan-ally-detained-by-ice-immigration-court/; Margaret Kadifa, *For One S.F. Asylum Seeker, ICE Arrest Meant Move to More Conservative Judge,* Mission Local (July 1, 2025, 4:00 AM), https://missionlocal.org/2025/07/sf-asylum-seeker-immigration-judge-ice-arrest/ (hereinafter "Kadifa re: Forum Shopping"); Natali Yahr, *Wisconsin Asylum Seeker Miguel Robles Detained in Unprecedent Wave of Courthouse Arrests*, Racine County Eye (July 1, 2025), ), https://racinecountyeye.com/2025/06/30/miguel-robles-immigration-asylum/; Gwynne Hogan, *He Fled Death Threats for Being Gay, Applied for Asylum and Married a U.S. Citizen. ICE Arrested Him Anyway,* The City (June 30, 2025, 1:41 PM), https://www.thecity.nyc/2025/06/27/ice-arrested-asylum-gay/ (hereinafter "Hogan re: Mamadou Arrest"); Ko Lyn Cheang, *S.F. Drag Performer Detained by ICE After Asylum Hearing*, San Francisco Chronicle (June 28, 2025), https://www.sfchronicle.com/sf/article/drag-performer-detained-ice-20399122.php; Anna-Cat Brigida, *A Legal Trap? Why the Trump Administration is Targeting Immigration Courts for Arrests*, Al Jazeera (June 27, 2025), https://www.aljazeera.com/news/longform/2025/6/27/why-the-trump-administration-is-targeting-immigration-courts-for-arrests; Julia Marnin, *6-Year-Old Boy with Leukemia Arrested by ICE is Now Detained in Texas, Suit Says*, Fort Worth Star-Telegram (June 26, 2025, 3:23 PM), https://www.star-telegram.com/news/state/texas/article309472695.html; Dan Katz, *ICE Arrested a 6-Year-Old Boy with Leukemia at Immigration Court. His Family is Suing*, Texas Public Radio (June 25, 2025, 11:06 PM), https://www.tpr.org/border-immigration/2025-06-25/ice-arrested-a-6-year-old-boy-with-leukemia-at-immigration-court-his-family-is-suing; Nina Shapiro, *As Pushback Grows to WA Immigration Court Arrests, ICE Changes Tactics*, The Seattle Times (June 24, 2025, 6:00 AM), https://www.seattletimes.com/seattle-news/as-pushback-grows-to-wa-immigration-court-arrests-ice-changes-tactics/ (hereinafter "Shapiro re: ICE Tactic Change"); Kate Morrissey, *Here's What's Happening to the People ICE Arrets in Immigration Court*, Capital & Main (June 24, 2025), https://capitalandmain.com/heres-whats-happening-to-the-people-ice-arrests-in-immigration-court; Elizabeth L.T. Moore & Elizabeth Zavala, *Obscure San Antonion Court Becomes Flashpoint in Immigration Debate*, San Antonio Express-News (June 23, 2025), https://www.expressnews.com/news/article/obscure-san-antonio-immigration-court-spotlight-20381608.php; Luis Ferré-Sadurní, *Brad Lander Tried to Escort Immigrants facing Arrest. He's Not Alone* , NY Times (June 19, 2025), https://www.nytimes.com/2025/06/19/nyregion/ice-immigrants-volunteer-escorts-courthouse.html (hereinafter "Ferré-Sadurní re: Lander Escort"); Lily Celeste, *ICE Detains Three People Attending Their Immigration Hearings in Harlingen*, KRGV.Com (June 15, 2025, 6:40 PM), https://www.krgv.com/news/ice-detains-three-people-outside-harlingen-immigration-court/; Ryan Oehrli, *'Rigged'? ICE Agents Are Arresting People at Charlotte's Immigration Court,* The Charlotte Observer (June 12, 2025, 11:31 AM), https://www.charlotteobserver.com/news/local/crime/article308209165.html; Armando Garcia, *Immigrant Rights Group Say ICE Officers 'Ambush Noncitizens' in Courthouse Arrests, Ask Judge to Intervene,* ABC News (June 12, 2025, 10:32 AM), https://abcnews.go.com/US/immigrant-rights-groups-ice-officers-ambush-noncitizens-courthouse/story?id=122770040; Thomas Lyons, *Mood is Tense at Concord Immigration Court Following ICE Arrests*, Berkleyside (June 12, 2025, 9:55 AM), https://www.berkeleyside.org/2025/06/12/concord-immigration-court-tension-after-ice-arrests; Ximena Bustillo, *ICE's Novel Strategy Allows for More Arrests from Inside Immigration Courts*, NPR

(June 12, 2025, 5:02 AM), https://www.npr.org/2025/06/12/nx-s1-5409403/trump-immigration-courts-arrests; Luis Ferré-Sadurní, *Inside a Courthouse, Chaos and Tears as Trump Accelerates Deportations*, NY Times (June 12, 2025), https://www.nytimes.com/2025/06/12/nyregion/immigration-courthouse-arrests-trump-deportation.html (hereinafter "Ferré-Sadurní re: Inside NYC Immigr. Cts."); Martha Bellisile et al., *Immigration Officers Intensify Arrests in Courthouse Hallways on a Fast Track to Deportation*, Associated Press (June 11, 2025, 4:17 PM), https://apnews.com/article/immigration-court-arrests-ice-deportation-99d822cdc93ae7dc26026c27895d5ea1; Brittany Taylor et al., *Second Day of Arrests by ICE Agents at Immigration Court in Southwest Houston*, Click 2 Houston.com (June 11, 2025, 10:25 AM), https://www.click2houston.com/news/local/2025/06/11/ice-agents-stationed-outside-immigration-court-in-houstons-greenspoint-area/; Ainsely, *supra* n. 1; Conrad Wilson, *ICE Arrests 2 More Asylum Seekers at Immigration Court in Portland*, OPB (June 10, 2025, 5:12 PM), https://www.opb.org/article/2025/06/10/ice-arrests-2-more-asylum-seekers-at-immigration-court-in-portland/ (hereinafter, "Wilson re: Two Arrests"); Ninfa Saavedra & Robert Arnold, *ICE Arrests Multiple People at Houston's Immigration Court*, Click2Houston.com (June 10, 2025, 2:48 PM), https://www.click2houston.com/news/local/2025/06/10/ice-arrests-reportedly-underway-at-houstons-immigration-court/; Natalie Weber, *ICE Detains Multiple Men at Houston Immigration Courthouse, Civil Rights Organization Says*, Houston Public Media (June 10, 2025, 11:58 AM), https://www.houstonpublicmedia.org/articles/news/politics/immigration/2025/06/10/523600/ice-detains-multiple-men-at-houston-immigration-courthouse/; Giulia McDonnell Nieto del Rio, *This Is What An ICE Arrest in Boston Immigration Court Looks Like*, Boston Globe (June 9, 2025, 6:31 AM), https://www.bostonglobe.com/2025/06/09/metro/ice-arrests-at-boston-immigration-court/ (hereinafter, "Nieto del Rio re: Inside Boston Immigr. Ct. Arrest"); Audrey Conklin & Bill Melugin, *Trump's ICE Launches Bold Courthouse Migrant Arrest Strategy to Fast-Track Deportations Biden Avoided*, Fox News (June 9, 2025, 4:00 AM), https://www.foxnews.com/us/trumps-ice-launches-bold-courthouse-migrant-arrest-strategy-fast-track-deportations-biden-avoided?msockid=1cd283b1756f61231883976574c46057; Conrad Wilson, *ICE Detains Another Asylum-Seeker Outside Portland Courtroom, Legal Petition Says*, OPB (June 6, 2025, 9:30 AM), https://www.opb.org/article/2025/06/06/asylum-arrest-portland-yzlh/ (hereinafter, "Wilson re: Arrest"); Amy Larson, *Newlywed Couple Separated at Immigration Courthouse by ICE*, The Hill (June 5, 2025, 1:14 PM), https://thehill.com/homenews/state-watch/5334753-immigration-courthouse-ice-trump-dhs/; Laura Romero et al., *In a New Tactic, ICE Is Arresting Migrants at Immigration Courts, Attorneys Say*, ABC News (June 4, 2025, 6:37 PM), https://abcnews.go.com/US/new-tactic-ice-arresting-migrants-immigration-courts-attorneys/story?id=122513021; Julie Carey, *Cancel, Arrest, Deport: Immigration Lawyer Warns of Emerging ICE Tactic*, 4 Washington (June 4, 2025, 3:01 PM), https://www.nbcwashington.com/news/local/cancel-arrest-deport-immigration-lawyer-warns-of-emerging-ice-tactic/3927509/; Brad Schmidt, *Immigration Arrest at Courthouse Marks First for Portland*, The Oregonian (June 3, 2025, 3:22 PM), https://www.oregonlive.com/politics/2025/06/immigration-arrest-at-courthouse-marks-first-for-portland.html; Stephen Franklin & Katema Hosseini, *ICE Target Noncitizens As Cases Dismissed in Immigration Court in Chicago*, Borderless (June 3, 2025), https://borderlessmag.org/2025/06/03/ice-arrests-chicago-immigration-court-trump-detention-immigration-custom-enforcement/; Conrad Wilson, *ICE Detains Asylum Seeker Outside Portland Immigration Court, Lawyers Say*, OPB (June 2, 2025, 11:01 PM), https://www.opb.org/article/2025/06/02/immigration-enforcement-detains-asylum-seeker-portland-court/; Angélica Franganillo Díaz & Priscilla Alvarez, *ICE Targets Migrants for Arrest at Courthouses as Trump Administration Intensifies Deportation Push*, CNN (June 2, 2025, 5:00 AM), https://www.cnn.com/2025/06/02/politics/ice-arrests-migrants-courthouse; Shelly Bradbury, *Feds Detain Immigrant Family at Denver Courthouse Amid New Trump Strategy*, Denver Post (May 30, 2025, 3:32 PM), https://www.denverpost.com/2025/05/30/denver-immigration-arrest-courthouse-ice-trump/; Giulia McDonnell Nieto del Rio, *ICE Arrests at Massachusetts Immigration Courts Target Immigrants Seeking Permission to Stay in US*, Boston Globe (May 30, 2025, 1:39PM), https://www.bostonglobe.com/2025/05/27/metro/immigration-courts-ice-arrests-massachusetts (hereinafter, "Nieto del Rio re: Boston Immigr. Ct. Arrests"); Suzanne Gamboa, *Immigration Arrests in Courthouses Have Become the New Deportation Tool, Stripping Migrants of a Legal Process*, NBC News (May 30, 2025, 5:00 AM), https://www.nbcnews.com/news/latino/immigrations-arrests-ice-deportations-courthouse-legal-process-ice-

rcna209671; Hamed Aleaziz et al., *How ICE is Seeking to Ramp Up Deportations Through Courthouse Arrests*, NY Times (May 30, 2025), https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html; Allison Sherry, *Signaling a Policy Shift, ICE Detains a Family Who Showed Up at Denver Immigration Court for a Check-In*, CPR News (May 29, 2025, 1:35 PM), https://www.cpr.org/2025/05/29/ice-detains-family-denver-immigration-court/; Daniel Gonzalez & Richard Ruelas, *After Short Break, ICE Resumes Arrests at Phoenix Immigration Court, Changes Keep Tactic*, AZ Central (May 29, 2025, 5:01 AM), https://www.azcentral.com/story/news/politics/immigration/2025/05/29/phoenix-immigration-court-ice-arrests-resume/83767918007/; David Noriega, *Immigration Courts Are Dismissing Cases of Those Sent to El Salvador, Potentially Cutting Off Their Return*, NBC News (May 28, 2025, 5:10 PM), https://www.nbcnews.com/news/latino/immigration-courts-alien-enemies-deportation-andry-hernandez-romero-rcna209402; Gwynne Hogan, *Migrants, Protestors, and a Pastor Arrested Inside and Outside Manhattan Immigration Courthouses,* The City (May 28, 2025, 3:16 PM), https://www.thecity.nyc/2025/05/28/ice-arrests-migrants-26-federal-plaza-pastor/ (hereinafter, "Hogan re: NYC Immigr. Ct. Arrests"); Tomoki Chien, *Undercover ICE Agents Begin Making Arrests at SF Immigration Court*, The San Francisco Standard (May 27, 2025, 5:32 PM), https://sfstandard.com/2025/05/27/undercover-ice-agents-make-arrests-san-francisco-court/; Michael Elsen-Rooney, *A Bronx High Schooler Showed Up for a Routine Immigration Court Date. ICE Was Waiting*, Chalkbeat New York (May 26, 2025, 8:35 pm), https://www.chalkbeat.org/newyork/2025/05/27/bronx-high-school-student-detained-by-immigration-ice-agents/?ref=hellgatenyc.com (hereinafter, "Elsen-Rooney re: Dylan Arrest"); Milena Malaver et al., *ICE Agents in Miami Find New Spot to Carry Out Arrests: Immigration Court,* Miami Herald (May 26, 2025, 1:27 PM), https://www.miamiherald.com/news/local/immigration/article306900486.html; Melissa Gomez, *Father Ripped from Family as Agents Target Immigration Courts, Arresting People After Cases Dismissed*, LA Times (May 24, 2025, 10:00AM), https://www.latimes.com/california/story/2025-05-24/ice-agents-swarm-immigration-courts-arresting-people-after-cases-dismissed (hereinafter, "Gomez re: Immigr. Ct. Arrests"); Tyche Hendricks, *'Unprecedented': ICE Officers Operating Inside Bay Area Immigration Courts, Lawyers Say*, KQED (May 24, 2025), https://www.kqed.org/news/12041473/unprecedented-ice-officers-operating-inside-bay-area-immigration-courts-lawyers-say; Camilo Montoya-Galvez & Nidia Cavazos, *ICE Ending Migrants' Court Cases In Order to Arrest and Move to Deport Them*, CBS News (May 23, 2025, 9:53 AM), https://www.cbsnews.com/news/ice-ending-migrants-court-cases-arrest-move-to-deport-them/; Arelis R. Hernández & Maria Sacchetti, *Immigrant Arrests at Courthouses Signal New Tactic in Trump's Deportation Push*, Washington Post (May 23, 2025), https://www.washingtonpost.com/immigration/2025/05/23/immigration-court-arrests-ice-trump/; Trevor Hughes, *ICE Agents Deploy New Tactic: Arresting People As They Leave Mandatory Court Hearings*, USA Today (May 22, 2025, 1:13 PM), https://www.usatoday.com/story/news/nation/2025/05/22/ice-arrests-immigration-court-deportation-tactics/83792357007/; Joshua Goodman et al., *They Came to Hearing at Chicago's Immigration Court, Then Got Arrested*, Chicago Sun-Times (May 22, 2025, 3:59PM), https://chicago.suntimes.com/immigration/2025/05/22/ice-agents-hallways-immigration-court-trump-mass-arrest; Anders Hagstrom & Bill Melugin, *ICE Beings New, Nationwide Effort to Arrest Illegal Aliens at Immigration Hearings* (May 22, 2025, 1:07 PM), https://www.foxnews.com/politics/ice-begins-new-nationwide-effort-arrest-illegal-aliens-immigration-hearings; Joshua Goodman & Gisela Salomon, *ICE Agents Wait in Hallways of Immigration Court as Trump Seeks to Deliver on Mass Arrest* Pledge, Associated Press (May 22, 2025, 1:30 AM), https://apnews.com/article/immigration-courts-arrests-trump-ice-deportations-fa96435d4ec021cc8ff636b23d80d848; J. Dale Shoemaker, ICE Raids Immigration Court in Buffalo, Investigative Post (May 22, 2025), https://www.investigativepost.org/2025/05/22/ice-raids-immigration-court-in-buffalo/; Raphael Romero Ruiz *et al.*, *For 2nd Day, People Attending Phoenix Immigration Hearings Arrested by ICE*, USA Today (May 21, 2025, 11:42 PM), https://www.usatoday.com/story/news/politics/immigration/2025/05/21/ice-arrests-phoenix-immigration-court/83772323007/?gnt-cfr=1&gca-cat=p; Gustavo Sagrero Álvarez, *ICE Agents at Seattle Courthouse Arrest People Whose Deportation Hearings are Dismissed*, KUOW (May 21, 5:45 PM), https://www.kuow.org/stories/ice-agents-at-seattle-courthouse-arrest-people-whose-deportation-hearings-are-dismissed; Akela Lacy et al. *ICE Agents Are Camped Outside Immigration Courts to Make Arrests*, The Intercept (May 21, 2025, 3:27 PM), https://theintercept.com/2025/05/21/ice-agents-courts-arrests-immigrants-deport/; Paul Ingram, *'Mayhem' As ICE Officials Arrest Multiple People at Immigration Court in Phoenix*, AZ Mirror (May 21, 2025, 11:12 AM),

respondents at immigration courts without respondents not having notice of ICE's motion to dismiss their immigration case and an opportunity to oppose it. Much of the coverage on these dismissals casts doubt on their integrity, describing them as a violation of due process and a tactic to deport noncitizens without hearings.[3] Some coverage even suggests that EOIR is firing immigration judges for refusing to dismiss cases.[4]

Dismissals at immigration courts and the ICE arrests that follow them have outraged Americans around the country. Opposition to these actions and doubts about their legality have prompted mass protests at immigration courts in New York, Seattle, San Francisco, and elsewhere.[5] It has

https://azmirror.com/2025/05/21/mayhem-as-ice-officials-arrest-multiple-people-at-immigration-court-in-phoenix/; Nina Shapiro, *ICE Arrests at WA Immigration Court Spark Fear of Fast-Track Removal*, Seattle Times (May 21, 2025, 6:00 AM), https://www.seattletimes.com/seattle-news/law-justice/ice-arrests-at-wa-immigration-court-spark-fear-of-fast-track-removal/ (hereinafter, "Shapiro re: ICE Arrests").

[3] Kadifa re: Adult Arrests, *supra* n. 2; Camacho, *supra* n. 2; Salama, *supra* n. 2; James, *supra* n. 2; Cole et al., *supra* n. 2; Ferré-Sadurní re: Lawsuit, *supra* n. 2; Cuevas, *supra* n. 2; Bernstein, *supra* n. 2; Browning & O'Brien, *supra* n. 2; Kadifa re: 4 Arrests, *supra* n. 2; Li & Cheang, *supra* n. 2; Khan, *supra* n. 2; Kadifa re: Forum Shopping, *supra* n. 2; Yahr, *supra* n. 2; Hogan re: Mamadou Arrest, *supra* n.2; Cheang, *supra* n. 2; Brigida, *supra* n. 2; Moore & Zavala, *supra* n. 2; Lyons, *supra* n. 2; Oehrli, *supra* n. 2; Garcia, *supra* n. 2; Bustillo, *supra* n. 2; Ferré-Sadurní re: Inside NYC Immigr. Cts., *supra* n. 2; Bellisile et al. re: Immigration Officers Intensify Arrests, *supra* n. 2; Wilson re: Two Arrests, *supra* n. 2; Saavedra & Arnold, *supra* n. 2; Nieto del Rio re: Inside Boston Immigr. Ct. Arrest, *supra* n. 2; Conklin & Melugin, *supra* n. 2; Wilson re: Arrest, *supra* n. 2; Romero et al., *supra* n. 2; Carey, *supra* n. 2; Franklin & Hosseini, *supra* n. 2; Bradbury, *supra* n. 2; Nieto del Rio re: Boston Immigr. Ct. Arrests, *supra* n. 2; Gamboa, *supra* n. 2; Aleaziz et al., *supra* n. 2; Chien, *supra* n. 2; Elsen-Rooney re: Dylan Arrest, *supra* n. 2; Malaver et al., *supra* n. 2; Gomez re: Immigr. Ct. Arrests, *supra* n. 2; Hernández & Sacchetti, *supra* n. 2; Hughes, *supra* n. 2; Ruiz *et al*, *supra* n. 2; Lacy et al, *supra* n. 2; Shapiro re: ICE Arrests, *supra* n. 2; Seiwell re: ICE Snatching, *supra* n. 2; Hendricks, *supra* n. 2; Seiwell re: ICE Opposition Grows, *supra* n. 2.

[4] Dubois et al., *supra* n. 2.

[5] Thamer, *supra* n. 2; Browning & O'Brien, *supra* n. 2; Alicia Victoria Lozano, *Violent Clashes at San Francisco Immigration Court Won't Deter Protestors, Organizers Say*, NBC News (July 10, 2025, 4:43 PM), https://www.nbcnews.com/news/us-news/violent-clashes-san-francisco-immigration-court-wont-deter-protesters-rcna218059; Sarah Rumpf-Whitten, *Watch: ICE Agents Fight Off Masked Mob Outside Blue City Immigration Court*, FOX News (July 10, 2025, 1:12 PM), https://www.foxnews.com/us/watch-ice-agents-fight-off-masked-mob-outside-blue-city-immigration-court; Shay Arthur, *Crowd Gathers for Immigration Rally at Memphis Court*, WREG Memphis (July 8, 2025, 12:07 PM), https://wreg.com/news/local/crowd-gathers-for-immigration-rally-at-memphis-court/; Regalado & Karlamangla, *supra* n. 2; Li & Cheang, *supra* n. 2; Khan, *supra* n. 2; Stephania Jimenez, *PSL San Antonio Organizes Event to Educate Community on Immigration Laws Amid Rising IDE Deportations*, KSAT (July 1, 2025, 10:42 PM), https://www.ksat.com/news/local/2025/07/02/psl-san-antonio-organizes-event-to-educate-community-on-immigration-laws-amid-rising-ice-deportations/; May & Marr, *supra* n. 2; Nina Shapiro, *As Pushback Grows to WA Immigration Court Arrests, ICE Changes Tactics*, The Seattle Times (June 24, 2025, 6:00 AM), https://www.seattletimes.com/seattle-news/as-pushback-grows-to-wa-immigration-court-arrests-ice-changes-tactics/; Luis Ferré-Sadurní, *Brad Lander is Arrested by ICE Agents at Immigration Courthouse,* NY Times (June 17, 2025), https://www.nytimes.com/2025/06/17/nyregion/brad-lander-immigration-ice.html; Moore & Zavala, *supra* n. 2; Stephen Hobbs, *In Sacramento's Immigration Court, ICE Detention Threats Leave Residents in Limbo,* The Sacramento Bee (June 14, 2025, 10:05 AM), https://www.sacbee.com/news/politics-government/capitol-alert/article308346910.html; Greg Micek et al., *Sacramento Immigration Court on Lockdown, Draws Protest After Suspected ICE Operation*, Capradio (June 12, 2025), https://www.capradio.org/articles/2025/06/12/sacramento-immigration-court-on-lockdown-draws-protest-after-suspected-ice-operation/; Lyons, *supra* n. 2; Ferré-Sadurní re:

also prompted clergy, political leaders, and other members of the public to accompany noncitizens to their immigration court dates to document dismissals and arrests, attempt to stop the latter, and help arrestees inform their families.[6]

Responsive records will address critical integrity questions left open by existing media coverage. Such records will show the exact policies underlying dismissals. They will also reveal the extent to which immigration courts remain neutral forums for adjudication and immigration judges retain discretion to consider the individual circumstances of a particular case when adjudicating ICE's motion to dismiss.

B.    URGENCY TO INFORM THE PUBLIC ABOUT FEDERAL GOVERNMENT ACTIVITY BY A REQUESTER

Additionally, and alternatively, the Council has a compelling need for the records sought. It is primarily engaged in disseminating information. And urgency also exists to inform the public about the policies and guidance underlying immigration judges' dismissal of noncitizens' immigration court cases to facilitate expedited removal.

---

Inside NYC Immigr. Cts., *supra* n. 2; Bellisile et al. re: Immigration Officers Intensify Arrests, *supra* n. 2; Priscilla Alvarez, *ICE Protest Nationwide Comes As Agency Scrambles to Meet Trump's Immigration Arrest Quotas*, CNN (June 10, 2025, 10:16 PM), https://www.cnn.com/2025/06/10/politics/ice-scrambles-immigration-arrest-quotas; George Kelly & Max Harrison-Caldwell, Protesters Shut Down Immigration Court After ICE Arrests, The San Francisco Standard (June 10, 2025, 1:00 PM), https://sfstandard.com/2025/06/10/protesters-surround-immigration-court-after-ice-arrests/; Weber, *supra* n. 2; Joe Rivano Barros et al., *S.F. Police Arrest Dozens in 2nd Night of Protests Against ICE*, Mission Local (June 9, 2025, 8:16 PM), https://missionlocal.org/2025/06/sf-mission-march-mobilized-thousands-against-ice/; Aleaziz et al., *supra* n. 2; Hogan re: NYC Immigr. Ct. Arrests, *supra* n. 2; Ruiz *et al*, *supra* n. 2.

[6] Salama, *supra* n. 2; Bellisile et al. re: Volunteers Flock to Immigration Courts, *supra* n. 2; Ferré-Sadurní re: Lawsuit, *supra* n. 2; Thamer, *supra* n. 2; Brian Strassburger, S.J. & William Critchley-Menor, S.J., *What We Saw During An ICE Arrest & Immigration Court Hearing: The Breakdown of Justice in America*, America: The Jesuit Review (July 11, 2025), https://www.americamagazine.org/politics-society/2025/07/11/ice-immigration-court-deportation-injustice-251119; Ciara Encinas, *Volunteers Describe How They Document ICE Arrests in Immigration Courts*, Fox 5 (July 11, 2025, 4 :55 PM), https://fox5sandiego.com/news/local-news/san-diego/san-diego-court-ice-arrests/; Moore & Zavala, *supra* n. 2; Joey Safchik, *ICE Handcuffs 71-Year-Old Grandmother, a US Citizen, at San Diego Immigration Court*, 7 San Diego (July 9, 2025, 7 :06 PM), https://www.nbcsandiego.com/news/local/ice-arrests-71-year-old-grandmother-a-us-citizen-at-san-diego-immigration-court/3865098/; Khan, *supra* n. 2; Swasti Singhai, *San Diego Volunteers Bear Witness Daily as ICE Continues Courtroom Arrests*, Times of San Diego (July 3, 2025, 3:41 PM), https://timesofsandiego.com/life/2025/07/03/san-diego-community-bears-witness-as-ice-continues-courtroom-arrests/; Gomez re : Faith Leaders, *supra* n. 2; Shapiro re: ICE Tactic Change, *supra* n. 2; Ray Sanchez & Allsha Ebrahimji, *Masked Ice Officers: The New Calling Card of The Trump Administration's Crackdown*,  CNN (June 21, 2025), https://www.cnn.com/us/ice-immigration-officers-face-masks; Ferré-Sadurní re: Lander Escort, *supra* n. 2; Micek et al, *supra* n. 2. Ken Stone, *ICE Agents Scatter As SD Bishop Pham, Other Clergy Visit Immigration Court,* Times of San Diego (June 20, 2025, 3:04 PM), https://timesofsandiego.com/life/2025/06/20/ice-agents-scatter-as-sd-bishop-pham-other-clergy-visit-immigration-court/; Stephen Hobbs, *In Sacramento's Immigration Court, ICE Detention Threats Leave Residents in Limbo,* The Sacramento Bee (June 14, 2025, 10:05 AM), https://www.sacbee.com/news/politics-government/capitol-alert/article308346910.html; Carolina Estrada, *Two Men Detained by ICE After Sacramento Immigration Court* Hearings, KCRA3 (June 11, 2025, 11:13 PM), https://www.kcra.com/article/two-men-detained-by-ice-sacramento-immigration-hearings/65041264.

1. *The Council Primarily Engages in Information Dissemination*

The Council primarily engages in disseminating information and analysis on immigration and other issues. Organizations primarily engaged in information dissemination include not only "media organizations and newspapers," *Heritage Found. v. Entl. Prot. Agency*, Civil Action No. 23-748, 2023 WL 2954418, *3 (D.D.C. 2023), but also "non-partisan law and public policy group[s]" like Requesters that "regularly write[], publish[], and disseminat[e], information online," *Brennan Ctr. for Just.*, 498 F. Supp. 3d at 98 (Brennan Center); *see also Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5 (D.D.C. 2019) (Center for Public Integrity); *Protect Dem. Proj. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) (Protect Democracy Project); *Am. Civil Liberties Union*, 321 F. Supp. 2d at 29 n.5 (Electronic Privacy Information Center ("EPIC")).

Like Brennan Center, Protect Democracy Project, EPIC, and Center for Public Integrity, the Council authors factsheets and special reports on proposed and actual immigration policies, some of which shape media coverage in outlets across the nation.[7] It also analyzes immigration data and other government records—including those obtained through FOIA requests like this one—in interactive web reports.[8] And it circulates its reports and factsheets through its website,[9] blog, email newsletters, and an X (formerly known as Twitter) account with 64.9 thousand followers.[10]

2. *Urgency Exists to Inform the Public*

Urgency also exists to inform the public about the policies and guidance underlying the dismissal of noncitizens' immigration court cases to facilitate expedited removal and the extent to which immigration judges retain the discretion to consider dismissal on a case-by-case basis.

---

[7] *See, e.g.*, *Trump-Backed Mass Deportations Would Cost Billions*, Report Says, CBS News (Oct. 3, 2024), https://www.cbsnews.com/video/trump-backed-mass-deportations-would-cost-billions-report/ (discussing Am. Immig. Council, Mass Deportation: Devasting Costs to America, Its Budget and Economy (Oct. 2, 2024), https://www.americanimmigrationcouncil.org/report/mass-deportation/); Emma Goldberg, *What if Trump Deported Millions of Immigrants*, The New York Times (Oct. 22, 2024), https://www.nytimes.com/interactive/2024/10/22/us/elections/trump-deportation.html?unlocked_article_code=1.Uk4.Pjao.99OiYFTTpEl6 (same); *What Trump's Mass Deportation Plan Might Look Like If He Wins the Election*, 60 Minutes (Oct. 27, 2024), https://www.youtube.com/watch?v=WjCHjwlSMFI (same); *Mass Deportations*, Last Week Tonight (Oct. 27, 2024), https://www.youtube.com/watch?v=0UEhMDAlX1Y (same); *The Costs of Mass Deportation? Expert Breaks Down Trump's Immigration Plan*, Amanpour & Company, (Oct. 28, 2024), https://www.youtube.com/watch?v=Dmfo3atidKE (same).
[8] *See* Am. Immig. Council, Torrance County Detention Facility: Troubling Role in Detaining Haitian Migrants During the 2021 Del Rio Incident (2024), https://www.americanimmigrationcouncil.org/foia/torrance-detention-facility; Am. Immig. Council, Ohio, We Have a Problem: Border Patrol & Local Law Enforcement's Patterns & Tactics of Abuse in Ohio's Immigration Enforcement (2024), https://www.americanimmigrationcouncil.org/foia/ohio-border-patrol-abuse; Am. Immig. Council, Refugee Resettlement in U.S. Cities (2019), https://data.americanimmigrationcouncil.org/en/refugee-resettlement-us/#exploratory_tool
[9] The Council's website received 4,506,460 views from 2,952,034 different users in 2024.
[10] *See* https://x.com/immcouncil.

Requisite urgency exists where "the request touches on 'a matter of current exigency to the American public'" and delay "compromises a significant recognized interest." *Protect Dem. Proj.*, 263 F. Supp. 3d 293 at 299 (quoting *Al-Fayed v.* CIA, 254 F.3d 300, 310 (D.C. Cir. 2001)). Dismissal of immigration court cases to facilitate expedited removal is exigent to the American public, as demonstrated by the eighty plus articles cited in this request and protests inside and outside of immigration courts around the country. *See CREW*, 2025 WL 752367, at *13 (finding urgency to inform the public based on at least fifty articles on the issue); *Am. Civil Liberties Union of No. Cal. v. U.S. Dep't of Def.*, No. C 06-01698, 2006 WL 1469418, at *6 (N.D. Cal. May 25, 2006) (same); 28 C.F.R. § 16.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful to establishing the requirement that there be an 'urgency to inform' the public on the topic.").

Delayed production of the policies and guidance for dismissal of noncitizens' immigration court cases to facilitate expedited removal would compromise the ongoing public debate about the propriety of such dismissals. *Cf. CREW*, 2025 WL 752367, at *13 (expediting a request for records about the U.S. DOGE Service); *Protect Dem. Proj.*, 263 F. Supp. 3d 293 at 299 (expediting a request for records about a possible unlawful airstrike on Syria); *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Def.*, No. C. 06-01698, 2006 WL 1469418, at *6-7 (N.D. Cal. May 25, 2006) (expediting a request for records about possible unlawful military surveillance of protestors); *Freedom Coalition of Doctors for Choice v. Ctrs. For Disease Control & Prevention*, 2:23-cv-102, 2024 WL 69084, at *14 (N.D. Tex. Jan. 5, 2024) (expediting a request disputing the effectiveness of COVID-19 vaccines).

## IV.  FEE WAIVER REQUEST

Requestors seek a fee waiver since "disclosure of the requested records is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). EOIR must construe "the FOIA fee waiver provision … liberally … in favor of waivers for noncommercial requesters" like Requesters. *Schoenman v. FBI*, 604 F. Supp. 2d 174, 188 (D.D.C. 2009). Disclosure is in the public interest where it (A) "is likely to contribute significantly to public understanding of the operations or activities of the government" and (B) "is not primarily in the commercial interest of the [R]equesters." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 28 C.F.R. § 16.10(k)(1). Requesters satisfy both requirements.

### A.  DISCLOSURE OF THE INFORMATION IS IN THE PUBLIC INTEREST

Disclosing the requested records is likely to contribute significantly to the public's understanding of EOIR's dismissal of immigration court cases and the extent to which dismissal remains a matter of discretion for immigration judges to consider on a case-by-case basis.

EOIR must consider two factors when assessing a disclosure's contribution to public understanding of a government activity or operation, *see* 28 C.F.R. § 16.10(k)(2): (i) whether the request has a "direct and clear" rather than "remote or attenuated" connection to "identifiable operations or activities of the federal government"; and (ii) whether disclosure "would be likely to

contribute significantly to public understanding of those operations or activities." *Id.* § 16.10(k)(2)(i)-(ii). Each factor supports a fee waiver here.

      1.   *Request Has a Direct and Clear Connection to Government Operations or Activities*

First, this request has a direct and clear relation to the following governmental operations and activities: EOIR's dismissal or termination of immigration court proceedings so ICE can seek expedited removal of respondent noncitizens.

      2.   *Records Sought Will Contribute Significantly to Public Understanding of the Above*

Second, disclosing the records sought will "contribute significantly to public understanding of" the above activities. *Id.* § 16.10(k)(2)(ii). Such contribution exists where "[d]isclosure of the requested information [is] meaningfully informative about [these] activities" and "contribute[s] to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester." *Id.* 16.10(k)(2)(ii)(A)-(B). Both criteria are satisfied here.

         i.   DISCLOSURE OF RECORDS IS MEANINGFULLY INFORMATIVE

Disclosing requested records will be meaningfully informative about EOIR's dismissal or termination of immigration court proceedings so ICE can seek expedited removal of respondent noncitizens. Disclosure is meaningfully informative where disclosed information is not "in the public domain, in either the same or a substantially identical form." *Id.* § 16.10(k)(2)(ii)(A).

Here, as demonstrated by the media coverage cited above, the public only knows that ICE is arresting noncitizens at or near immigration courts after moving to dismiss their immigration cases and that immigration judges are granting many dismissals, thereby allowing ICE to pursue expedited removal.[11] Public knowledge does not extend to the exact guidance that immigration judges are receiving from their superiors or the extent to which dismissal remains a matter of discretion for judges to consider on a case-by-case basis. Requested records are therefore "meaningfully informative" about each of these activities.

        ii.   DISCLOSURE OF RECORDS CONTRIBUTES TO UNDERSTANDING OF A REASONABLY BROAD AUDIENCE

Disclosing requested records will contribute to the understanding of a reasonably broad audience of persons interested in EOIR's dismissal or termination of immigration court proceedings so ICE can seek expedited removal of respondent noncitizens.

Requesters presumably satisfy this consideration as representatives of the news media. *Id.* § 16.10(k)(2)(ii)(B). They both "gather[] information of potential interest to a segment of the public,

---

[11] *See generally* Media articles cited in footnotes 2-6.

use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience." *Id.* § 16.10(b)(6); *see also Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 282, 287-88 (D. Conn. 2012) (finding that ACLU is a news media representative); *cf. Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding that an organization similar to the Council is a news media representative).

Additionally, and alternatively, the ongoing and extensive media coverage in nationwide, state, and local outlets about dismissals of immigration proceedings demonstrates interest in this subject by a reasonably broad audience. Requesters intend and are well-equipped to inform this audience about the information contained in responsive records, as they are experts in educating the public about immigration issues.

As detailed further in the expedited processing section, the Council analyzes government records—including those obtained through FOIA requests like this one—in interactive web reports and other publications available for free on its website.[12] And it circulates these publications for free through its website,[13] blog, email newsletters, and an X account with 64.9 thousand followers. It intends to publish content about records obtained from this request on its website and otherwise disseminate that content to its readers and the larger public.

Similarly, LatinoJustice PRLDEF produces newsletters, blogs, reports, opinion, editorials, and video interviews about the constitutional rights and equal protection of Latinos, immigrants, and other marginalized communities.[14] And it circulates these publications through its social media accounts. All of its materials are free and available to the public on its website.

In sum, Requesters intend to analyze the records they receive from this request and educate a broad audience of the interested public about them. And, Requesters have a demonstrated ability to do so.

### B. REQUESTERS' LACK OF COMMERCIAL INTEREST

Turning to commercial interest, disclosure is not primarily in Requesters' commercial interest. As nonprofits, Requesters have no commercial interest in the records requested. *See Am. Ctr. for L. & Just. v. U.S. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 84 (D.D.C. 2021) ("[N]onprofit organizations by definition have no commercial interests."); *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 406 (D.D.C. 2015) (finding that the Council has no such interest in its record requests). Rather, the request furthers Requesters' work to increase public

---

[12] *See, e.g.*, Torrance County Detention Facility: Troubling Role in Detaining Haitian Migrants During the 2021 Del Rio Incident, *supra* n. 8; Ohio, We Have a Problem: Border Patrol & Local Law Enforcement's Patterns & Tactics of Abuse in Ohio's Immigration Enforcement, *supra* n. 8; Refugee Resettlement in U.S. Cities, *supra* n. 8.

[13] The Council's website received 4,506,460 views from 2,952,034 different users in 2024.

[14] *See, e.g.*, LatinoJustice PRLDEF, 100 Days Later: The Harm So Far to Latinx Communities (April 2025), https://www.latinojustice.org/en/pressreport/100-days-later-harm-so-far-latinx-communities; LatinoJustice PRLDEF, A Promise to Harm: What's at Stake for the Latino Community in Project 2025 (Oct. 2024), https://www.latinojustice.org/en/pressreport/promise-harm-whats-stake-latino-community-project-2025;

understanding of immigration processes, including the dismissal of immigration court proceedings so that ICE may channel respondent noncitizens into expedited removal.

Alternatively, and additionally, the public interest in obtaining a better understanding of EOIR's actions discussed above exceeds any commercial interest that EOIR may ascribe to Requesters in records responsive to this request.

***

Thank you for your attention to this request. If you have any questions regarding this request, please do not hesitate to contact us.

Very truly yours,

/s/ Chris Opila                                        /s/Rex Chen


Christopher ("Chris") Opila                    Rex Chen
Staff Attorney (Transparency)                 Supervising Counsel for Immigrant Rights
American Immigration Council               LatinoJustice PRLDEF,
PMB2026                                               475 Riverside Drive Suite 1901
2001 L Street N.W., Suite 500               New York, NY 10115
Washington, DC 20036                          212-219-3360 | rchen@latinojustice.org
202-507-7699 | copila@immcouncil.org

| | | Exhibit B |
|---|---|---|
| **From:** | Chris Opila | |
| **To:** | "jeniffer.perez.santiago@usdoj.gov" | |
| **Cc:** | Raul Pinto; Rex Chen | |
| **Subject:** | RE: DOJ-EOIR FOIA Request # 2025-84734 | |
| **Date:** | Thursday, September 25, 2025 3:02:00 PM | |

Hi Jennifer,

Thanks for all your work on this FOIA request.

The Council and LatinoJustice have serious concerns about the reasonableness of the agency's search. At minimum, the search failed to locate guidance for dismissing cases that EOIR leadership emailed to all ACIJs on May 30, which renders the search unreasonable. *Bader Family Found. v. U.S. Dep't of Educ.*, 630 F. Supp. 3d 36, 42-43 (D.D.C. 2022); *see also Ilturralde v. Comptroller of Currency*, 315 F.3d 311 (D.C. Cir. 2003) (placing "significant weight on the fact that a records search failed to turn up a particular document in analyzing the adequacy of a records search"). The search also failed to follow the "obvious leads" to this record in footnote 1 of the request, which also makes the search unreasonable. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

Given these clear defects, we think the most efficient path forward is for EOIR to reperform its search and work with us to identify custodians and search terms. Given the search's clear violations of caselaw, we struggle to see how DOJ will affirm the agency's search on appeal (or how a court would do so in any litigation). If the agency intends to stand by its search, can it explain in greater detail why it believes the search is reasonable, including by providing a detailed description of the search?

Best,

Chris

**Chris Opila**
*Staff Attorney (Transparency)*
Pronouns: he/him/his
202-507-7699 | copila@immcouncil.org

**American Immigration Council**
www.AmericanImmigrationCouncil.org
www.ImmigrationImpact.com

**Help us build a more welcoming country. Check out our national campaign.**

**From:** jeniffer.perez.santiago@usdoj.gov <jeniffer.perez.santiago@usdoj.gov>
**Sent:** Thursday, September 25, 2025 12:19 PM
**To:** Chris Opila <COpila@immcouncil.org>
**Cc:** jeniffer.perez.santiago@usdoj.gov
**Subject:** DOJ-EOIR FOIA Request # 2025-84734

**External sender** <jeniffer.perez.santiago@usdoj.gov>
Make sure you trust this sender before taking any actions.

Re: 2025-84734

Dear Christopher Opila,

This correspondence is in response to your Freedom of Information Act (FOIA) request dated and received July 28, 2025 to the Executive Office for Immigration Review (EOIR) in which you seek
Requesters seek all guidance, instructions, policies, templates, and other similar records created by, provided to, or otherwise in the possession of EOIR for dismissing or terminating an immigration case or proceeding issued since January 20, 2025. (Date Range for Record Search: From 01/20/2025 To 07/28/2025).

A search was conducted; however, no records responsive to your request were located. Accordingly, this request has been administratively closed.

We have classified you as an "other" requester.  Requesters under the "other" classification are entitled to two free hours of search time.  In this instance, we have waived all fees related to the processing of your request.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c) (2006 & Supp. IV 2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.  *See* http://www.justice.gov/oip/foiapost/2012foiapost9.html.

If you need any further assistance or would like to discuss any aspect of your request, please contact the EOIR FOIA Public Liaison at EOIR.FOIArequests@usdoj.gov. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at (202) 741-5770; toll free at (877) 684-6448; or facsimile at (202) 741-5769.

If you are not satisfied with the Executive Office for Immigration Review's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the correspondence and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of

your original request and this response letter with your appeal.

Sincerely,

Jeniffer Perez Santiago
Attorney Advisor

Exhibit C

# Practice Alert: EOIR Guidance to Immigration Judges on Dismissals and Other Adjudications

6/12/25 | AILA Doc. No. 25061204. | Expedited Removal, Removal & Relief

It has been reported in the news that EOIR leadership sent an email giving guidance to Assistant Chief Immigration Judges (ACIJs) on adjudications. The email was sent on Friday, May 30, 2025. Printed below is the full text of the EOIR email sent to ACIJs:

"Subject: Guidance on Case Adjudication

ACIJs –

During the past few months, EOIR has experienced significant changes in its caseload. EOIR's detained caseload has greatly increased in the past few months, and to meet the demands of the increasing workload on the detained dockets, we have re-emphasized goals for detained dockets and reallocated judges from non-detained dockets to detained dockets. There have been several developments with non-detained cases in the past few weeks. DHS is carrying out enforcement actions in or near EOIR space. Further, DHS attorneys have moved to dismiss cases that are currently pending in court. Given the recent developments the following guidance is provided to ensure the expeditious adjudication of cases:

1. Cases should not be reset for Oral Decision. Oral Decisions must be completed within the same hearing slot on the day testimony and arguments are concluded. If a case is continued after testimony and arguments are concluded without issuance of an oral decision, then a written decision must be issued.

2. DHS Motions to Dismiss may be made orally and decided from the bench. No additional documentation or briefing is required.

   The following information regarding DHS Motions to Dismiss may be generally helpful.

   The Motions to Dismiss is regulatory based upon INA 239.2(a)(6)[*NTA improvidently issued*] or INA 239.2(a)(7) [*circumstances have changed to such an extent that continuation is no longer in the best interest of the government*]. Generally, if DHS has met the regulatory burden, the oral motion to dismiss may be granted. A 10-day response period is not required.

   Respondents who were not continuously present for 2 years before inadmissibility was determined by an immigration officer under 212(a)(6) or 212(a)(7) of the INA may be placed in Expedited Removal (ER) Proceedings under INA 235.3 at the discretion of the AG. Expedited Removal Orders (ERO) carry a 5y bar to re-entry to the US.

   Respondents in the expedited removal proceedings are subject to mandatory detention. Fear claims are reviewed by USCIS via credible fear interviews. Negative credible fear findings are subject to Credible Fear Review before the court. If the negative credible fear determinations are affirmed by the court, Respondents are subject to the expedited removal order of the immigration officer. If negative credible fear determinations are vacated by the court, Respondents are placed in 240 Proceedings. Reasonable Fear Determinations, Reasonable Fear Review and Withholding Only Proceedings involve aliens subject to expedited removal under section 238(b) (*aggravated felons*) and aliens subject to reinstatement of prior order of removal under 241 (a)(5) who have a reasonable fear of persecution and torture.

3. DHS Enforcement actions at or near EOIR facilities: Please ensure that you, the Judges under your supervision, and your administrative staff are familiar with Policy Memo 25-06, which is found here. If you encounter any unusual circumstances with an enforcement action, please reach out to your RDCIJ to discuss. Please ensure your judges are aware of the above guidance. If you have any questions, please contact your supervisor to discuss."

**The following additional authorities may be helpful in the event, ICE OPLA makes a motion to dismiss in your case:**

The federal regulation governing "pre-decision" motions, 8 CFR 1003.23 specifies how motions should be made. The email instruction sent by EOIR conflicts with the regulation which states:

This website uses cookies to ensure you get the best experience on our website.
Learn More

Manage Cookies

Decline    Allow All

> Pre-decision motions. Unless otherwise permitted by the immigration judge, motions submitted prior to the final order of an immigration judge **shall be in writing and shall state, with particularity the grounds therefor, the relief sought, and the jurisdiction** [emphasis added]. The immigration judge may set and extend time limits for the making and replying to of motions and replies thereto. A motion shall be deemed unopposed unless timely response is made.

The email instruction sent by EOIR inaccurately quotes the regulation governing cancellation of notices to appear, 8 CFR 239.2, as requiring that "*circumstances have changed to such an extent that continuation is no longer in the best interest of the government.*" The regulation actually states that an officer may cancel a notice to appear provided that "circumstances of the case" have changed, not merely that "circumstances have changed". Here is the text of the regulation:

> **Circumstances of the case** have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government.

Finally, the immigration court practice manual, Chapter 3.1, indicates that responses to a filing for master calendar hearings "must be submitted within ten (10) days after the original filing with the immigration court". This has been interpreted by courts as providing respondents with a 10-day period to respond. The email instruction sent by EOIR explicitly instructs immigration judges to the contrary: "A 10-day response period is not required."

A recent EOIR Policy Memorandum emphasized the importance of impartiality and decisional independence of adjudicators, lamented that such values had been eroded in recent years, and indicated that such values would be of utmost importance going forward. EOIR PM 25-02, EOIR's Core Policy Values, Jan. 27, 2025. The same memorandum had a section dedicated to the barring of secret operational policies, defined to include "any operational policies related to case adjudications that were not disseminated publicly on EOIR's website or on social media." Per the memorandum, EOIR believed that the secretive nature of such policies "may have violated basic principles of administrative law."

In sum, the clandestine EOIR directive appears to violate the regulations, the immigration practice manual, and EOIR public guidance produced under this administration. Practitioners should make such arguments as appropriate and should consider trying to introduce news articles describing he secret guidance (or the guidance itself should it be released) into the record of proceedings.

*Special thanks to AILA members and the EOIR committee members for helping with this practice alert.

This website uses cookies to ensure you get the best experience on our website.
Learn More

Manage Cookies

Decline     Allow All

Exhibit D



OOD
PM 25-51
Effective: September 23, 2025

To: All of EOIR
From: Roman Chaban, Acting Deputy Director
Date: September 23, 2025

## WITHDRAWAL OF MAY 30, 2025 EMAIL

| | |
|---|---|
| PURPOSE: | Withdraws an email sent on May 30, 2025 |
| OWNER: | Office of the Director |
| AUTHORITY: | 8 C.F.R. § 1003.0(b) |
| CANCELLATION: | None[1] |

On May 30, 2025, an Acting Regional Deputy Chief Immigration Judge (RDCIJ) sent an email (May 30 Email) with the subject line "Guidance on Case Adjudication" to all EOIR Assistant Chief Immigration Judges. The email was an attempt to provide guidance—and a reminder of relevant authority—in adjudicating motions to dismiss or terminate. The May 30 Email was not incorporated into the EOIR Policy Manual nor otherwise disseminated publicly. Further, EOIR has never represented that the May 30 Email constituted an agency policy or otherwise represented a binding directive to Immigration Judges to decide cases a particular way.

The May 30 Email was not an EOIR policy, nor could it have been because it was not contained in the EOIR Policy Manual. *See* EOIR Policy Manual, Part I, Ch. 1.1(a) (noting generally that any EOIR operational policies related to case adjudications not contained in the Policy Manual are not in effect); *see also* Policy Memorandum (PM) 25-2, *EOIR's Core Policy Values*, 4 (Jan.27, 2025) (prohibiting operational policies related to case adjudications[2] unless they are published in the Policy Manual). Further, no RDCIJ has the authority to set policy for the agency, except (like all Immigration Judges) through adjudications. *Cf.* 8 C.F.R. §§ 1003.0(b)(1)(i), 1003.9(b)(1) (authorizing only the EOIR Director and the Chief Immigration Judge to "[i]ssue operational instructions and policy").

Moreover, the May 30 Email could not direct or bind any Immigration Judge to make a specific decision in a case in a particular way. No individual in EOIR leadership, including an RDCIJ, may

---

[1] As discussed herein, the email sent on May 30, 2025, was not an agency policy, nor did it have any binding, prescriptive effect. Thus, it would be strange to speak of "cancelling" it, even if an email could be "cancelled." Rather, the email is being withdrawn.

[2] Policies that do not relate to case adjudications (*e.g.* office parking policies, information technology security policies) are not required to be published in the EOIR Policy Manual. *See* PM 25-2, at 4 n.7.

direct an Immigration Judge to decide a case in a particular way. *See* 8 C.F.R. §§ 1003.0(c) (stating that the Director does not have the authority "to direct the result of an adjudication assigned to . . . an [I]mmigration [J]udge"), 1003.9(c) ("The Chief Immigration Judge shall have no authority to direct the result of an adjudication assigned to another [I]mmigration [J]udge . . . ."); *accord* PM 25-42, *Adjudicator Independence and Impartiality* (Aug, 22, 2025) (concluding that "[t]herefore, no EOIR employee or officer can direct any adjudicator to rule in a particular way on a matter before him or her in the first instance").

To be sure, the May 30 Email's attempt to paraphrase relevant law was poorly drafted. Nevertheless, its core idea that Immigration Judges have authority to grant oral motions to dismiss or terminate in court is longstanding, well-established, and—at least until spring 2025—not particularly controversial. Indeed, between 2021 and 2025, Immigration Judges granted thousands—if not tens of thousands—of oral motions to dismiss or terminate cases in court with almost no noted issues.[3] Additionally, although 8 C.F.R. § 1003.23 provides a default that pre-decision motions should be in writing, that default carries an important caveat: "[u]nless otherwise permitted by the [I]mmigration [J]udge." 8 C.F.R. § 1003.23(a) (emphasis added). Thus, the relevant regulatory language is clear that Immigration Judges may permit oral motions in court to dismiss or terminate.

Further, as all Immigration Judges know, the Immigration Court Practice Manual (ICPM), which is a subsection of the EOIR Policy Manual, is not binding if "the Immigration Judge directs otherwise in a particular case."[4] ICPM Ch. 1.1(b). Moreover, the ICPM cannot and does not limit an IJ's discretion in handling a particular case. *See* ICPM Ch. 1.1(c) ("Nothing in this manual shall limit the discretion of Immigration Judges to act in accordance with law and regulation."); *see also* 8 C.F.R. § 1003.10(b) (authorizing Immigration Judges to take any action consistent with the law "necessary or appropriate for the disposition" of a case). Thus, the ICPM's references to response periods for motions has never been interpreted as absolute in all cases, can be changed or overridden by an Immigration Judge by the ICPM's own terms, and cannot supersede an Immigration Judge's authority under 8 C.F.R. § 1003.10(b).

---

[3] Whether Immigration Judges who previously granted oral motions to terminate or dismiss as a matter of routine but now refuse to do so, not based on the law but because they have personal or policy disagreements with what they perceive as the intent behind the motions, are violating ethics and professional responsibility rules is beyond the scope of this PM. *Cf.* PM 25-33, *Neutrality and Impartiality in Immigration Court Proceedings* (Jun. 27, 2025); PM 25-42; *accord* 5 C.F.R. §§ 2635.101(b)(8), (14) (requiring Immigration Judges to "act impartially and not give preferential treatment to any private organization or individual" and to "endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards" applicable to individuals employed by the United States Government); Ethics and Professionalism Guide for Immigration Judges, Secs. V (requiring Immigration Judges to "act impartially and . . . not give preferential treatment to any organization or individual when adjudicating the merits of a particular case"), VI (requiring Immigration Judges to "endeavor to avoid any actions that, in the judgment of a reasonable person with knowledge of the relevant facts, would create the appearance that he or she is violating the law or applicable ethical standards"), VIII (prohibiting Immigration Judges from being "swayed by partisan interests or public clamor"), and X (prohibiting Immigration Judges from "in the performance of official duties, by words or conduct, manifest[ing] improper bias or prejudice").

[4] The ICPM purports to be binding on the parties unless an Immigration Judge directs otherwise; however, the legal authority for it to bind the parties is decidedly unclear. The ICPM was issued as sub-regulatory guidance without any specific statutory or regulatory authorization and without utilizing rulemaking procedures specified in the Administrative Procedure Act. Thus, whether *any* part of the ICPM not contained in a statute or regulation can even be legally binding is an open question and one that is beyond the scope of this PM.

Even if the May 30 Email had been more precisely drafted, for all of the reasons noted above, it still would not have represented an EOIR policy or a directive to an Immigration Judge to decide a case a particular way. Indeed, no competent Immigration Judge would have understood the May 30 Email to represent either a formal policy of the agency or a directive with binding effect to decide a case or issue a particular way.

Predictably, a lawsuit was filed against EOIR over the May 30 Email. *See Afr. Communities Together v. Lyons*, No. 25-CV-6366 (S.D.N.Y.).[5] The implicit, underlying premise of the lawsuit appears to be that Immigration Judges were too incompetent (or too corrupt) to realize that the May 30 Email (1) was not a policy, (2) did not, and could not, supersede any applicable statutes or regulations, and (3) did not, and could not, direct them on how to handle or rule on a case.[6]

On September 12, 2025, pursuant to 5 U.S.C. § 705, the District Court issued a stay of the May 30 Email within Manhattan and the Bronx in New York City.[7] *Afr. Communities Together*, 2025 WL 2633396 (S.D.N.Y. Sept. 12, 2025). In doing so, the District Court made clear that Immigration Judges retained the same authority they had prior to the May 30 Email:

> To avoid doubt on the subject, this Order does not diminish or expand the discretion or authority accorded to Immigration Judges in the controlling statute and regulations regarding, among other matters, requiring or permitting oral motions, requiring or permitting responses to motions, deciding matters orally or in writing and the grounds for dismissal of a removal petition, except that the exercise of such discretion and authority is unrestrained by the [May 30 Email].

*Afr. Communities Together*, 2025 WL 2633396 at *22. Thus, even after the stay of the May 30 Email, Immigration Judges retain the authority to permit oral motions (and oral responses) in court, including the authority to grant (or deny) such motions in accordance with the law.

Because the May 30 Email was never a policy and could never have been legally directive in any event, no Immigration Judge should have relied on it or used it to decide a case, nor should any Immigration Judge be doing so currently. Consequently, the stay of that Email should have no impact on EOIR operations. Nevertheless, to eliminate any remaining uncertainty, this PM now formally withdraws the May 30 Email. All Immigration Judges should continue to not rely on it in adjudicating cases.

---

[5] The lawsuit also challenged various purported policies of the Department of Homeland Security.

[6] The lawsuit was supported by declarations from two retired Immigration Judges, though only one made unsubstantiated insinuations about former colleagues. The other declaration, troublingly, alleged that an Assistant Chief Immigration Judge (ACIJ) had directed him to grant certain motions contrary to both law and EOIR policy. If such allegations are true, then the ACIJ would face potential disciplinary action, if the ACIJ is still with the agency.

[7] As relevant to the May 30 Email, 5 U.S.C. § 705 only authorizes a District Court to stay an "agency action." In turn, an agency action constitutes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); *see also* 5 U.S.C. § 701(b)(2) (incorporating the definition of "agency action" in 5 U.S.C. § 551 into use in 5 U.S.C. §§ 701-706). The May 30 Email was neither a rule, order, license, sanction, relief, or the equivalent or denial thereof, nor a failure to act, and EOIR has never represented otherwise. *See generally* 5 U.S.C. § 551 (defining, *inter alia*, rule, order, license, sanction, and relief). Thus, the May 30 Email does not meet the statutory definition of an "agency action" subject to 5 U.S.C. § 705. Although the District Court discussed whether the May 30 Email was a "*final* agency action," it did not address the antecedent question of whether (or how) the May 30 Email met the statutory definition of "agency action" in the first instance.

This PM is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person. Nothing herein should be construed as mandating a particular outcome in any specific case. Nothing in this PM limits an adjudicator's independent judgment and discretion in adjudicating cases or an adjudicator's authority under applicable law.  Please contact your supervisor if you have any questions.