**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LATINOJUSTICE PRLDEF and AMERICAN IMMIGRATION COUNCIL,<br><br>               Plaintiffs,<br><br>     -v-<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE OF IMMIGRATION REIVEW, and U.S. DEPARTMENT OF JUSTICE,<br><br>               Defendants. | No. 25 Civ. 8516 (LGS) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2633
E-mail: tara.schwartz@usdoj.gov

TARA SCHWARTZ
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................3

     A.    The FOIA Requests...................................................................................................3

     B.    Status of Response to FOIA Requests .....................................................................6

          1.    ICE ...............................................................................................................6

          2.    EOIR .............................................................................................................8

     C.    Procedural History ...................................................................................................8

STANDARD OF REVIEW .........................................................................................................9

ARGUMENT ..............................................................................................................................10

I.       LEGAL STANDARDS FOR FOIA PROCESSING.............................................................10

     A.    FOIA Does Not Impose Specific Processing Deadlines........................................10

II.      THE AGENCIES ARE ALREADY PROCESSING AS QUICKLY AS
PRACTICABLE ...................................................................................................................12

     A.    EOIR is Already Processing the Records as Quickly as Practicable .....................12

     B.    Before the Partial Government Shutdown, ICE Was Processing the
Records as Quickly as Practicable .........................................................................14

III.    DOJ AND DHS SHOULD NOT BE REQUIRED TO PROCESS RECORDS.................16

CONCLUSION...........................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of State*,
  300 F. Supp. 3d 540 (S.D.N.Y. 2018) ................................................................................ 11
*Carney v. U.S. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994) ................................................................................................... 9
*Citizens for Responsibility & Ethics in Wash. v. FEC*,
  711 F.3d 180 (D.C. Cir. 2013) ........................................................................................... 10
*Colbert v. Fed. Bureau of Investigation*,
  No. 16 Civ. 1790 (DLF), 2018 WL 6299966 (D.D.C. Sept. 3, 2018) .................................. 12
*Documented NY v. U.S. Dep't of State*,
  No.  Civ. 1946 (AJN), 2021 WL 4226239, at *2 (S.D.N.Y. Sept. 16, 2021) ......................... 11
*EPIC v. Dep't of Justice*,
  15 F. Supp. 3d 32 (D.D.C. 2014) ........................................................................................ 11
*Farmer v. United States*,
  No. 12 Cr. 758 (AJN), 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ......................... 17
*Gross v. Rell*,
  585 F.3d 72, (2d Cir. 2009) ................................................................................................ 17
*Landmark Legal Found. v. E.P.A.*,
  910 F. Supp. 2d 270 (D.D.C. 2012) .................................................................................... 11
*Long v. Office of Personnel Mgmt.*,
  692 F.3d 185 (2d Cir. 2012) ................................................................................................. 9
*Nat. Res. Def. Council v. Dep't of Interior*,
  73 F. Supp. 3d 350 (S.D.N.Y. 2014) .................................................................................... 9
*Middle E. Forum v. U.S. Dep't of Homeland Sec.*,
  297 F. Supp. 3d 183 (D.D.C. 2018) .................................................................................... 12
*Mora v. U.S. Customs & Border Prot.*,
  No. 24 Civ. 3136 (BAH), 2025 WL 1713252, at *7 (D.D.C. June 18, 2025) ......................... 17
*Muttitt v. Dep't of State*,
  926 F. Supp. 2d 284 (D.D.C. 2013) .................................................................................... 11
*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,
  263 F. Supp. 3d 293 (D.D.C. 2017) .................................................................................... 11

**Statutes**

5 U.S.C. § 552(a) ................................................................................................... *passim*

**Regulations**

6 C.F.R. § 5 *et seq*. ............................................................................................ 17, 18, 19

28 C.F.R. § 16 *et seq*. ......................................................................................... 17, 18, 19

Defendants the United States Immigration and Customs Enforcement ("ICE"), United States Department of Homeland Security ("DHS"), Executive Office for Immigration Review ("EOIR"), and United States Department of Justice ("DOJ," and with the other defendants the "Government"), by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to the motion for partial summary judgment of plaintiffs LatinoJustice PRLDEF and American Immigration Council ("Plaintiffs") on their claims seeking expedited processing of their requests made pursuant to the Freedom of Information Act ("FOIA").

## PRELIMINARY STATEMENT

Plaintiffs' motion seeks expedited processing of the ten FOIA requests at issue in this case submitted to two separate agencies—ICE and EOIR—seeking records broadly concerning expedited removals of noncitizens, ICE enforcement operations at or around immigration courthouses, ICE arrests of noncitizens at immigration courthouses, and the dismissals of immigration court cases. The FOIA requests seek not just policy and guidance documents—a relatively manageable set of records that is both easier to search for and smaller in volume, and much of which has already been produced to Plaintiffs—but also a vast range of communications—including emails, calendar entries, meeting notes, and Teams messages— between hundreds of people at the respective agencies. The agencies do not concede that the requests as written reasonably describe the records sought, and have significant concerns that certain of the requests are so broad and burdensome that they fail to meet the requirements for FOIA requests given by 5 U.S.C. § 552(a)(3)(A). Nonetheless, in a good-faith effort to reach agreement, ICE and EOIR have put significant effort into collecting the vast quantities of custodial files that need to be searched and are running initial searches on those files. And the parties have been working collaboratively to refine the agencies' search protocols, namely their search terms,

to try to ensure that Plaintiffs obtain the records that they want while keeping the volume of records to be processed manageable. If a manageable search is possible, the agencies have committed to devoting a significant share of their limited FOIA resources to processing resulting records: as noted below and in their declarations, they agree to treat the requests as though they were expedited, which is the principal relief plaintiffs seek.

However, even when a requester is entitled to expedited processing of a FOIA request, the statute requires only that the agency process records "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). That standard requires an accounting of requests the agency is already processing, the volume of requested materials, the demands of agency review, and competing obligations of the same agency staffers. As the agencies' declarations explain, they are already processing these requests as quickly as they practicably can: EOIR has already been processing records in this case at its fastest rate practicable, and ICE was doing so before the partial DHS shutdown that resulted in a furlough of its entire FOIA office. Plaintiffs' motion papers curiously offer no demanded processing rate of their own; thus, the agencies are unable to explain the specific impact of Plaintiffs' proposal. But as explained in the declarations, the agencies reasonably expect that a greater rate would unfairly slow the processing of other requests by diverting the agencies' processing resources to this case.

Finally, Plaintiffs—in parts of two sentences and a bare citation in their brief—demand that ICE and EOIR's parent agencies, DHS and DOJ, also be ordered to process the requests. This argument is forfeited because plaintiffs have offered so little support. It is also meritless. Binding regulations for both agencies explain that their FOIA processing operations are decentralized, with separate agency components handling requests that fall within their own expertise. Indeed, perhaps because they understand this limitation, Plaintiffs did not even make FOIA requests to the parent

agencies, just to the components. The suggestion is also impractical. As the declarations explain, drafting staff from agency components that lack background would require consultation with the "owner" agencies—and would divert resources from the parent agencies' own FOIA operations.

Accordingly, for the reasons explained, ICE and EOIR request that the Court deny Plaintiffs' motion for expedited processing as moot, or alternatively, order the agencies to process at their proposed rates of 1,000 and 200 pages per month, respectively, and that the Court deny Plaintiffs' request to direct the parent agencies, DHS and DOJ, to join in processing.

**BACKGROUND**

**A.      The FOIA Requests**

This litigation concerns five FOIA requests that were submitted to ICE, and five FOIA requests that were submitted to EOIR, all dated July 29, 2025, and all of which sought expedited processing. *See* Declaration of Jeniffer Pérez Santiago, dated April 24, 2026 ("Santiago Decl.") ¶ 8; Declaration of Fernando Pineiro, dated April 24, 2026 ("Pineiro Decl.") ¶ 15. Four of those requests (two to each agency) seek policy- and guidance-type records related to: (i) ICE's enforcement operations and arrests at immigration courthouses; and (ii) dismissals and terminations of immigration court cases. *See* Santiago Decl. ¶¶ 14, 18; Pineiro Decl. ¶¶ 16-17. Those requests, which are fairly typical of FOIA requests, are outlined in the following table:

| Agency | Request Subject | Name of Request | Exhibit |
|---|---|---|---|
| ICE | All guidance, instructions, policies, and other similar records circulated to the Office of Principal Legal Advisor Assistant Chief Counsel, Deputy Chief Counsel, or Chief Counsel since January 20, 2025, about ICE Enforcement and Removal Operations arresting noncitizens at immigration courts. | ICE Arrest Guidance Request | ECF No. 1 ("Original Complaint") Ex. AH |
| ICE | All guidance, instructions, policies, templates, and other similar records provided to an Office of the Principal Legal Advisor ("OPLA") Chief Counsel, OPLA Deputy | ICE Dismissal Guidance Request | Original Complaint Ex. AM |

3

| | | | |
|---|---|---|---|
| | Chief Counsel, or OPLA Assistant Chief Counsel since January 20, 2025, for dismissing an immigration court case. | | |
| EOIR | All guidance, instructions, policies, and other similar records created by, provided to, or otherwise in the possession of EOIR for ICE enforcement operations or arrests at or near an immigration court issued since January 20, 2025. | EOIR Arrest Guidance Request | Original Compl. Ex. J. |
| EOIR | All guidance, instructions, policies, and other similar records created by, provided to, or otherwise in the possession of EOIR for dismissing or terminating an immigration case or proceeding issued since January 20, 2025. | EOIR Dismissal Guidance Request | ECF No. 39 ("Supplemental Complaint") Ex. A |

Plaintiffs also submitted requests to ICE and EOIR for communications between the two agencies, as well as intra-agency communications. *See* Santiago Decl. ¶¶ 9, 19-20; Pineiro Decl. ¶¶ 22-24. Those requests itemize specific titles of custodians and topics and the requests generally look more akin to a custodian list and search terms negotiated between parties in civil discovery, than a typical FOIA request. *See id.*

Plaintiffs requested, from both ICE and EOIR, communications between one or more ICE Enforcement and Removal Operations ("ERO") custodians listed or categorized in Column A of the table below and one or more EOIR custodians listed or categorized in Column B about a topic listed in Column C, from April 1, 2025, to the date of the agency's search:

| A | B | C |
|---|---|---|
| ICE Director | The Chief Immigration Judge | Expedited removal |
| ICE Deputy Director | A Regional Deputy Chief Immigration Judge ("RDCJ") | An ICE enforcement operation in or near an immigration court |
| ICE Chief of Staff | An Assistant Chief Immigration Judge ("ACIJ") | An ICE arrest in or near an immigration court |
| ICE Associate Director of ERO | A court administrator | Dismissal or termination of immigration cases or proceedings in immigration court |
| The Director of ERO Field Operations | | |

| | | |
|---|---|---|
| An Assistant Director of ERO Field Operations | | |
| An ERO Field Office Director | | |
| An ERO Field Office Deputy Director | | |

*See* Santiago Decl. ¶ 9; Pineiro Decl. ¶ 22.

Plaintiffs also requested, from both agencies, external communications between one or more ICE Office of the Principal Legal Advisor ("OPLA") custodians listed or categorized in Column A of the table below and one or more EOIR custodians listed or categorized in Column B about a topic listed in Column C, from April 1, 2025, to the date of the agency's search:

| A | B | C |
|---|---|---|
| ICE Principal Legal Advisor | The Chief Immigration Judge | Expedited removal |
| ICE Executive Deputy Principal Legal Advisor | An RDCJ | An ICE enforcement operation in or near an immigration court |
| ICE Deputy Principal Legal Advisor for Field Legal Operations | An ACIJ | An ICE arrest in or near an immigration court |
| An ICE OPLA Field Location's Chief Counsel | A court administrator | Dismissal or termination of immigration cases or proceedings in immigration court |
| An ICE OPLA Field Location's Deputy Chief Counsel | | |

*See* Santiago Decl. ¶ 20; Pineiro Decl. ¶ 24.

Further, Plaintiffs submitted requests to each of ICE and EOIR, for intra-agency communications. The ICE Internal Comms. Request sought internal ICE communications between one or more ICE custodians listed or categorized in Column A of the table below and one or more ICE custodians listed or categorized in Column B about a topic listed in Column C, from April 1, 2025, to the date of the agency's search:

| A | B | C |
|---|---|---|
| ICE Associate Director of ERO | ICE Principal Legal Advisor | An ICE enforcement operation in or near an immigration court |
| The Director of ERO Field Operations | ICE Executive Deputy Principal Legal Advisor | An ICE arrest in or near an immigration court |
| An Assistant Director of ERO Field Operations | ICE Deputy Principal Legal Advisor for Field Legal Operations | Dismissal or termination of immigration cases or proceedings in immigration court |
| An ERO Field Office Director | An ICE Office of the Principal Legal Advisor ("OPLA") Field Location's Chief Counsel | |
| An ERO Field Office Deputy Director | | |

*See* Pineiro Decl. ¶ 23.

The EOIR Internal Comms. Request sought internal EOIR communications between one or more EOIR custodians listed or categorized in Column A of the table below and one or more EOIR custodians listed or categorized in Column B about a topic listed in Column C, from April 1, 2025, to the date of the agency's search:

| A | B | C |
|---|---|---|
| The Chief Immigration Judge | An Immigration Judge ("IJ") with a non-detained docket | An ICE enforcement operation in or near an immigration court |
| An RDCIJ | | An ICE arrest in or near an immigration court |
| An ACIJ | | Dismissal or termination of immigration cases or proceedings in immigration court |
| A court administrator | | |

*See* Santiago Decl. ¶ 20.

## B.    Status of Response to FOIA Requests

### 1.    ICE

ICE completed processing of the records responsive to the ICE Arrest Guidance and ICE Dismissal Guidance Requests, and made a final production to Plaintiffs on December 10, 2025.

*See* Pineiro Decl. ¶ 20. Accordingly, ICE's outstanding processing concerns only the ICE Comms. Requests.

After this litigation was filed, ICE began the process of identifying the relevant ICE personnel, who Plaintiffs had identified as custodians in the ICE Comms. Requests. *See id*. ¶ 30. For the ICE ERO-EOIR Comms. Request, ICE pulled the email files of 35 custodians for Column A and 82 custodians for Column B. *See id*. ¶ 31. For the ICE Internal Comms. Request, ICE pulled the email files of approximately 32 custodians for Column A and 5 custodians for Column B. *See id*. For the ICE OPLA-EOIR Comms. Request, ICE pulled the emails files of approximately 5 custodians for Column A and 82 custodians in Column B. *See id*.

Since that time, ICE completed two months of processing records. *See id*. ¶¶ 32-33. The first month, ICE processed 501 pages and 12 Excel spreadsheets of potentially responsive documents and released 34 pages in full or in part. *See id*. ¶ 32. ICE determined that the remaining 467 pages and 12 Excel spreadsheets were non-responsive. *See id*. The second month, ICE processed another 1,000 pages of potentially responsive records resulting from its search, and determined that none of those pages were responsive to the request. *See id*. ¶ 33. Given the ratio of pages that ICE has been processing, in relation to the rate of pages of records that have actually been responsive to the FOIA requests, the parties have been working towards revising ICE's search protocol. *See id*. ¶ 35. Once ICE has a revised search protocol, it will be able to determine how many pages of records are outstanding to process. *See id*. ¶ 37.

On February 14, 2026, ICE experienced a lapse in appropriations and its FOIA Office was put in furlough status. *See id*. ¶ 34. During that time, ICE did not complete any additional processing of the records at issue. *See id*. On Monday, April 13, 2026, ICE FOIA employees were recalled back to resume work on FOIA matters. *See id*. ¶ 51. Accordingly, ICE FOIA is now able

to resume working on Plaintiffs' FOIA requests. *See id*. ¶ 36.

### 2. EOIR

In or around January 2026, EOIR notified Plaintiffs that it had located approximately 700 pages of records potentially responsive to the EOIR Arrest Guidance Request. *See* Santiago Decl. ¶ 15. At present, EOIR has processed over 400 of those pages, which have been produced to Plaintiffs, subject to certain withholdings, and EOIR is continuing to process those records at a rate of around 200 pages per month. *See id*. ¶¶ 16-17.

In connection with the EOIR-ERO Comms. Request, EOIR's Office of Information Technology pulled the relevant email files of the custodians in Columns A and B to conduct electronic searches of those emails. *See id*. ¶ 12. After applying relevant search terms and reviewing the resulting records, EOIR determined that it did not have any records responsive to the EOIR-ERO Comms. Request. *See id*. ¶ 13.

The other FOIA requests submitted to EOIR were added to this litigation as part of the Supplemental Complaint, filed on February 13, 2026. ECF No. 39. While EOIR has run some initial searches in response to these requests, it is still in the process of refining its search protocol, and, therefore, at present, does not know how many pages of records will need to be processed in connection with these requests. *See* Santiago Decl. ¶ 21.

### C. Procedural History

Plaintiffs filed the Original Complaint in this action on October 15, 2025. ECF No. 1. The Original Complaint raised claims regarding all five FOIA requests submitted to ICE, as well as the EOIR Arrest Guidance Request and the EOIR EOIR-ERO Comms. Request. *See id*. On February 13, 2026, Plaintiffs filed the Supplemental Complaint, which added claims related to the EOIR Dismissal Guidance, the EOIR Internal Comms., and the EOIR ERO-OPLA Comms. Requests. ECF No. 39. The Supplemental Complaint asserts a claim for the agencies' respective failure to

grant Plaintiffs expedited processing on all of the FOIA requests. *See* Supplemental Complaint ¶¶ 209-220.

On February 23, 2026, Plaintiffs filed a request for a premotion conference to discuss their partial summary judgment motion on their expedited processing claims. ECF No. 41. EOIR responded in substance on March 2, 2026, and the government's submission requested that the Court defer decision on ICE's processing rate until the partial DHS shutdown was over. ECF Nos. 45-46. The parties appeared for a conference on March 10, 2026. *See* Minute Entry at 3/10/2026. At the conference, and then by written order issued thereafter, the Court directed the parties to meet and confer regarding the search and processing of records and it entered a briefing schedule for Plaintiffs' instant motion for partial summary judgment on its expedited processing claims. ECF No. 50. Plaintiffs filed their motion for partial summary judgment on their expedited processing claims on April 3, 2026. ECF Nos. 52-54.

## STANDARD OF REVIEW

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *Nat. Res. Def. Council v. Dep't of Interior*, 73 F. Supp. 3d 350, 355 (S.D.N.Y. 2014) (quotation marks omitted).[1] "In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence." *Long v. Office of Personnel Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). "Affidavits submitted by an agency are accorded a presumption of good faith." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

---

[1] FOIA cases are exempt from Local Rule 56.1 statements. *See* Local Civil Rule 56.1(a).

## ARGUMENT

### I. LEGAL STANDARDS FOR FOIA PROCESSING

#### A. FOIA Does Not Impose Specific Processing Deadlines

Under FOIA, an agency that has received a FOIA request is required, as relevant here, to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request." 5 U.S.C. § 552(a)(6)(A)(i). The agency must "immediately notify the person making such request of . . . such determination and the reasons therefor," the right to appeal an adverse determination, and the right to seek certain assistance from the FOIA Public Liaison of the agency. *Id.* § 552(a)(6)(A)(i)(I)-(III). FOIA further provides that a requester "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions." *Id.* § 552(a)(6)(C)(i).

Thus, FOIA's 20-working-day time period does not create a deadline for production. *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 189-90 (D.C. Cir. 2013) ("*CREW*"). Rather, "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.* No other provision in FOIA creates a specific timeframe for the release of records. *See* 5 U.S.C. §§ 552(a)(3)(A) (an agency shall make records responsive to a proper request "promptly available"), (a)(6)(C)(i) (same for litigated cases).

FOIA does permit certain requests to be prioritized above others; this is referred to as "expedited processing." 5 U.S.C. § 552(a)(6)(E). To qualify for expedited processing, a requester must show either a "compelling need" (a term defined by the statute) or other criteria an agency provides for by regulation. *See* 5 U.S.C. § 552(a)(6)(E)(i). But, as explained in the legislative history to the 1996 FOIA amendments that created FOIA's expedited processing provision, "[n]o

specific number of days for compliance is imposed by the bill, since, depending upon the complexity of the request, the time needed for compliance may vary." S. Rep. No. 104-272, at 17 (1996). Even for requests as to which expedited processing is granted, moreover, "[t]he goal is not to get the request . . . processed within a specific time frame, but to give the request priority for processing more quickly than otherwise would occur." *Id.* Thus, even in cases of expedited FOIA processing, "[t]he statute does not assign any particular time frame to release of the records sought." *Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012); *see also* 5 U.S.C. § 552(a)(6)(E)(iii); *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) ("the only relief required by the FOIA with regard to expedited processing is moving an individual's request 'to the front of the agency's processing queue'").

In cases where expedited processing is granted, the statute requires only that records be processed "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). "This requirement does not impose on the agency 'any particular timeframe to release . . . the records sought' but rather 'moves the plaintiff's request 'to the front of the agency's processing queue.'" *Documented NY v. U.S. Dep't of State*, No. Civ. 1946 (AJN), 2021 WL 4226239, at *2 (S.D.N.Y. Sept. 16, 2021) (ellipses in original, quoting *Landmark Legal Found.,* 910 F. Supp. 2d at 275). To determine what is "practicable," courts consider a variety of factors, including expedited FOIA requests the agency is already processing, the volume of requested materials, the demands of agency review, and competing obligations of the same agency staffers. *See EPIC v. Dep't of Justice*, 15 F. Supp. 3d 32, 43 (D.D.C. 2014); *see also, e.g.*, *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 548 (S.D.N.Y. 2018) (evaluating what is "practicable" based on evidence from the agency about its general processing capabilities, other FOIA requests, and any national security fconcerns that limit processing speed); *Protect Democracy Project, Inc. v.*

11

*U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 302 (D.D.C. 2017) (similar); *see also Colbert v. Fed. Bureau of Investigation*, No. 16 Civ. 1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (considering "the size and compelling need of the request compared to others, as well as the effect of the request on the [agency's] ability to review other FOIA requests"); *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185 (D.D.C. 2018).

## II.   THE AGENCIES ARE ALREADY PROCESSING AS QUICKLY AS PRACTICABLE

While the agencies do not concede that plaintiffs' FOIA requests are entitled to expedited processing, the agencies will agree to treat the requests at issue as though they were expedited, and to complete processing as soon as practicable. Accordingly, other than an order that EOIR and ICE continue processing at an expedited rate—which the agencies they have already been doing—Plaintiffs are not entitled to any additional relief.

### A.   EOIR is Already Processing the Records as Quickly as Practicable

As explained by the accompanying declaration of Jeniffer Pérez Santiago, Associate General Counsel for FOIA, EOIR has been processing the records it has located in response to the FOIA requests, at a rate of 200 pages per month. *See* Santiago Decl. ¶ 15.

As Ms. Pérez Santiago explains, she is the individual at EOIR responsible for processing Plaintiffs' FOIA five requests directed to EOIR. *Id*. ¶ 50; *see also id*. ¶¶ 8-21. She is also responsible for processing 28 other Complex FOIA requests. *Id*. ¶ 50. Processing Complex requests involves reaching out to other offices within EOIR, collecting records, performing a line-by-line review of each document to determine whether the document is responsive to the request, whether it contains any sensitive information that must be withheld under one of the nine FOIA exemptions, and whether it contains information belonging to other equity holders, such as other federal agencies or third parties. *Id*. ¶¶ 34, 38.

12

Specifically, for this case, processing records responsive to Plaintiffs' FOIA requests requires identifying individuals across EOIR with ten different titles (that has already amounted to 86 individuals and will end up amounting to hundreds of individuals), liaising with ICE to determine the identities of individuals with eight different job titles at ICE (which has resulted in 39 email custodians), having EOIR's Office of Information Technology conduct electronic searches of emails, preparing those emails for her review, and conducting a line-by-line review of each page of each document for responsiveness and FOIA exemptions. *See id*. ¶¶ 8-21.

EOIR generally processes requests in the order they are received. *Id*. ¶¶ 33, 61. To the extent that EOIR is ordered to process at a rate faster than 200 pages per month, this will cause Ms. Pérez Santiago to significantly delay other requests. *Id*. ¶ 59-62. As Ms. Pérez Santiago explains, EOIR's FOIA resources have been stretched exceedingly thin. *Id*. ¶ 44. The agency recently lost over 50 contractors as well as several attorneys who, like Ms. Pérez Santiago, were responsible for the processing of complex FOIA requests, like those at issue in this litigation. *See id*. ¶¶ 44-51. EOIR is actively engaged in seeking to hire additional contractors and find other sources of FOIA processing capacity, including for Complex requests. *See id*. ¶ 44. But these efforts have not yet brought in any additional resources for processing Complex requests. *See id*.

Given all of these circumstances and limitations, EOIR explains that 200 pages per month is the maximum practicable processing rate for the requested records at this time. *Id*. ¶ 62. EOIR believes that any higher rate would require it to redirect its finite and already thinly stretched resources at the expense of other FOIA cases. *Id*. ¶ 59. Indeed, processing at a greater rate would cause significant and long-lasting delays to EOIR's FOIA processing of other, first-in-time requests. *Id*. ¶ 61.

**B.    Before the Partial Government Shutdown, ICE Was Processing the Records as Quickly as Practicable**

As explained by the accompanying declaration of Fernando Pineiro, ICE's FOIA Director, prior to the partial DHS shutdown, ICE was processing the records it located in response to the ICE Comms. Requests at a rate of around 1,000 pages per month. *See* Pineiro Decl. ¶ 33. This was in fact higher than its normal processing rate (750 pages per month), and the highest rate at which it can practicably process records. *See id*. ¶ 38.

As the Pineiro Declaration explains, the ICE FOIA Litigation Processing Unit workload has increased significantly over recent years. *See id*. ¶ 39. At present, the ICE Litigation Processing Unit is handling 221 active FOIA litigations, of which 125 litigations have monthly rolling productions. *See id*. ¶ 38. Given ICE's normal processing rate for cases in litigation of 750 pages per month, per case, this meant, on average, the ICE Litigation Processing Unit was processing approximately 62,500 pages of potentially responsive records per month. *See id*.

The ICE FOIA Litigation Processing Unit also has other responsibilities including drafting search taskings, assigning and tracking all searches for responsive documents concerning FOIA litigations. *See id*. ¶ 42. The ICE FOIA Litigation Processing Unit search taskings frequently span dozens of ICE program and field offices and require the Office to keep track of hundreds of thousands of responsive records, as well as the documentation from searches of the program offices and field offices. *See id*.

The ICE FOIA Litigation Processing Unit also has collateral duties, in addition to processing documents pursuant to litigation. *See id*. ¶ 43. For example, the processing unit prepares various reports for statistical tracking, responds to congressional inquiries and requests for records, redacts Prison Rape Elimination Act reports, sends out FOIA Exemption (b)(4) submitter notices, and manages litigation consults and referrals from other agencies. *See id*. Additionally, the

14

processing unit supports OPLA attorneys with FOIA litigation by assisting in the creation of *Vaughn* indices, reviewing declarations, and coordinating on joint status reports to the court. *See id*.

To meet its obligations for all cases in litigation by ensuring that all FOIA matters progress and each requester receives a response, the ICE FOIA Litigation Processing Unit typically cannot process more than 750 pages or 5 minutes of media files per month per case. *See id*. ¶ 44. Any increase in production for one case will inevitably hinder ICE FOIA Litigation Processing Unit ability to process records for production in other matters. *See id*.

Moreover, the ICE FOIA Litigation Processing Unit typically cannot guarantee to *produce* a set number of pages per month. *See id*. ¶ 45. Depending on the volume of records located in response to the search tasking phase of the administrative stage and/or FOIA litigation, if the Court orders ICE to "produce" rather than "review" or "process" a certain number of pages per month, it is entirely plausible that the processors would have to review hundreds, or even thousands, of additional pages on top of a 1,000-page processing rate in order to identify the requisite number of responsive pages to meet the production goal. *See id*. The ICE Litigation Processing Unit is incapable of achieving this outcome based on its finite resources, competing priorities, litigation and non-litigation deadlines, and the sheer volume of overall work. *See id*.

Additionally, each ICE production also requires a review by an ICE FOIA litigation supervisor. *See id*. ¶ 46. The supervisor conducts a second-line review of all the records to ensure consistency and accuracy. *See id*. Further, each ICE production requires a final line-by-line review by an OPLA attorney. *See id*. The attorney reviews all the records to determine the legal sufficiency of the withholdings. *See id*. These are important quality control mechanisms that require ICE to build in additional time when considering a processing rate for any particular litigation. *See id*.

15

Even with FOIA staff recalled, ICE FOIA continues to operate under finite resources and significant workload constraints. The office must balance efforts to resume processing in this case against obligations in numerous other FOIA litigations and a large backlog of administrative FOIA requests. *See id*. ¶ 52.  Given all of these circumstances and limitations, ICE reasonably expects that 1,000 pages per month is the maximum practicable processing rate for the requested records at this time. *See id*. ¶ 53. ICE believes that any higher rate would both deprive the agency of adequate time to use the quality control mechanisms in place to ensure that the agency is processing the records appropriately and would require it to redirect its finite and already thinly stretched resources at the expense of other FOIA litigations. *See id*.

## III.   DOJ AND DHS SHOULD NOT BE REQUIRED TO PROCESS RECORDS

In a single sentence and separate clause in the background section, *see* Pl. Br. 11, Plaintiffs apparently seek an order directing EOIR and ICE's parent agencies, DOJ and DHS, to either process records responsive to their requests or otherwise contribute resources to ICE's and EOIR's processing of the records. Because Plaintiffs fail to support their request with meaningful legal argument, it should be deemed forfeited. In any event, it is contrary to the agencies' FOIA operations, as laid out in regulations, and not practical in any event.

As an initial matter, Plaintiffs have forfeited the argument that DOJ and DHS should be required to process records. Plaintiffs raised the prospect of DOJ participating in processing the records requested from EOIR at the premotion conference in this action. But in their opening brief, they fail to offer any legal argument on this point. They reference DOJ and DHS only in the background section of their brief, wherein they claim that "DHS and DOJ have yet to participate in this litigation at all despite being responsible for processing responsive records by law" and assert that DOJ and DHS "declined to participate in the meet and confer" between EOIR, ICE, and

16

Plaintiffs regarding the processing of records at issue here. Pl. Br. at 11 & n.3.[2] But Plaintiffs make no legal argument about DOJ's or DHS's purported obligation to process records at issue in this case. *See, generally*, Pl. Br. at 12-25 (argument section of brief not raising argument about DOJ and DHS processing). Accordingly, the argument should be deemed forfeited or waived. *See Gross v. Rell*, 585 F.3d 72, (2d Cir. 2009) (arguments not raised in principal brief are waived); *Farmer v. United States*, No. 12 Cr. 758 (AJN), 2017 WL 3448014, at \*3 (S.D.N.Y. Aug. 10, 2017) (arguments made for first time in reply briefs are waived).

In any event, Plaintiffs' request is contrary to both law and the practicalities of FOIA processing. FOIA's requirements are generous, but the statute requires requesters to both (i) "reasonably" describe the records sought and (ii) comply with any "published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). 5 U.S.C. § 552(a)(3)(A). Here, both DOJ and DHS have established such regulations: Both DOJ and DHS have "a decentralized system for processing records, with each component handling requests for its records." 28 C.F.R. § 16.1(c); 6 C.F.R. § 5.1(c). Regulations for both agencies explain that,

---

[2]    In referencing DOJ's and DHS's "lack of participation in this action" in the background section of their brief, Plaintiffs cite *Mora v. U.S. Customs & Border Prot.*, No. 24 Civ. 3136 (BAH), 2025 WL 1713252, at \*7 (D.D.C. June 18, 2025). But that case has no bearing on the instant motion.

In *Mora*, the plaintiffs-requesters made FOIA requests to CBP, but also named DHS as a defendant, and a district court in California granted DHS's motion to dismiss. *Id*. at \*1. The action was then transferred to the District of Columbia, and the court there granted a motion for reconsideration and reinstated DHS as a defendant. *Id*. at \*7. The court concluded that although DHS had promulgated FOIA regulations to divide its FOIA responsibilities by component, DHS itself remained an appropriate defendant because it was ultimately responsible for compliance given FOIA's statutory text. *Id*. at \*4-5. That holding, which is not binding on this Court, has no bearing on this case. DOJ and DHS do not seek dismissal from this action. The *Mora* plaintiffs did not make any specific demand for relief from the parent agencies, and the court did not consider, much less grant it. It certainly did not consider the practical limitations, and effects on other FOIA requests, of attempting to require parent agencies to divert resources from other components.

17

except in instances not relevant here, "the component that first receives a request for a record and maintains that record is the component responsible for responding to that request." 28 C.F.R. § 16.4(a); 6 C.F.R. § 5.4(a). Accordingly, only the components to which the requests were sent and which maintain the records, here ICE and EOIR, are responsible for responding to the requests. That is sensible. The component that maintains the records is typically best-positioned to respond to the request both because it likely has easiest access to the records and because it has the required expertise to evaluate the responsiveness of records and any applicable withholdings.

In addition, because each component generally has subject matter expertise over the records it maintains, both DOJ and DHS FOIA regulations require that relevant component to, at a minimum, weigh in on the processing of its own records. In other words, if one component has is processing records that invoke the interests of another component, the processing component must consult or otherwise appropriately engage with the component that has expertise.

Specifically, DHS regulations state that "[w]hen a component determines that it maintains responsive records that either originated with another component or agency, or which contains information provided by, or of substantial interest to, another component or agency, then it shall . . . as appropriate": (1) consult with the component or agency that has a substantial interests in the records involved; (2) respond to the request after coordinating with other components or agencies that originated the record; or (3) refer the responsibility for responding to the request or portion of the request to the component or agency best able to determine whether to disclose the relevant records or to the agency that created or initially acquired the record because the component or agency that created or initially acquired the record will be presumed to be best able to make the disclosure determination. 6 C.F.R. § 5.4(d).

18

Similarly, DOJ regulations state that: "[w]hen reviewing records located by a component in response to a request, the component shall determine whether another component or another agency of the Federal Government is better able to determine whether the record is exempt from disclosure under the FOIA." 28 C.F.R. § 16.4(d). DOJ regulations require that when records originated with the component processing the request but contain within them information of interest to another component, agency, or other Federal Government office, the component processing the request should typically consult with that other component or agency prior to making a release determination. *Id*. at § 16.4(d)(1). When the component processing the request believes that a different component, agency or other Federal Government office is best able to determine whether to disclose the record, the component typically should refer the responsibility for responding to the request regarding that record. *Id*. at § 16.4(d)(2).

Accordingly, drafting DOJ's and DHS's FOIA processing resources would not, as a practical matter, speed up the processing of the records at issue. *See* Santiago Decl. ¶ 69. It would likely have the perverse effect of creating additional administrative burdens to getting the requested records released to Plaintiffs because it would require DOJ and DHS either consulting with, or making referrals to, EOIR and ICE, pursuant to the relevant respective regulations. *See id*. That would not accomplish Plaintiffs' goal of obtaining the requested records expeditiously.

Accordingly, the Court should not entertain Plaintiffs' suggestion that DHS and DOJ be directed to process records for FOIA requests submitted to ICE and EOIR, respectively.

## CONCLUSION

The Court should deny Plaintiffs' partial motion for summary judgment on their expedited processing claims, or alternatively, order EOIR to process records at a rate of 200 pages per month, and ICE to process records at a rate of 1,000 pages per month.

Dated: April 24, 2026
New York, New York

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:    */s/ Tara Schwartz*
TARA SCHWARTZ
Assistant United States Attorney
86 Chambers St. Third Floor
New York, New York 10007
Tel. (212) 637-2633
Email: tara.schwartz@usdoj.gov
*Attorney for Defendants*

20

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned hereby certifies that, measured by the word processing program used to prepare this brief, this brief complies with the word-count limitation of the rule, which is a maximum of 8,750. Excluding the caption, table of contents, table of authorities, signature blocks, or any required certificates, but including material contained in footnotes or endnotes, there are 6,033 words in this brief.

Dated:  New York, New York
        April 24, 2026

                                    /s/ Tara Schwartz
                                    TARA SCHWARTZ
                                    Assistant United States Attorney