**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LATINOJUSTICE PRLDEF and AMERICAN IMMIGRATION COUNCIL,<br><br>                    Plaintiffs,<br><br>                -v-<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, and U.S. DEPARTMENT OF JUSTICE,<br><br>                    Defendants. | No. 25 Civ. 8516 (LGS) |

## DECLARATION OF FERNANDO PINEIRO

### I.    Introduction

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.    I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office.  I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access statutes and regulations.  Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS").  The ICE FOIA Office mailing address is 500 12th Street, SW, STOP 5009, Washington, DC 20536-5009.

2.    As the FOIA Director, my official duties and responsibilities include the

general management, oversight, and supervision of the ICE FOIA Office regarding the processing FOIA requests under 5 U.S.C. § 552 and Privacy Act requests 5 U.S.C. § 552a. In connection with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3. Through the exercise of my official duties, I am familiar with ICE's receipt and handling of the FOIA requests, dated July 29, 2025, submitted by Plaintiffs in this lawsuit and the steps taken to respond to Plaintiff's FOIA requests.

4. The statements contained in this declaration are based upon my personal knowledge, my review of records maintained by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

5. The purpose of this declaration is to respond to Plaintiffs' request for expedited processing in this action by: (1) explaining the five FOIA requests directed to ICE at issue in Plaintiffs' complaint, and ICE's searches and processing for such requests; (2) outlining ICE's standard procedures for processing FOIA requests; (3) providing information about ICE's current FOIA burden; and (4) explaining ICE's ability to process potentially responsive documents in this case in light of the aforementioned information.

II.    ICE FOIA's Standard Procedures for Processing FOIA Requests

6. When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulations at 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with

2

DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

7.      Proper FOIA requests are entered into a database known as SecureRelease and assigned a case tracking number. Based upon the requester's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

8.      ICE records are maintained by leadership offices and/or within ICE directorates, including but not limited to the Office of Public Affairs, the Office of Enforcement and Removal Operations, the Office of Professional Responsibility, the Office of the Director, the Office of the Principal Legal Advisor ("OPLA"), and the Chief Financial Officer. The program offices are typically staffed with a designated point of contact ("POC"), who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her respective program office.

9.      Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices within ICE are reasonably likely to possess records responsive to that request, if any, and task the relevant program offices with searches. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided and based on their experience and knowledge of their program office practices and

activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any.

10.     In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions.

11.     ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

12.     Additionally, all ICE employees have access to e-mail. ICE uses the Microsoft Outlook e-mail system. Each ICE employee stores his/her files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook e-mail files – some archive their files monthly, without

separating by subject; others archive their e-mail by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

13. Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who determines whether or not the records are responsive to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

14. Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requester.

### III. Plaintiff's FOIA Requests to ICE

15. I am familiar with the five FOIA requests made by Plaintiffs dated July 29, 2025, which are the subject of Plaintiff's original complaint (ECF No. 1 (the "Original Complaint")), filed on October 15, 2025, and first supplemental complaint (ECF No. 39 (the "Supplemental Complaint")), filed on February 13, 2026.

#### A. The Guidance Requests

16. Request No. 2025-ICFO-51692, defined in the Original Complaint as the "ICE Arrest Guidance Request," was submitted to ICE on July 29, 2025, and sought:

> All guidance, instructions, policies, and other similar records circulated to the Office of Principal Legal Advisor Assistant Chief Counsel, Deputy Chief Counsel, or Chief Counsel since January 20, 2025, about ICE Enforcement and Removal Operations arresting

noncitizens at immigration courts.

17.     Request No. 2025-ICFO-51693, defined in the Original Complaint as the "ICE Dismissal Guidance Request," was submitted to ICE on July 29, 2025, and sought:

> All guidance, instructions, policies, templates, and other similar records provided to an Office of the Principal Legal Advisor ("OPLA") Chief Counsel, OPLA Deputy Chief Counsel, or OPLA Assistant Chief Counsel since January 20, 2025, for dismissing an immigration court case.

18.     On July 30, 2025, ICE confirmed receipt of the ICE Arrest Guidance and Dismissal Guidance Requests via email.  ICE also notified Plaintiffs that their request for fee waivers were denied.  Specifically, ICE stated: "Under the DHS FOIA regulations, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(e)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(e)(l)(ii).  Requesters seeking expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct.  6 C.F.R. § 5.5(e)(3). Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1).  You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally.  Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards."

19.    On August 20, 2025, ICE attempted to notify Plaintiffs that it had searched OPLA and the Office of Regulatory Affairs and Policy for records responsive to the ICE Dismissal Guidance Request and located 3 pages of responsive records, which were being produced to Plaintiffs.  I understand that ICE was later informed that Plaintiffs' counsel did not receive this communication and that ICE released these three pages, through counsel, on December 10, 2025.

20.    After this litigation was commenced, ICE produced all responsive records related to ICE Arrest Guidance to Plaintiffs on December 10, 2025.  The response explained that ICE had located and processed 20 pages of responsive records, determined that six pages were duplicative, and released the remaining 14 pages in full or in part.

21.    Accordingly, ICE has completed processing in response to the ICE Dismissal and Arrest Guidance Requests.

B.    The Communication Requests

22.    Request No. 2025-ICFO-51684, defined in the Original Complaint as the "ERO-EOIR Comms. Request," which was submitted to ICE on July 29, 2025, sought:

> [A]ll emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records.

| A | B | C |
|---|---|---|
| ICE Director | The Chief Immigration Judge | Expedited removal |
| ICE Deputy Director | A Regional Deputy Chief Immigration Judge ("RDCJ") | An ICE enforcement operation in or near an immigration court |

| ICE Chief of Staff | An Assistant Chief Immigration Judge ("ACIJ") | An ICE arrest in or near an immigration court |
| --- | --- | --- |
| ICE Associate Director of Enforcement and Removal Operations ("ERO") | A court administrator | Dismissal or termination of immigration cases or proceedings in immigration court |
| The Director of ERO Field Operations | | |
| An Assistant Director of ERO Field Operations | | |
| An ERO Field Office Director | | |
| An ERO Field Office Deputy Director | | |

23.     Request No. 2025-ICFO-51687, defined in the Original Complaint as the

"ICE Internal Comms. Request," which was submitted to ICE on July 29, 2025, sought:

> [A]ll emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records.

| A | B | C |
| --- | --- | --- |
| ICE Associate Director of ERO | ICE Principal Legal Advisor | An ICE enforcement operation in or near an immigration court |
| The Director of ERO Field Operations | ICE Executive Deputy Principal Legal Advisor | An ICE arrest in or near an immigration court |
| An Assistant Director of ERO Field Operations | ICE Deputy Principal Legal Advisor for Field Legal Operations | Dismissal or termination of immigration cases or proceedings in immigration court |
| An ERO Field Office Director | An ICE Office of the Principal Legal Advisor ("OPLA") Field Location's Chief Counsel | |
| An ERO Field Office Deputy Director | | |

24.     Request No. 2025-ICFO-51690, defined in the Original Complaint as the "ICE OPLA-EOIR Comms. Request," which was submitted to ICE on July 29, 2025, sought:

> [A]ll emails, correspondence, calendar entries, meeting notes, text messages, Signal messages, WhatsApp messages, Microsoft Teams messages, and other similar communication records between one or more individuals listed in Column A of the table below and one or more individuals listed in Column B about a topic listed in Column C from April 1, 2025, to the date of a reasonable search for responsive records.

| A | B | C |
|---|---|---|
| ICE Principal Legal Advisor | The Chief Immigration Judge | Expedited removal |
| ICE Executive Deputy Principal Legal Advisor | An RDCJ | An ICE enforcement operation in or near an immigration court |
| ICE Deputy Principal Legal Advisor for Field Legal Operations | An ACIJ | An ICE arrest in or near an immigration court |
| An ICE OPLA Field Location's Chief Counsel | A court administrator | Dismissal or termination of immigration cases or proceedings in immigration court |
| An ICE OPLA Field Location's Deputy Chief Counsel | | |

25.     The day after ICE received the ICE ERO-EOIR Comms., the ICE Internal Comms., and the ICE OPLA-EOIR Comms. Requests (together the "ICE Comms. Requests"), on July 30, 2025, it notified Plaintiffs that the ICE had determined the requests did not reasonably describe the records being sought because: (i) the requests were too broad in scope; and (ii) the request did not specifically identify the records being sought.  ICE provided additional information and guidance to Plaintiffs about how they could narrow their requests so that it could be processed.

26.     On September 26, 2025, ICE notified Plaintiffs that further clarification

was needed regarding the requests.  Specifically, ICE asked Plaintiffs to provide the names of all the officials sought in the requests.

27.    Plaintiffs responded to this notice via letter dated October 13, 2025, and included a list of possible names for the positions listed in Columns A and B of the ICE Comms. Requests.

28.    Plaintiffs filed this action on October 15, 2025, before ICE was able to respond to Plaintiffs' October 13 letters concerning the ICE Comms. Requests.

29.    On November 18, 2025, ICE notified Plaintiffs that their requests for expedited processing of the ICE Comms. Requests were denied. Specifically, ICE stated: "Under the DHS FOIA regulations, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(e)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(e)(l)(ii).  Requesters seeking expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct. 6 C.F.R. § 5.5(e)(3). Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1).  You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally.  Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards."

30.    Additionally on November 18, 2025, after this litigation was filed, ICE

began the process of identifying the relevant ICE personnel, who Plaintiffs had identified as custodians in the ICE Comms. Requests.

31.    For the ICE ERO-EOIR Comms. Request, ICE pulled the email files of 35 custodians for Column A and 82 custodians for Column B.  For the ICE Internal Comms. Request, ICE pulled the email files of approximately 32 custodians for Column A and 5 custodians for Column B. For the ICE OPLA-EOIR Comms. Request, ICE pulled the emails files of approximately 5 custodians for Column A and 82 custodians in Column B.

32.    ICE made its first interim release in response to the ICE Comms. Requests on January 15, 2026.  As stated in the cover letter, ICE processed 501 pages and 12 Excel spreadsheets of potentially responsive documents and released 34 pages in full or in part.  ICE determined that the remaining 467 pages and 12 Excel spreadsheets were non-responsive.  I understand from counsel that Plaintiffs believe that the 34 pages of records produced to them are not in fact responsive to the ICE Comms. Requests.

33.    On February 12, 2026, ICE notified Plaintiffs that it had processed another 1,000 pages of potentially responsive records resulting from its search, and determined that none of those pages were responsive to the request.

34.    On February 14, 2026, ICE experienced a lapse in appropriations and its FOIA Office was placed in furlough status.  Accordingly, ICE has not completed any additional processing since then.

35.    I understand that, over the course of the last several weeks, while the ICE FOIA Office was furloughed, counsel in this litigation have been meeting-and-conferring regarding the agency's search protocol, especially in light of the fact that prior to the partial DHS shutdown, the agency had already processed over 1,500 pages,

none of which were responsive to the request.

36.    Now that the ICE FOIA Office has returned to work, ICE FOIA is prepared to test certain search terms so that its search protocol can be refined.

37.    Given that ICE is still refining its search protocol in light of the parties' meet-and-confers, I do not know, at present, how many pages of records remain for ICE to process in connection with the ICE Comms. Requests.

### IV.    The ICE FOIA Litigation Processing Unit's General Workload

38.    As of April 21, 2026, the ICE FOIA Office is handling 221 active FOIA litigations, of which 125 litigations have monthly rolling productions.  ICE's normal processing rate for cases in litigation is 750 pages or 5 minutes of media files, per month, per case. This means, on average, the ICE FOIA Office is currently processing approximately 62,500 pages of potentially responsive records per month. In addition, the ICE FOIA Office is processing approximately 13,415 open FOIA requests addressing a backlog of 10,511 FOIA requests.

39.    In addition to the increasing volume of FOIA requests, ICE has also experienced an increase in the complexity of FOIA requests, both in terms of volume and substance. For example, the ICE FOIA Office frequently receives requests with 50 to 60 sub-parts comprising several pages, searches of numerous program offices, and a universe of records that has thousands of pages to review and process. These FOIA requests take considerably longer to process due to extensive searches and the intricacy of the documents and/or data produced.

40.    In response to the increasingly heavy workload, the ICE FOIA Office has adopted the court-approved practice of generally handling backlogged requests on a

"first-in, first-out basis," which ensures fairness to all FOIA requestors by not prioritizing one request over another. This practice applies to requests that are in litigation. The reason for this is that the principle of fairness to all requestors would be jeopardized were a requestor permitted to "jump the line" simply by virtue of filing a case in U.S. District Court. Generally, the only exception to this is where a court orders processing at rates above the ICE FOIA Office's current processing rate for all cases.

41.     The increasing complexity and volume of ICE FOIA's workload and backlog creates the potential that some FOIA requests could become subject to litigation in federal district court.

42.     The ICE FOIA Litigation Processing Unit also drafts search taskings, as well as assigns, and tracks any and all searches for responsive documents concerning FOIA litigations. The FOIA litigation search taskings frequently span dozens of ICE program and field offices and require the Unit to keep track of hundreds of thousands of responsive records, as well as the documentation from searches of the program offices and field offices

43.     The ICE FOIA Litigation Processing Unit has collateral duties, in addition to processing documents pursuant to litigation. For example, the processing unit prepares various reports for statistical tracking, responds to congressional inquiries and requests for records, redacts Prison Rape Elimination Act reports, sends out FOIA Exemption (b)(4) submitter notices, and manages litigation consults and referrals from other agencies. Additionally, the processing unit supports OPLA attorneys with FOIA litigation by assisting in the creation of *Vaughn* indices, reviewing declarations, and coordinating on joint status reports to the court.

44.     To meet its obligations for all cases in litigation by ensuring that all FOIA

13

matters progress and each requester receives a response, the ICE FOIA Office typically cannot process more than 750 pages or 5 minutes of media files per month per case. Any increase in production for one case will inevitably hinder ICE FOIA's ability to process records for production in other matters.

45.     Moreover, the ICE FOIA Office typically cannot produce a set number of pages per month. Depending on the volume of records located in response to the search tasking phase of the administrative stage and/or FOIA litigation, if the Court orders ICE FOIA to "produce" rather than "review" or "process" a certain number of pages per month, it is entirely plausible that the processors would have to review hundreds, or even thousands, of additional pages on top of a 750-page processing rate in order to identify the requisite number of responsive pages to meet the production goal. ICE FOIA is incapable of achieving this outcome based on its finite resources, competing priorities, litigation and non-litigation deadlines, and the sheer volume of overall work.

46.     Additionally, each ICE production also requires a review by an ICE FOIA litigation supervisor. The supervisor conducts a second-line review of all the records to ensure consistency and accuracy. Further, each ICE production requires a final line-by-line review by an OPLA attorney. The attorney reviews all the records to determine the legal sufficiency of the withholdings.  These are important quality control mechanisms that require ICE to build in additional time when considering a processing rate for any particular litigation.

**V.     The Effect of the Partial DHS Shutdown**

47.     On Friday, February 13, 2026, DHS experienced a lapse in appropriations affecting ICE.  In connection with this lapse, ICE implemented its contingency

(shutdown) plan consistent with applicable law, including the Antideficiency Act.

48.     Consistent with DHS and ICE procedures for lapses in appropriations, certain ICE activities were treated as "excepted" (and therefore authorized to continue during the lapse in appropriations), while other activities were treated as "non-excepted" (and therefore must cease during the lapse).  Employees associated with non-excepted activities are placed in furlough status.

49.     For the initial portion of this lapse in appropriations, ICE FOIA operations were treated as a non-excepted function, and all ICE FOIA Office federal employees, including the ICE FOIA Director, were placed in furlough status effective Friday, February 13, 2026.  As furloughed employees, they were not authorized under applicable lapse-in-appropriations procedures and the Antideficiency Act to perform work on FOIA matters, including both administrative FOIA processing and FOIA-related litigation support.

50.     Therefore, the agency was not able to respond to new or pending FOIA requests, conduct or oversee searches for responsive records; coordinate with operational program offices FOIA points of contact; review records for responsiveness and applicable exemptions; make release determinations; prepare and issue productions; nor provide support for ongoing FOIA litigation.

51.     On Monday, April 13, 2026, additional funding authority became available to support ICE FOIA operations, and ICE FOIA employees were recalled to duty. Since that time, ICE FOIA has resumed work on FOIA matters, while the overall lapse in appropriations has continued to affect other DHS and ICE activities. IN returning to operations, ICE FOIA has been required to prioritize court-ordered productions and other critical ligation-related tasks, while concurrently addressing a significant backlog

of pending FOIA requests that accumulated during the furlough period and that pre-dated the lapse.

52.    Even with FOIA staff recalled, ICE FOIA continues to operate under finite resources and significant workload constraints. The office must balance efforts to resume processing in this case against obligations in numerous other FOIA litigations and a large backlog of administrative FOIA requests, and it remains subject to the same processing-rate limitations, quality-control requirements, and competing priorities described above.

53.    Given all of these circumstances and limitations, ICE believes that 1,000 pages per month is the maximum practicable processing rate for the requested records at this time.  ICE believes that any higher rate would shortchange the quality control mechanisms in place to ensure that the agency is processing the records appropriately and would require it to redirect its finite and already thinly stretched resources at the expense of other FOIA litigations.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated the 24th day of April 2026.

_____
Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009

16

Washington, DC 20536-5009