**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LATINOJUSTICE PRLDEF and AMERICAN
IMMIGRATION COUNCIL,

                     Plaintiffs,

        -v-

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, U.S. DEPARTMENT OF
HOMELAND SECURITY, EXECUTIVE OFFICE
OF IMMIGRATION REIVEW, and U.S.
DEPARTMENT OF JUSTICE,

                     Defendants.

No. 25 Civ. 8516 (LGS)

---

**SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2633
E-mail: tara.schwartz@usdoj.gov

TARA SCHWARTZ
Assistant United States Attorney
– Of Counsel –

## PRELIMINARY STATEMENT

Plaintiffs' demand has metamorphosed well beyond the relief sought in their opening papers. Having obtained Defendants' agreement to treat the FOIA requests at issue as expedited and to process them as soon as practicable—the only relief their notice of motion identified— Plaintiffs now seek an array of prescriptive procedural mandates found nowhere in their notice of motion or opening brief: (1) court-ordered "search descriptions" within two weeks of any search; (2) deadlines for "meaningfully" responding to meet-and-confer correspondence; (3) rolling production of draft *Vaughn* indexes; and (4) a wholly new and unsupported processing rate of 3,000 pages per month, per agency-group. None of these demands is authorized by FOIA, supported by the cases Plaintiffs cite, or appropriate as a matter of FOIA practice.

Defendants respectfully submit this sur-reply to address the new arguments and requests for relief that Plaintiffs raised for the first time in their reply.[1]

## ARGUMENT

I. **Plaintiffs' New Requests for Relief are Procedurally Improper and Substantively Unauthorized**

A. **The New Relief Exceeds the Scope of Plaintiffs' Motion**

Plaintiffs' notice of motion sought a single form of relief: an order "directing partial summary judgment in their favor on their First Claim for Relief … and compelling Defendants to process the [FOIA] requests at issue in this litigation as soon as practicable." ECF No. 52. Their

---

[1] Plaintiffs concede that DOJ and DHS processing was not addressed in their opening brief and consent to a sur-reply on that issue. *See* ECF No. 62 at 5 n.5. To avoid duplication, Defendants rely on their opening brief, *see* ECF No. 59 at 16-19, and the regulations and authorities cited therein, and note here only that Plaintiffs' footnote 5 attempt to recast their forfeiture as a "burden-shifting" issue is unavailing. The opening brief expressly addressed what processing the requests "as soon as practicable" would entail, *see* ECF No. 59 at 12-19, and Plaintiffs were on notice that arguments about which agencies must do the processing belonged in their opening brief, not their reply.

opening brief mirrored that request.  *See* ECF No. 53 ("Pls. Br.") at 26.  Defendants' opposition accordingly focused on what processing the requests "as soon as practicable" would entail given the agencies' resources and competing obligations.  *See* ECF No. 59 at 12-19.

In reply, however, Plaintiffs ask the Court to impose a series of new procedural directives that have nothing to do with practicable processing of records: they seek search descriptions, interim deadlines, and rolling *Vaughn* indexes.  ECF No. 62 ("Reply") at 9.  These are not new arguments about an old form of relief; they are wholly new forms of relief raised for the first time on reply.  Courts in this Circuit routinely refuse to consider, or to grant, relief that a movant raises for the first time on reply.  *See, e.g., Farmer v. United States*, No. 15 Civ. 6287 (AJN), 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017).  The Court should decline to consider these new requests for that reason alone.

### B.      None of the New Procedural Mandates Is Authorized by FOIA

Even if the Court reaches the merits, none of Plaintiffs' new procedural mandates is appropriate.

**1. Search descriptions.**  FOIA requires agencies to conduct adequate searches and—if their adequacy is challenged—to defend them, ordinarily through declarations submitted at summary judgment.  *See Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994).  FOIA does not require agencies to provide requesters with prophylactic "search descriptions" within two weeks of every search the agency runs.  The parties have been meeting and conferring about searches voluntarily and in good faith, as reflected in joint status letters.  A court-imposed two-week deadline would convert that informal, iterative dialogue into a series of compliance milestones, with no statutory basis and at the cost of diverting limited FOIA resources from the actual processing of records.

**2. Meet-and-confer deadlines.**  For the same reasons, FOIA imposes no obligation on agencies to "respond meaningfully" to opposing counsel's correspondence within any specific window of time.  The relief Plaintiffs seek is unmoored from any actual dispute between the parties and is an invitation for Plaintiffs to continue asking onerous questions about the agencies' search and technological capabilities, such as Plaintiffs' demand that EOIR explain the "specific financial and temporal burdens" associated with searching the files of approximately 700 email custodians.  ECF No. 65 at 7.

**3. Rolling *Vaughn* indexes.**  Plaintiffs' request that the Court order Defendants to produce draft *Vaughn* indexes "on a rolling basis or no later than two months after … the last record responsive to the request," Reply at 9, is premature and unsupported.  FOIA itself does not require the government to create a *Vaughn* index.  Instead, the *Vaughn* index is a tool courts use for assessing whether an agency has met its burden at summary judgment.  *See Brennan Ctr. for Justice v. DOS*, 300 F. Supp. 3d 540, 547-48 (S.D.N.Y. 2018).  There is no uniform requirement for how an index must look, what information it must contain, or whether one need be prepared at all.  *See ACLU v. CIA*, 710 F.3d 422, 432-33 (D.C. Cir. 2013); *Halpern v. F.B.I.*, 181 F.3d 279, 291 (2d Cir. 1999).  Just this week, another court in this district denied a plaintiff's request for production of rolling *Vaughn* indexes, noting that: (1) FOIA does not require the government to produce a *Vaughn* index; (2) a *Vaughn* index is merely one way that the government can sustain its burden of proof at the dispositive motion stage; and (3) requiring production of *Vaughn* index in connection with agency's processing of records would be premature.  *NRDC v. DOE*, 26 Civ. 153 (JAV) (S.D.N.Y. May 19, 2026), ECF No. 24.

Here, the agencies have labeled their withholdings with the exemptions applied, and left non-exempt portions of records unredacted.  Creating a *Vaughn* index to cover every redaction

would be inefficient: Many redactions are self-evident; others will come in documents that may be of no interest to Plaintiffs. If Plaintiffs want more information about the basis for specific redactions, the undersigned and the agencies are available to answer reasonable questions on an informal basis in the interest of avoiding litigation.  This practice—typical for sophisticated FOIA litigation—avoids unnecessary effort for Defendants and helps narrow any dispute for potential summary judgment briefing on exemptions.

Plaintiffs' citation to *Brennan Center* is unavailing.  That case involved only six documents, and the court did not require a *Vaughn* index until production was complete, albeit before summary judgment.  300 F. Supp. 3d at 549-50.

Plaintiffs' invocation of *NAACP LDF v. HUD*, No. 07 Civ. 3378, 2007 WL 4233008 (S.D.N.Y. Nov. 30, 2007), for the proposition that processing is not "complete" until "judicial review over the substantive merits" has concluded, *see* Reply at 7, conflates two distinct concepts. The completion of processing of a particular *record* (which is what the agencies' processing-rate proposals measure) is not the same thing as the conclusion of *litigation* over that processing.  The "as soon as practicable" standard governs the former; the Federal Rules and the Court's case-management authority govern the latter.

II.   **Plaintiffs' Arguments About "Standard" Processing Rates Misapprehends the Governing Standard.**

Plaintiffs' principal argument—that processing at an agency's "standard" or "usual" rate cannot, "by definition," constitute expedition, Reply at 3—rests on a fundamental misreading of FOIA.  The statute requires only that expedited requests be processed "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).  The "goal is not to get the request … processed within a specific time frame, but to give the request priority for processing more quickly than otherwise would occur." S. Rep. No. 104-272, at 17 (1996).  What is "practicable" depends on the agency's actual resources,

the volume and nature of the records, and competing obligations.  *See EPIC v. Dep't of Just.*, 15 F. Supp. 3d 32, 42 (D.D.C. 2014); *Brennan Ctr.*, 300 F. Supp. 3d at 548.  If, given those constraints, the agency's maximum practicable rate happens to coincide with what it can ordinarily achieve, the statute is satisfied.

For EOIR, the Pérez Santiago declaration explains in detail why 200 pages per month is the maximum practicable rate at this time: the loss of contractors and attorneys, the assignment of a single Associate General Counsel to handle 28 complex requests (including the five at issue here), and the line-by-line review obligation.  Santiago Decl. ¶¶ 38-62.  Plaintiffs offer no contrary evidence; instead, they offer rhetoric ("by definition") and policy arguments that the agency should be staffed differently.  Neither displaces the agency's "presumption of good faith."  *Carney*, 19 F.3d at 812.

For ICE, the agency has agreed to process at 1,000 pages per month—*one-third more* than its standard litigation rate of 750 pages per month—even while it manages 125 other rolling-production litigations and a backlog of more than 10,000 administrative requests.  Pineiro Decl. ¶¶ 38, 44, 53.  That is expedition under any reasonable reading of the statute.

III.    **Plaintiffs' Resource-Based Arguments are Legally and Factually Unsupported.**

Plaintiffs argue, in effect, that EOIR and ICE should be required to hire more staff, reallocate funds, or borrow resources from other components to process their requests faster.  Reply at 4-6.  That is well beyond the appropriate scope of relief.

First, the practicability analysis takes the agency's resources as they exist; it does not authorize a court to dictate hiring, budgeting, or interagency staffing decisions.  *See EPIC*, 15 F. Supp. 3d at 43.  Plaintiffs' principal authority, *Stevens v. HHS*, 666 F. Supp. 3d 734 (N.D. Ill. 2023), is a non-binding, out-of-circuit district court decision.  To the extent *Stevens* can be read to impose categorical limits on agencies' ability to invoke resource constraints in the practicability

analysis, it is in tension with the multi-factor approach this court has applied in *Brennan Center*, 300 F. Supp. 3d at 548-50, which considers factors such as the expedited FOIA requests the agency is already processing, the volume of requested materials, the demands of agency review, and competing obligations of the same agency staffers.

Second, Plaintiffs' citations to agency-wide budget figures, *see* Reply at 4, 6, do not advance their argument. Those figures encompass the agencies' core operations (immigration adjudication, immigration enforcement, and homeland security operations), not their FOIA functions. FOIA does not authorize courts to direct agencies to redirect appropriations away from those core missions; that is a matter for Congress, which has exclusive authority under the Constitution's Appropriations Clause. Plaintiffs' invocation of *Center to Advance Security in America v. USAID*, No. 24 Civ. 3505 (RDM), 2025 WL 763735 (D.D.C. Mar. 11, 2025), is likewise inapt: that case involved USAID's request to stay the litigation by pointing to the agency's website, which reflected that it was undergoing a reduction in force. *Id*. at *1. Notably, the court explained that USAID had not "point[ed] to any external impediments to meeting the statutory [FOIA] requirements, such as a lack of funding from Congress or an unanticipated volume of requests that has overwhelmed the FOIA office." *Id*. at *2.

Third, Plaintiffs' suggestion that ICE could surge resources from other DHS components as it allegedly did in *Nightingale v. USCIS*, Reply at 6, ignores the obvious differences in posture. *Nightingale* involved court-ordered deadlines following years of litigation about specific record categories (immigration files for individuals with pending immigration proceedings). *See Nightingale v. USCIS*, 19 Civ. 3512 (WHO) (N.D. Cal.), ECF No. 188 (Defendants' Nineteenth Compliance Report). It does not stand for the proposition that DHS routinely has surplus FOIA capacity available to be reassigned, much less that a court may order such reassignment in every

6

FOIA case.  The Pineiro declaration explains the actual state of ICE's FOIA resources and the demands on them.  Pineiro Decl. ¶¶ 38-46, 52-53.

**IV.        Plaintiffs' Attacks on Defendants' Declarations are Unfounded.**

Plaintiffs' footnote 4 attempts to undermine the "presumption of good faith" accorded agency declarations by asserting that Defendants' declarants made statements "inconsistent with past agency representations."  Reply at 2 n.4.  Neither alleged inconsistency holds up.

As to ICE: Mr. Pineiro attested that ICE FOIA employees "were recalled to duty" on April 13, 2026, *and* that since that recall, ICE FOIA has been managing competing priorities including significant backlogs and other litigation.  Pineiro Decl. ¶¶ 51-52.  The parties' fifth joint status letter, dated two days later, simply reflected the operational reality that the recall did not instantaneously restore full processing capacity for any one case.  There is no inconsistency.[2]

As to EOIR: Plaintiffs assert that Ms. Pérez Santiago's statement that EOIR's search located no responsive records to the EOIR-ERO Comms Request conflicts with an earlier statement that EOIR was "still reviewing" Plaintiffs' search proposal.  Reply at 2 n.4.  There is no conflict.  EOIR completed its search for records responsive to the request and located no responsive documents.  *See* Santiago Decl. ¶¶ 12-13.  The parties' ongoing dialogue about Plaintiffs' request that EOIR conduct an additional search utilizing its proposed methodology does not undermine the agency's good-faith attestation about what its prior search found.

---

[2]      The undersigned counsel apologizes that the parties' April 15, 2026 joint status report, ECF No. 57, failed to explain that ICE FOIA personnel had been called back duty two days earlier, on April 13, 2026, as stated in the Pineiro declaration.  The undersigned counsel was unaware, at the time the joint status letter was filed, that ICE FOIA personnel had been called back to duty two days prior, following the furlough that began on February 13, 2026.  However, contrary to Plaintiffs' insinuation, this oversight does not render unreliable anything about Pineiro's declaration, and the agency's representations about its resource constraints.

**V.        Plaintiffs' Proposed 3,000-Page-Per-Month Rate is Unsupported.**

Although Plaintiffs declined to propose a specific processing rate in their opening brief, Pls. Br. at 2, they now propose 3,000 pages per month from each of two agency groups (EOIR/DOJ and ICE/DHS), for an aggregate of 6,000 pages per month across this litigation.  Reply at 9. Plaintiffs offer no agency-specific evidence supporting that rate.  Instead, they cite cases ordering 5,000-9,000 pages per month in *other* litigations involving *other* agencies, *other* records, and *other* resource postures.  Reply at 8.  Those decisions cannot displace the record evidence here, which establishes that 200 pages per month (EOIR) and 1,000 pages per month (ICE) represent the maximum practicable rates at this time.  Santiago Decl. ¶ 62; Pineiro Decl. ¶ 53.

Plaintiffs' newly proposed rate would, by Plaintiffs' own logic, require EOIR to process Plaintiffs' requests fifteen times faster than its current capacity and ICE to process three times faster than the rate it has already committed to (which is itself above its normal litigation rate). The declarations explain why that is not feasible without inflicting significant delay on requests filed before Plaintiffs'.  *See* Santiago Decl. ¶¶ 59-62; Pineiro Decl. ¶¶ 44-46, 53.

**CONCLUSION**

The Court should deny Plaintiffs' motion as moot to the extent Defendants have agreed to treat the requests as expedited and process them as soon as practicable; reject Plaintiffs' newly-introduced requests for additional procedural relief; and hold that EOIR's commitment to 200 pages per month and ICE's commitment to 1,000 pages per month satisfy the "as soon as practicable" standard.

8

Dated: May 22, 2026
        New York, New York

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:    /s/ Tara Schwartz
       TARA SCHWARTZ
       Assistant United States Attorney
       86 Chambers St. Third Floor
       New York, New York 10007
       Tel. (212) 637-2633
       Email: tara.schwartz@usdoj.gov
       *Attorney for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned hereby certifies that, measured by the word processing program used to prepare this brief, this brief complies with the word-count limitation of the Court's May 11, 2026 order (ECF No. 64), which set a maximum of 2,500 words. Excluding the caption, table of contents, table of authorities, signature blocks, or any required certificates, but including material contained in footnotes or endnotes, there are 2,499 words in this brief.

Dated: New York, New York
       May 22, 2026

                                        /s/ Tara Schwartz
                                        TARA SCHWARTZ
                                        Assistant United States Attorney

9